IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| GHANIM-ABDULRAHMAN<br>AL-HARBI, *et al.*, | )<br>)<br>) |  |
| Petitioners, | )<br>) |  |
| v. | )<br>) | Civil Action No. 05-CV-02479 (HHK) |
| GEORGE W. BUSH,<br>President of the United States,<br>*et al.*, | )<br>)<br>)<br>) |  |
| Respondents. | )<br>) |  |

**RESPONDENTS' MEMORANDUM IN OPPOSITION TO PETITIONERS'
MOTION FOR ENTRY OF AMENDED PROTECTIVE ORDER**

Respondents hereby respectfully submit this memorandum in opposition to petitioners'

motion for entry of amended protective order in this case (dkt. no. 8).[1]

As an initial matter, the Department of Defense has identified petitioner Ravil Mingazov

as the same individual who already has a habeas petition pending in Gamil v. Bush, No. 05-CV-

---

[1] On March 16, 2006, this Court stayed "all action" in the above-captioned case and held in abeyance all pending motions pending resolution by the Supreme Court or the D.C. Circuit of "serious questions concerning whether this court retains jurisdiction to hear the above-captioned cases" after the Detainee Treatment Act of 2005, Pub. L. No. 109-148, tit. X, 119 Stat. 2680 (the "Act"), became law (dkt. no. 7). Because the Court has stayed "all action" in this case, on May 4, 2006, respondents filed a notice indicating that, absent further direction from the Court, respondents did not intend to submit a substantive response to petitioners' motion for entry of the amended protective order. See Respondents' Notice Regarding Petitioner's Motion for Entry of Amended Protective Order (dkt. no. 9). On May 11, 2006, the Court lifted the March 16, 2006 order staying activity in this case with respect to petitioners' motion for entry of the amended protective order, and ordered respondents to respond to petitioners' motion within ten days. See Order issued May 11, 2006 (dkt. no. 10). The Court indicated that "[r]espondents' opposition need only address the merits of petitioners' motion as the court is already aware of respondents' position regarding the issue of the court's subject matter [jurisdiction] over this action." Id. Respondents hereby submit the instant opposition to petitioners' motion pursuant to the Court's May 11, 2006 Order.

2010 (JR), and petitioner Zainulabidin Merozhev as the same individual who already has a habeas petition pending in Mohammon v. Bush, No. 05-CV-2386 (RBW). Thus, as reflected in the Notices of Multiple Petitions Filed by Guantanamo Bay Detainee being concurrently filed, the instant petition appears to be duplicative of previously filed cases as to petitioners Ravil Mingazov and Zainulabidin Merozhev.

Because the Court is already familiar with respondents' position regarding the Detainee Treatment Act's withdrawal of the habeas jurisdiction of the Court and investment of exclusive jurisdiction in the Court of Appeals, see Order issued May 11, 2006, respondents will not recite their position here, except to state that the entry of the Protective Order in this case would be an assertion of jurisdiction that would be inconsistent with the Act, and respondents' argument in this regard is in no way immaterial or premature. See Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 94 (1998) ("Without jurisdiction [a] court cannot proceed at all in any cause."); see also Ex parte McCardle, 74 U.S. (7 Wall.) 506, 514 (1869) ("Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause.").[2]

---

[2] Respondents previously intended to file a motion to dismiss this case based upon the Act's withdrawal of the Court's jurisdiction, see Notice of Supplemental Authority (dkt. no. 2), but refrained from doing so when they were informed that the sense of the Court was to await anticipated guidance from the D.C. Circuit regarding the effect of the Act before proceeding further in the Guantanamo habeas cases. During this interim period, respondents have permitted counsel visits and other privileged access to properly represented detainees in cases where the Protective Order had already been entered, and its requirements satisfied, pending a decision from the D.C. Circuit. Once the Act's withdrawal of the Court's jurisdiction became effective, however, respondents have consistently opposed entry of the Protective Order in cases where it had not already been entered. In any event, respondents' actions in other Guantanamo habeas cases cannot be construed as a waiver or concession of jurisdiction that permits entry of the Protective Order in this case. See Floyd v. District of Columbia, 129 F.3d 152, 155 (D.C. Cir. 1997) (noting that "jurisdiction cannot be waived").

Further, petitioners possess no separate right of access to counsel that warrants the application of the Protective Order to this action notwithstanding the jurisdictional infirmities present in this case. See Pets' Mot. at 4 ("Petitioners' access to their attorneys, is not a matter of government discretion; but rather, is required as a matter of law."). In Al Odah v United States, 346 F. Supp. 2d 1 (D.D.C. 2004), Judge Kollar-Kotelly explained that, despite there being no absolute right to counsel under the habeas statute, the Court, under its discretionary, statutory authority in habeas cases — authority now withdrawn with the Act's withdrawal of district court habeas jurisdiction — may appoint counsel to represent Guantanamo petitioners properly before the Court, if warranted. See id. at 4-5, 7-8. Thus, contrary to petitioner's suggestion, notwithstanding the Act's withdrawal of jurisdiction over this case, Al Odah does not compel the relief requested by petitioners.

Furthermore, as explained below, respondents also oppose petitioners' request for relief because it has not been established that jurisdictional requirements for a habeas petition have been established in this case. Petitioners have not demonstrated why the petition, not brought upon direct authorization from Ghanim-Abdulrahman Al-Harbi, Ravil Mingazov and Zainulabidin Merozhev, the detainees for whom habeas relief is sought, but instead brought by another detainee claiming to act as their "next friend," should not be dismissed for lack of proper next friend standing. The putative "next friend" detainee, Elham Battayav, bears the burden of establishing his next friend status and justifying the exercise of the Court's jurisdiction over this action. See Whitmore v. Arkansas, 495 U.S. 149, 163 (1990) ("'[N]ext friend' standing is by no means granted automatically to whomever seeks to pursue an action on behalf of another."). To do so, he must satisfy the "two firmly rooted prerequisites" articulated by the Supreme Court in

<u>Whitmore</u>: (1) he must demonstrate that the detainee on whose behalf he claims to file a petition for writ of habeas corpus cannot challenge the legality of his detention himself; and (2) he must have a significant relationship with this detainee in order to demonstrate that he is truly dedicated to the detainee's best interests.  <u>Id.</u> at 163-64.  The petition in this case fails to meet either requirement.  Notwithstanding the Act's withdrawal of the Court's jurisdiction over this case, if petitioners are unable to demonstrate that the petition was filed by a legitimate next friend, the Court cannot exercise jurisdiction over the petition, and the petition must be dismissed for lack of standing.

Furthermore, entry of the Protective Order would be inappropriate to the extent that petitioners' counsel will seek to characterize the Protective Order as guaranteeing counsel access to petitioners regardless of next friend standing or other jurisdictional issues in the case.  Recently, Magistrate Judge Kay has interpreted the Protective Order as guaranteeing any counsel who purport to represent a detainee privileged access to the detainee even in the face of respondents' challenge to next friend standing and other jurisdictional challenges in the case.  <u>See</u> <u>Adem v. Bush</u>, 2006 WL 751309 (Mar. 21, 2006) (dkt. no. 36), <u>recons. denied</u>, 2006 WL 1193853 (Apr. 28, 2006) (dkt. no. 42); <u>Sadar Doe v. Bush</u>, No. 05-CV-1704 (JR) (LFO) (AK) (Memorandum Order dated May 11, 2006) (dkt. no. 33); <u>Said v. Bush</u>, No. 05-CV-2384 (RWR) (AK) (Memorandum Order dated May 23, 2006) (dkt. no. 23); <u>see</u> <u>also</u> <u>Razakah v. Bush</u>, No. 05-CV-2370 (EGS) (Order dated May 18, 2006) (dkt. no. 23).  Respondents have noted the grave jurisdictional issues presented by the Magistrate Judge's interpretation of the Protective Order, as well as the inconsistency of that interpretation with the language, history and context of the Protective Order in the Guantanamo habeas cases, <u>see</u> <u>e.g.</u>, Respondents' Motion for Stay and

Reconsideration of Magistrate Judge's Order and Opinion Docketed on March 21, 2006 in <u>Adem v. Bush</u>, No. 05-CV-0723 (RWR) (dkt. nos. 38, 39); Respondents' Motion for Stay and Reconsideration of Magistrate Judge's May 11, 2006 Memorandum Order in <u>Sadar Doe v. Bush</u>, No. 05-CV-1704 (JR) (dkt. nos. 34, 35) (copy attached as Exhibit A).  The Magistrate Judge, however, has brushed aside respondents' objections and granted counsel access in such circumstances, characterizing his action merely as enforcement of the terms of the Protective Order.  <u>See</u>, <u>e.g.</u>, <u>Adem</u>, 2006 WL 751309, *8-*11.  This Court should not enter the Protective Order in this case to the extent it may or will be interpreted in a fashion that will raise the serious jurisdictional and interpretive issues raised by respondents, including that of requiring the government to provide direct, privileged access to wartime detainees in a military detention facility for counsel merely purporting to represent a detainee, without demonstrating satisfaction of the jurisdictional requirements of a habeas case.

**I.      Petitioners' Counsel's Request for Entry of the Protective Order Should Be Denied Because It Has Not Been Established That the Jurisdictional Requirements for a Habeas Petition Have Been Satisfied in this Case.**

It is well-established that "before a federal court can consider the merits of a legal claim, the person seeking to invoke the jurisdiction of the court must establish the requisite standing to sue" under Article III of the Constitution.  <u>Whitmore</u>, 495 U.S. at 154.  The standing doctrine "ensure[s] that the plaintiff has a sufficient personal stake in the outcome of a dispute to render judicial resolution of it appropriate in a society that takes seriously both the idea of separation of powers and, more fundamentally, the system of democratic self-government that such separation serves."  <u>Hamdi v. Rumsfeld</u>, 294 F.3d 598, 602-03 (4th Cir. 2002) (citation and internal

quotations omitted).[3]  "In essence, the question of standing is whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues."  Warth v. Seldin, 422 U.S. 490, 498 (1975).  A habeas petitioner has proper standing only if the petition is "signed and verified by the person for whose relief it is intended or by someone acting in his behalf."  28 U.S.C. § 2242.  If a petition is brought by someone acting on behalf of the person for whose relief the petition is intended, this "next friend" does not become a party to the action, but "simply pursues the cause on behalf of the detained person, who remains the real party in interest."  Whitmore, 495 U.S. at 163.

Next friend standing is not automatically granted to anyone who seeks to pursue an action on behalf of another person, however.  See id.  Rather, consistent with the constitutional limits established by Article III, a litigant who asserts next friend standing bears the burden of satisfying the "two firmly rooted prerequisites" for next friend status articulated by the Supreme Court in Whitmore:

> First, a "next friend" must provide an adequate explanation — such as inaccessibility, mental incompetence, or other disability — why the real party in interest cannot appear on his own behalf to prosecute the action.  Second, the "next friend" must be truly dedicated to the best interests of the person on whose behalf he seeks to litigate, and it has been further suggested that a "next

---

[3] The cited 2002 decision of the Fourth Circuit in Hamdi ordered dismissal of a habeas case that a public defender and private citizen brought as purported next friends of Hamdi despite having no relationship with him.  That deficiency was cured when Hamdi's father filed a legitimate next-friend petition bearing the same style, which eventually culminated in the 2004 decision of the Supreme Court in Hamdi v. Rumsfeld, 124 S. Ct. 2633 (2004).  See Hamdi, 294 F.3d at 600 n.1, 606-07 & n.4; see also Hamdi, 124 S. Ct. at 2636.  Of course, neither the fact that the defect was cured, nor the Supreme Court's ultimate decision in the properly filed habeas case, undermines or casts doubt on the Fourth Circuit's holdings concerning next friend standing in the defective case brought by the public defender and private citizen.

> friend" must have some significant relationship with the real party
> in interest.

Id. at 163-64 (internal citations omitted).

The petition in the above-captioned case does not meet either prong of the Whitmore test. First, petitioners have failed to demonstrate that the detainees for whom habeas relief is sought cannot submit petitions on their own behalf. As explained in the Declaration of Frank Sweigart, the Department of Defense ("DoD") has notified each detainee at Guantanamo Bay of his right to file a petition for habeas corpus, and has provided each detainee with the address of the United States District Court in the event that he desires to submit his own petition to the Court.[4] See (Second) Sweigart Declaration, ¶¶ 3-5 (attached hereto as Exhibit B). As a result of these notifications, 58 pro se petitions for writ of habeas corpus have already been filed with the Court.[5] Furthermore, DoD has taken affirmative steps to facilitate legal representation for

---

[4] Detainees are afforded the opportunity regularly to send and receive mail through the mail system administered by DoD and through the International Committee for the Red Cross. Detainees are supplied pens, paper and envelopes regularly, and mail privileges cannot be revoked. See Sweigart Declaration, Ex. D.

[5] As of September 19, 2005, the date that the Sweigart Declaration was executed, there were 55 *pro se* petitions filed with the Court. See Khiali-Gul v. Bush, No. 05-CV-0877 (JR); Rahmattulah v. Bush, No. 05-CV-0878 (CKK); Mohammad v. Bush, No. 05-CV-0879 (RBW); Nasrat v. Bush, No. 05-CV-0880 (ESH); Slahi v. Bush, No. 05-CV-0881 (JR); Rahman v. Bush, No. 05-CV-0882 (GK); Bostan v. Bush, No. 05-CV-0883 (RBW); Muhibullah v. Bush, No. 05-CV-0884 (RMC); Mohammad v. Bush, No. 05-CV-0885 (GK); Wahab v. Bush, No. 05-CV-0886 (EGS); Chaman v. Bush, No. 05-CV-0887 (RWR); Gul v. Bush, No. 05-CV-0888 (CKK); Basardh v. Bush, No. 05-CV-0889 (ESH); Khan v. Bush, No. 05-CV-0890 (RMC); Nasrullah v. Bush, No. 05-CV-0891 (RBW); Shaaban v. Bush, No. 05-CV-0892 (CKK); Sohail v. Bush, No. 05-CV-0993 (RMU); Tohirjanovich v. Bush, No. 05-CV-0994 (JDB); Slahi v. Bush, No. 05-CV-0995 (JR); Mohammad v. Bush, No. 05-CV-0996 (JR); Khudaidad v. Bush, No. 05-CV-0997 (PLF); Al Karim v. Bush, No. 05-CV-0998 (RMU); Al-Khalaqi v. Bush, No. 05-CV-0999 (RBW); Sarajuddin v. Bush, No. 05-CV-1000 (PLF); Kahn v. Bush, No. 05-CV-1001 (ESH); Mohammed v. Bush, No. 05-CV-1002 (EGS); Mangut v. Bush, No. 05-CV-1008 (JDB); Hamad v. Bush, No. 05-CV-1009 (JDB); Khan v. Bush, No. 05-CV-1010 (RJL); Zuhoor v. Bush, No. 05-CV-1011 (JR); Ali Shah v. Bush, No. 05-CV-1012 (ESH); Salaam v. Bush, No. 05-CV-1013

detainees who have indicated a desire to challenge the legality of their detention by providing such detainees with a form to complete and mail to the American Bar Association ("ABA"), which has agreed to recruit volunteer counsel for detainees desiring representation. See id., ¶ 7. In addition, all detainees at Guantanamo Bay have the ability to send and receive mail, allowing them to contact family and friends, see id., Ex. D; supra, note 4, and they have been informed of the option of contacting friends and family to have them file habeas petitions on their behalf.

Given that all detainees have been notified of their right to submit petitions for writ of habeas corpus; that they have the ongoing opportunity to send mail to family, friends, and the Court; and that the ABA has agreed to offer the detainees assistance in securing legal representation, it cannot simply be assumed that the detainees for whom habeas relief is sought cannot submit petitions on their own behalf. The next friend petition in this case, however, does just that. See, e.g., Petition, ¶ 4 ("Because his friend and co-detainee Petitioner al-Harbi has been denied access to legal counsel and to the courts of the United States, Petitioner Battayav acts as his Next Friend."). See also Ahmed v. Bush, No. 05-CV-0665 (RWR) (Order dated May 24, 2005) (dkt. no. 12) ("The petition presumes, rather than demonstrates through facts, that Ahmed

---

(JDB); Mammar v. Bush, No. 05-CV-1233 (RCL); Ahmed v. Bush, No. 05-CV-1234 (EGS); Baqi v. Bush, No. 05-CV-1235 (PLF); Abdulzaher v. Bush, No. 05-CV-1236 (RWR); Aminullah v. Bush, No. 05-CV-1237 (ESH); Ghalib v. Bush, No. 05-CV-1238 (CKK); Al Khaiy v. Bush, No. 05-CV-1239 (RJL); Altaiy v. Bush, No. 05-CV-1240 (RCL); Bukhari v. Bush, No. 05-CV-1241 (RMC); Pirzai v. Bush, No. 05-CV-1242 (RCL); Peerzai v. Bush, No. 05-CV-1243 (RCL); Alsawam v. Bush, No. 05-CV-1244 (CKK); Mohammadi v. Bush, No. 05-CV-1246 (RWR); Al Ginco v. Bush, No. 05-CV-1310 (RJL); Ullah v. Bush, No. 05-CV-1311 (RCL); Al Bihani v. Bush, No. 05-CV-1312 (RJL); Sadkhan v. Bush, No. 05-CV-1487 (RMC); Faizullah v. Bush, No. 05-CV-1489 (RMU); Faraj v. Bush, No. 05-CV-1490 (PLF); Khan v. Bush, No. 05-CV-1491 (JR); Ahmad v. Bush, No. 05-CV-1492 (RCL); Amon v. Bush, No. 05-CV-1493 (RBW); Idris v. Bush, No. 05-CV-1555 (JR). Since that date, three additional *pro se* petitions have been filed. See Jamolivich v. Bush, No. 05-CV-2112 (RBW); Feghoul v. Bush, No. 06-CV-0618 (RWR); Rumi v. Bush, No. 06-CV-0619 (RJL).

has been denied access to the courts of the United States. . . . In light of the fact that several pro se petitions have been filed recently by Guantanamo Bay detainees, Ahmed's lack of access to this court cannot be presumed, but must be established.");[6] Hamlily v. Bush, No. 05-CV-0763 (JDB) (Order dated October 3, 2005) (dkt. no. 16) ("[The petition] states only that [Hamlily] is 'being held essentially incommunicado' and that 'his family members have not been able to contact U.S. counsel to file a petition on his behalf.' . . . There is a serious question as to whether this alone is sufficient to establish Hamlily's inability to prosecute this action on his own behalf.");[7] Ahmed Doe v. Bush, No. 05-1458 (ESH), et al., (Order dated November 4, 2005) (dkt. no. 10) (Oberdorfer, J.) ("Petitioners do not explain why the detainees that they purport to represent as next friends are in a materially different position than the detainees who have filed petitions with this Court.").

---

[6] The issue of next friend standing was raised sua sponte by Judge Roberts in Ahmed v. Bush, No. 05-CV-0665 (RWR), another Guantanamo Bay detainee case. Based on an observation that the petition presented scant facts demonstrating that the Whitmore requirements were satisfied, Judge Roberts ordered petitioners to file a memorandum and supporting materials tending to demonstrate that the detainee who purported to act as next friend in that case should be granted next friend standing. See Ahmed v. Bush, No. 05-CV-0665 (RWR) (Order dated May 24, 2005) (dkt. no. 12). Petitioners filed a memorandum in response to the Court's Order, in an attempt to demonstrate that both prongs of the Whitmore test were satisfied. See Ahmed v. Bush, No. 05-CV-0665 (RWR) (dkt. no. 13). Although respondents filed a response to petitioners' memorandum indicating that they took no position on petitioners' memorandum at that time, see Ahmed v. Bush, No. 05-CV-0665 (RWR) (dkt. no. 14), and the Court in that case did not issue any subsequent ruling on the issue, respondents now seek to challenge next friend standing in certain recently-filed Guantanamo Bay detainee cases in which the appropriate next friend standing requirements have not been satisfied.

[7] On October 31, 2005, Judge Bates discharged the order to show cause regarding next friend standing that he entered *sua sponte* in Hamlily v. Bush based on counsel's showing that the detainee in that case directly requested legal representation and authorized counsel's filing of the petition. See Order dated October 31, 2005 in Hamlily v. Bush, No. 05-CV-0763 (JDB) (dkt. no. 19) (discharging order to show cause and dismissing next friend petitioner in the case). Judge Bates noted, however, that "counsel's filing fail[ed] to address several of the serious deficiencies in next friend standing" raised in the Court's order to show cause. See id. at 2.

Absent evidence that the detainees for whom habeas relief is sought cannot submit a petition on their own behalf, petitioners cannot demonstrate proper next friend standing, and the Court cannot exercise jurisdiction over the petition.  See FW/PBS, Inc. v. City of Dallas, 493 U.S. 215, 231 (1990) ("It is a long-settled principle that standing cannot be 'inferred argumentatively from averments in the pleadings,' but rather 'must affirmatively appear in the record.'") (citations omitted).

The purported "next friend" in this case has also failed to satisfy the second requirement of the Whitmore test — he has not established that he has a "significant relationship" with the detainees on whose behalf habeas relief is sought such that he is "truly dedicated to [their] best interests."  See Whitmore, 495 U.S. at 163-64.[8]  The requirement of a "significant relationship"

---

[8] The majority of Circuits that have been confronted with the issue have construed Whitmore to require a "significant relationship" as part of the second prong of the test for next friend standing.  See Hamdi v. Rumsfeld, 294 F.3d 598, 604 (4th Cir. 2002) ("Whitmore is thus most faithfully understood as requiring a would-be next friend to have a significant relationship with the real party in interest."); Coalition of Clergy, Lawyers, and Professors v. Bush, 310 F.3d 1153, 1162 (9th Cir. 2002) ("Combining the 'significant relationship' requirement, however, with the 'dedicated to best interests' consideration . . . meets the concerns the Whitmore Court addressed."); T.W. v. Brophy, 124 F.3d 893, 897 (7th Cir. 1997) ("It follows, as the Court suggested in the Whitmore case, that not just anyone who expresses an interest in the subject matter of a suit is eligible to be the plaintiff's next friend – that he 'must have some significant relationship with the real party in interest'"); Amerson v. Iowa, 59 F.3d 92, 93 n.3 (8th Cir. 1995) (under Whitmore, the "next friend has [the] burden to establish . . . that she has some "significant relationship with [the] real party in interest"); Zettlemoyer v. Horn, 53 F.3d 24, 27 n.4 (3d Cir. 1995) (observing that "[t]he Whitmore Court also . . . suggested that the party 'must have some significant relationship with the real party in interest'").  See also Al Odah v. Bush, 321 F.3d 1134, 1138 (D.C. Cir. 2003), rev'd on other grounds, Rasul v. Bush, 542 U.S. 466 (2004) (stating that the family members of Guantanamo detainees who filed habeas petitions on their behalf "demonstrated through affidavits that they are 'truly dedicated to the best interests of these individuals,' [and] that they have a 'significant relationship' with the detainees . . .") (citing Whitmore, 495 U.S. at 163-64).  Although the Eleventh Circuit questioned whether Whitmore established "some significant relationship" as an independent requirement, it nevertheless noted the importance of a relationship in demonstrating whether a putative next friend "can show true dedication to the best interests of the person on whose behalf he seeks to litigate."  Sanchez-Velasco v. Secretary of the Dep't of Corrections, 287 F.3d 1015, 1026-27 (11th Cir. 2002).  See

with the real party in interest is necessary to ensure that a next friend will genuinely pursue the interests of the person in custody (who at all times remains the real party in interest) and will not (1) merely use the litigation as a vehicle for advancing his own agenda or (2) assume he or she is in tune with the real party's desires and interests. See id. at 164 (cautioning against "intruders or uninvited meddlers" filing lawsuits on behalf of unwitting strangers).

Thus, under the "significant relationship" requirement, courts have generally limited next friend standing to close relatives such as parents, siblings, and spouses. See, e.g., Vargas v. Lambert, 159 F.3d 1161, 1168 (9th Cir. 1998) (mother); Hamdi, 294 F.3d at 600 n.1 (father); Smith ex rel. Missouri Pub. Defender Comm'n v. Armontrout, 812 F.2d 1050 (8th Cir. 1987) (brother); In re Ferrens, No. 4746, 8 F. Cas. 1158, 1159 (S.D.N.Y. 1869) (wife). Attorneys who have previously represented an individual seeking habeas corpus have also been permitted to act as next friends based on that pre-existing relationship. See Sanchez-Velasco, 287 F.3d at 1026 ("'[S]ome significant relationship' does exist when the would-be next friend has served in a prior proceeding as counsel for the real party in interest and did so with his consent."). Distant relatives or simple acquaintances generally do not have a sufficient relationship to establish next friend standing, see, e.g., Davis v. Austin, 492 F. Supp. 273, 274-76 (N.D. Ga. 1980) (neither detainee's first cousin nor a minister who had counseled detainee could sue as next friend) (cited with approval in Whitmore, 495 U.S. at 164), and petitions filed by total strangers purporting to act as next friends are typically dismissed for lack of jurisdiction. See, e.g., Hamdi, 294 F.3d at

---

also Centobie v. Campbell, 407 F.3d 1149, 1151 (11th Cir. 2005) ("We conclude that Puzone is not 'truly dedicated to the best interests of the person on whose behalf [s]he seeks to litigate,' and she does not have 'some significant relationship with the party in interest.'") (citing Hauser v. Moore, 223 F.3d 1316, 1322 (11th Cir. 2000)).

603-07 (dismissing petitions brought by a public defender and private citizen who had no relationship to the detainee).

In the above-captioned case, the putative next friend petitioner has failed to demonstrate that he has any sort of "significant relationship" with the detainees for whom habeas relief is sought. The declaration submitted in support of Elham Battayav's next friend status states simply that he understands what it means to act as a "next friend," that he "had come to know a few detainees on a meaningful level," and that these detainees expressed a desire to be represented by counsel. See Declaration of Thomas R. Johnson, Jr. (attached to Petition), ¶¶ 4-5. The declaration further provides only names, ISNs and nationalities of the detainees on whose behalf Elham Battayav claims to act as next friend. See id., ¶ 6. The dearth of basic biographical and personal information about the detainees on whose behalf habeas relief is sought indicates that Elham Battayav does not share any meaningful relationship with these detainees and, therefore, cannot be determined to be acting in their best interests.[9] Because even acquaintances cannot satisfy the requirement of a significant relationship under Whitmore, and the minimal information presented in the petition indicates that the purported next friend merely knows of other detainees or, at best, are mere acquaintances with the detainees on whose behalf he seeks habeas relief, the purported next friend has failed to demonstrate that he is "truly dedicated to [these detainees'] best interests." Whitmore, 495 U.S. at 163. Absent proof that evidences a

---

[9] If a detainee were able to act as next friend for another detainee simply based on the mere fact that they are both detained at Guantanamo, detainees or prisoners could purport to bring mass habeas corpus petitions simply by being able to list the identities of those detained alongside them, a situation that is surely inconsistent with standing jurisprudence. See Othman v. Bush, No. 05-CV-2088 (RWR) (dkt. no. 2) ("The petition's characterization of Al Wahab as Othman's "companion" is an insufficient showing upon which to make any judgment about Al Wahab's fitness to serve[] as next friend. The companionship may be by dint of mere fortuity of co-location in detention with no more substance to the relationship than that.").

significant relationship, petitioners cannot demonstrate proper next friend standing, and the Court cannot exercise jurisdiction over the petition in the above-captioned case.[10]

In sum, the petition in this case fails to satisfy the standing requirements articulated by the Supreme Court in Whitmore. Jurisdiction must be established and this case must be properly before the Court before any proceedings may commence, including entry of the Protective Order.[11] Notwithstanding the Act's withdrawal of the Court's jurisdiction over this case, if petitioners are unable to demonstrate that the petition was filed by a legitimate next friend, the Court cannot exercise jurisdiction over the petition, and the petition must be dismissed for lack of standing.

---

[10] Approximately 200 detainees at Guantanamo Bay have filed petitions for writ of habeas corpus through family members who arguably meet the "significant relationship" requirement. See, e.g., Hatim v. Bush, No. 05-CV-1429 (RMU) (filed on behalf of two detainees by their siblings, Fatima Nasser Yahia Abdullah Kussrof and Ali Mohammed Saleh Al-Salahi); Rabbani v. Bush, No. 05-CV-1607 (JR) (filed on behalf of two detainees by their wives, Malika and Fouzia Ahmmed); Sadkhan v. Bush, No. 05-CV-1679 (RJL) (filed on behalf of detainee by his father, Jabbar Sadkhan Al-Sahlani).

[11] Even the Protective Order and counsel access procedures typically made applicable in Guantanamo detainee habeas cases provides that "[p]rior to being permitted access to the detainee," counsel must "provide evidence of his or her authority to represent the detainee." See Amended Protective Order and Procedures for Counsel Access to Detainees at the United States Naval Base in Guantanamo Bay, Cuba in In re Guantanamo Detainee Cases, No. 02-CV-0299, et al., 344 F. Supp. 2d 174 (D.D.C. Nov. 8, 2004), Ex. A, § III.C.1. Counsel has yet to provide sufficient evidence of their "authority to represent" the detainees for whom habeas relief is purportedly sought, i.e., to demonstrate the satisfaction of the requirements of next friend standing in this matter. The Protective Order thus contemplates counsel access to the detainees (including privileged mail correspondence and visits to Guantanamo Bay) only in cases properly before the Court.

**II.     The Protective Order Should Not Be Entered to the Extent It Will Be Interpreted in a Fashion to Raise Serious Jurisdictional and Interpretive Issues and to Sidestep the Issue of Whether this Case Is Jurisdictionally Proper in Light of the Absence of a Showing of Proper Next Friend Standing.**

The Protective Order should not be entered to the extent it will be interpreted in a fashion to raise serious jurisdictional and interpretive issues and to sidestep the issue of whether this case is jurisdictionally proper in light of the absence of a showing of proper next friend standing. As noted above, Magistrate Judge Kay has recently begun interpreting the Protective Order and Access Procedures applicable in many of the Guantanamo habeas cases as guaranteeing any counsel who purport to represent a detainee privileged access to the detainee without respect to any showing of whether the jurisdictional standing requirements for bringing a habeas case under 28 U.S.C. § 2242 have been satisfied. See Adem, 2006 WL 751309; Sadar Doe, No. 05-CV-1704 (JR) (LFO) (AK) (Memorandum Order dated May 11, 2006); Said, No. 05-CV-2384 (RWR) (AK) (Memorandum Order dated May 23, 2006). Respondents have noted that the Magistrate Judge's interpretation of the Protective Order is erroneous as an interpretive matter and is inconsistent with the history and context of the language of the Protective Order as it was developed in the Guantanamo habeas cases under Senior Judge Joyce Hens Green, cases coordinated pursuant to the order and direction of the Court as a whole, including through a September 15, 2004 Resolution of the Executive Session.[12] The Protective Order does not require respondents to permit a visit by counsel with any particular petitioner in this case. While the Revised Procedures for Counsel Access to Detainees annexed to the Protective Order operate under the assumption of counsel visits occurring in that they set certain terms, conditions and

---

[12] Respondents' objections to the Magistrate Judge's interpretation of the Access Procedures are explained more fully in the motion for reconsideration in Sadar Doe, No. 05-CV-1704 (JR) (LFO) (AK) (attached as Exhibit A), at 20-33.

limitations applicable to any such visits, they do not order respondents to provide a visit on demand of counsel in the first place. Also, another provision of the Protective Order confirms that respondents may decline to schedule a visit with detainees where counsel has not yet provided appropriate evidence of his or her authority to represent the detainees. See Resps' Mot. for Recon. in Sadar Doe, No. 05-CV-1704 (JR) (LFO) (AK), at 20-25. Respondents have also noted that the Magistrate Judge's interpretation of the Protective Order results in the extra-legal assertion of jurisdiction by the Court, inconsistent with the habeas statute, 28 U.S.C. § 2242, and the requirements of Whitmore, as well as raises significant separation of powers issues by requiring respondents to provide direct, privileged access to wartime detainees in a military detention facility by counsel merely purporting to represent a detainee, without any showing by counsel of proof of appropriate authority to represent the detainee directly or through a next friend meeting appropriate standing requirements. See id. at 25-33.

Nonetheless, the Magistrate Judge has brushed aside respondents' objections in cases where the Protective Order has been entered and granted counsel access to detainees at Guantanamo, and he has justified this result by claiming that he is merely enforcing the terms of the Protective Order already entered in the case. See, e.g., Adem, 2006 WL 751309, *8-*11.

This Court should not create the same situation by entering the Protective Order here. While respondents dispute that the Magistrate Judge's interpretation of the Protective Order is correct, it would not be appropriate for the Court to create circumstances where the Magistrate Judge's interpretation could be foisted upon respondents where respondents have raised jurisdictional issues with respect to the propriety of this suit. Respondents are entitled to have the serious jurisdictional issues related to next friend standing considered and resolved before

they are ordered to provide direct, privileged access to wartime detainees in a military detention facility, and the Court should not enter the Protective Order where it may be cited as authority to require such access without regard to respondents' jurisdictional objections.

\* \* \*

For these reasons, petitioners' motion for entry of the amended protective order should be denied.

Dated: May 25, 2006

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

DOUGLAS N. LETTER
Terrorism Litigation Counsel

　　/s/ Preeya M. Noronha
JOSEPH H. HUNT (D.C. Bar No. 431134)
VINCENT M. GARVEY (D.C. Bar No. 127191)
TERRY M. HENRY
JAMES J. SCHWARTZ
PREEYA M. NORONHA
ROBERT J. KATERBERG
NICHOLAS J. PATTERSON
ANDREW I. WARDEN
EDWARD H. WHITE
MARC A. PEREZ
Attorneys
United States Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Ave., N.W.
Washington, DC  20530
Tel:  (202) 514-4107
Fax:  (202) 616-8470

Attorneys for Respondents