IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SADAR DOE, *et al.* ) | |
| ) | |
| Petitioners, ) | |
| ) | |
| v. ) | Civil Action No. 05-CV-1704 (JR) (AK) |
| ) | |
| GEORGE W. BUSH, ) | |
| President of the United States, ) | |
| *et al.,* ) | |
| ) | |
| Respondents. ) | |

**RESPONDENTS' MOTION FOR STAY AND RECONSIDERATION OF
MAGISTRATE JUDGE'S MAY 11, 2006 MEMORANDUM ORDER**

Respondents hereby object to and seek reconsideration of Magistrate Judge Alan Kay's

May 11, 2006 Memorandum Order ("Mem. Order") requiring that respondents promptly permit

counsel to meet with two individuals detained by the Department of Defense ("DoD") at the

United States Naval Base in Guantanamo Bay, Cuba.  As explained below, the Magistrate

Judge's Order is clearly erroneous and contrary to law for several reasons.  First of all, the

Detainee Treatment Act of 2005 withdraws jurisdiction from the Court to grant the relief the

Order provides.  Consequently, the Magistrate Judge has no legal authority to issue the

prospective relief ordered in this case, even with respect to counsel access issues.

Moreover, the Magistrate Judge clearly erred in concluding that the governing protective

order and counsel access procedures in the Guantanamo *habeas* litigation do not require counsel

to supply proof of authority to represent a detainee prior to being permitted privileged access to

the detainee.   To the contrary, the language, structure, and history of the counsel access

procedures evidence a two-layer requirement regarding counsel's authority to bring and then

maintain a *habeas corpus* petition on behalf of a Guantanamo detainee.  First, in a case such as this brought by a putative "next friend," prior to having privileged access to the detainee, counsel must produce sufficient evidence of counsel's authority to represent the detainee through a proper "next friend."  Second, after having the opportunity to meet with the detainee, counsel must submit evidence of the detainee's authorization for counsel to represent him.  The Magistrate Judge clearly erred by conflating these separate, and practical, authorization requirements into a single requirement that counsel who purportedly represents a particular detainee must be provided with privileged access to the detainee on demand and then need only produce evidence of authority to represent the detainee after conducting privileged meetings with the detainee.  In reaching this conclusion, the Magistrate Judge created an extra-legal scheme for establishing jurisdiction in the Guantanamo *habeas* cases that is contrary to law, including the plain terms of the *habeas* statute and the well-established jurisprudence regarding next friend standing.  Further, by requiring the government to provide direct, privileged access to wartime detainees in a military detention facility for counsel merely purporting to represent a detainee, without any showing by counsel of proof of appropriate authority to represent the detainee directly or through a next friend satisfying appropriate standing requirements, the Magistrate Judge's order offends separation of powers.

For these reasons, as more fully explained below, respondents move this Court for an immediate stay of the Magistrate Judge's Order to the extent it requires action by respondents pending the Court's resolution of respondents' motion for reconsideration.  Further, because the Magistrate Judge's Order is clearly erroneous and contrary to law, the Order should be vacated and set aside forthwith.

# BACKGROUND

On August 25, 2005, a petition for writ of *habeas corpus* was filed in this case on behalf of Sadar Doe (a.k.a. Bahtiyar Mahnut) and Arkeen Doe (a.k.a. Arkina Amahmud), two detainees held as enemy combatants at Guantanamo Bay. See Petition (dkt. no. 1).   The petition was submitted at the behest of another Guantanamo detainee, Usama Hasan Abu Kabir, purporting to act as "next friend" on behalf of the two detainees. See id., Exhibit.  Mr. Kabir also purports to act as "next friend" for approximately three dozen other detainees in other cases. See id.  This case was one of approximately 150 habeas petitions on behalf of Guantanamo detainees pending at the time of filing, and one of almost 200 currently pending, generally all of which have been stayed, formally or otherwise, pending a ruling from the D.C. Circuit Court of Appeals in related appeals before it, including regarding the withdrawal of *habeas* jurisdiction of the courts under the Detainee Treatment Act of 2005.

On October 11, 2005, the Court, as was routine at the time in all of the Guantanamo detainee cases pending before it, entered in this case the Protective Order entered in other Guantanamo detainee cases pending before other Judges of this Court.  See In re Guantanamo Detainee Cases, 344 F. Supp. 2d 174 (D.D.C. Nov. 8, 2004) ("Protective Order"); Order Supplementing and Amending Filing Procedures Contained in November 8, 2004 Amended Protective Order in In re Guantanamo Detainee Cases, No. 02-CV-0299, et al. (D.D.C. Dec. 13, 2004); Order Addressing Designation Procedures for "Protected Information" in In re Guantanamo Detainee Cases, No. 02-CV-0299, et al. (D.D.C. Nov. 10, 2004).  The first two paragraphs of the Protective Order set forth its premises, function, and scope:

- 3 -

1.      This case likely involves classified national security information or documents, the storage, handling and control of which require special security precautions, and access to which requires a security clearance and a "need to know."  This case may also involve other protected information or documents, the storage, handling and control of which may require special precautions in order to protect the security of United States government personnel and facilities, and other significant government interests.

2.      The purpose of this Protective Order is to establish the procedures that must be followed by all petitioners' counsel, their respective petitioner(s), all other counsel involved in this case, translators for the parties, and all other individuals who receive access to classified national security information or documents, or other protected information or documents, in connection with this case, including the privilege team as defined in Exhibit A.

Protective Order ¶¶ 1, 2.

To serve this overarching function of preventing the unauthorized disclosure or dissemination of classified national security information and other protected information, the Protective Order further provides that "*Petitioners' counsel* are bound by the terms and conditions set forth in the 'Revised Procedures for Counsel Access to Detainees At the U.S. Naval Base in Guantanamo Bay, Cuba,' and the procedures for handling mail and documents brought into and out of counsel meetings, attached hereto as Exhibit A."  Id. ¶ 6 (emphasis added).  Moreover, "[t]his Protective Order specifically incorporates by reference all terms and conditions established in the procedures contained in Exhibit A *to the extent they place limitations on petitioners' counsel in their access to and interaction with petitioners or handling of information*."  Id. (emphasis added).

The Revised Procedures for Counsel Access to Detainees at the U.S. Naval Base in Guantanamo Bay, Cuba, annexed to the Protective Order as Exhibit A, ("Access Procedures") in

turn, set certain terms, conditions, and limitations for *habeas* counsel's access to properly

represented detainees and set out procedures and requirements for the handling of information

obtained from and delivered to detainees, all "for purposes of litigating the cases" in which the

Protective Order is issued.  See Access Procedures § 1.  The Access Procedures, for example,

require that visiting counsel obtain a security clearance, id. § III.A, and sign an affirmation

acknowledging an agreement to comply with the counsel access procedures, noting that if

counsel fail to comply with the procedures, "access to or communication with the detainee will

not be permitted," id. § III.B.  Further, the Access Procedures provide that "[p]rior to being

permitted access to the detainee," counsel must "provide evidence of his or her authority to

represent the detainee."  Id. § III.C.1.[1]  In other Guantanamo detainee cases, this evidence has

typically taken the form of letters from detainees directly authorizing a challenge to their

detention, or affidavits and authorizations of "next friends" who have filed petitions on behalf of

detainees.  In a proper "next friend" case, because the detainee "remains the real party in

interest," see Whitmore v. Arkansas, 495 U.S. 149, 163 (1990), the Access Procedures further

---

[1] The Access Procedures provide:

> Prior to being permitted access to the detainee, counsel must provide DoD with a Notification of Representation. This Notification must include the counsel's licensing information, business and email addresses and phone number, as well as the name of the detainee being represented by the counsel. Additionally, counsel shall provide evidence of his or her authority to represent the detainee.

Access Procedures § III.C.1.

require a second, subsequent type of authorization, directly from the detainee, once counsel in a

proper next friend case is provided access to the detainee.  See Access Procedures § III.C.2.[2]

Respondents in this case reviewed the one-sentence submission and list of names of the

purported "next friend," Kabir, provided as an exhibit to the petition in this case, and, thereafter,

in this and a number of other Guantanamo habeas cases, filed a motion for an order to show

cause why the case should not be dismissed for lack of a showing that the putative "next friend"

satisfied standing requirements articulated by the Supreme Court in Whitmore v. Arkansas, 495

U.S. 149 (1990).  See dkt. no. 4; Whitmore, 495 U.S. at 163 ("'[N]ext friend' standing is by no

means granted automatically to whomever seeks to pursue an action on behalf of another.").   As

explained in the motion, a purported next friend must satisfy the "two firmly rooted

prerequisites" articulated by the Supreme Court in Whitmore: (1) he must demonstrate that the

detainee on whose behalf he claims to file a petition for writ of habeas corpus cannot challenge

the legality of his detention himself; and (2) he must have a significant relationship with this

detainee in order to demonstrate that he is truly dedicated to this detainee's best interests.  Id. at

163-64.  Absent such a showing, court jurisdiction over a petition is lacking, and the case must

---

[2] The Access Procedures provide:

Counsel shall provide evidence of his or her authority to represent the detainee as
soon as practicable and in any event no later than ten (10) days after the
conclusion of a second visit with the detainee.  The Court recognizes that counsel
may not be in a position to present such evidence after the initial meeting with a
detainee.  Counsel for detainees and counsel for respondents shall cooperate to the
fullest extent possible to reach a reasonable agreement on the number of counsel
visits allowed.  Should counsel for a detainee believe that the government is
unreasonably limiting the number of visits with a detainee, counsel may petition
the Court at the appropriate time for relief.

Access Procedures § III.C.2.

be dismissed.  See Resps' Mot. for Order to Show Cause Why Case Should Not Be Dismissed for Lack of Proper "Next Friend" Standing at 6-15 (dkt. no. 4); Resps' Reply in Support of Mot. for Order to Show Cause Why Case Should Not Be Dismissed for Lack of Proper "Next Friend" Standing at 3-11 (dkt. no. 10).  In addition to noting the absence of the requisite showing in this case, the motion further explained the various avenues available to detainees such as petitioners in this case for directly accessing the Court or initiating a challenge to the legality of their detention themselves.  See infra note 7 and pages 28-30.  The motion in this and a number of other cases was referred to Senior Judge Louis F. Oberdorfer for consideration and decision, see dkt. no. 18, and on December 1, 2005, proceedings on the motion were continued to permit discussions on the matter with Magistrate Judge Kay, see dkt. no. 26.

On December 30, 2005, the Detainee Treatment Act of 2005, Pub. L. No. 109-148, tit. X, 119 Stat. 2680 ("the Act"), became law.  The Act, among other things, amended 28 U.S.C. § 2241 to remove court jurisdiction to hear or consider applications for writs of *habeas corpus* and other actions brought in this Court by or on behalf of aliens detained at Guantanamo Bay and created an exclusive review mechanism in the D.C. Circuit, applicable to pending cases, to address the validity of the detention of such aliens held as enemy combatants.  Id. § 1005(e)(1), (h)(2).  Shortly thereafter, respondents' counsel and representative counsel for the Guantanamo *habeas* petitioners were informally informed by the Court that the sense of the Court was to await anticipated guidance from the D.C. Circuit regarding the effect of the Act[3] before deciding any

---

[3] Oral argument on the issue of the effect of the Act was held before the Court of Appeals on March 22, 2006.

pending motions, with Magistrate Judge Kay being available to assist the parties in the

negotiation and resolution of matters raised during this interim period, where appropriate.[4]

On March 28, 2006, petitioners' counsel filed a motion requesting the Court to order

respondents to permit counsel privileged access to petitioners Mahnut and Amahmud, relying

upon a March 21, 2006 decision of Magistrate Judge Kay in Adem v. Bush, 2006 WL 751309

(Mar. 21, 2006) (dkt. no. 36), recons. denied, 2006 WL 1193853 (Apr. 28, 2006) (dkt. no. 42), in

which the Magistrate Judge construed the Access Procedures applicable in this and the other

approximately 200 pending Guantanamo habeas cases not to require counsel to supply any proof

of authority to represent a detainee prior to being permitted privileged access to the detainee.[5]

See 2006 WL 751309 at *2.  In response, respondents, inter alia, noted the Detainee Treatment

Act's withdrawal of the Court's jurisdiction over the case, and consistent with our understanding

of the sense of the Court, further noted the appropriateness of a stay of all proceedings in the

case, including with respect to petitioner's request for relief, pending the resolution of the effect

of the Act.  See dkt. no. 32.  Respondents also noted the serious jurisdictional issue presented by

respondents' challenge to the "next friend" petitioner's standing to pursue this litigation and

argued, accordingly, that that the relief requested by counsel was not appropriate pending

resolution of that challenge.  See id.  Respondents further noted the serious jurisdictional issues,

---

[4] Respondents previously intended to file a motion to dismiss based upon the Act's withdrawal of this Court's jurisdiction, see Respondents' Notification of Supplemental Authority (dkt. no. 27), but refrained from doing so when they were informed of the sense of the Court, including that the Court intended not to rule upon any such motion to dismiss, were it filed, pending the D.C. Circuit's addressing the issue.

[5] Counsel had sought the same relief in a February 17, 2006 letter to the Magistrate Judge. Upon issuance of the decision in Adem, counsel filed a motion regarding the matter.

even independent of the Detainee Treatment Act, presented by the Magistrate Judge's

construction of the Access Procedures.[6]  See id.

Despite the previously expressed sense of the Court to await anticipated guidance from

the D.C. Circuit regarding the effect of the Act, on May 11, 2006, Magistrate Judge Kay issued a

Memorandum Order requiring that respondents permit counsel to meet with petitioners Mahnut

and Amahmud at Guantanamo.  See Mem. Order (filed May 11, 2006) (dkt. no. 33).  As in

Adem, the Magistrate Judge construed the Access Procedures applicable in this case not to

require counsel to supply proof of authority to represent a detainee prior to being permitted

privileged access to the detainee.  Id.

In explaining the rationale and basis for the Order, the Magistrate Judge declined to defer

a ruling on petitioner's motion, rejecting the Detainee Treatment Act as any impediment to the

relief ordered.  The Magistrate Judge asserted that the issues involved in petitioner's motion "do

not implicate any of the jurisdictional questions currently pending in the D.C. Circuit and the

Supreme Court."  Mem. Order at 11; see also id. at 13 (relief requested by petitioner "has no

bearing on the question of which Court has jurisdiction to review Petitioner's challenge to his

detention").  The Order characterizes the request for relief as merely one for enforcement of the

extant Protective Order and Access Procedures, see id. at 11-12, and also asserts the jurisdiction

to decide petitioner's motion on the ground that counsel would "presumably" represent

petitioners in any proceeding in the Court of Appeals under the exclusive review provisions of

the Detainee Treatment Act, id. at 13 n.14.  According to the Magistrate Judge, "the need to

---

[6] In fact, respondents asserted in their opposition all of the arguments that are presented in this motion for reconsideration.

resolve questions regarding the logistics of counsel access will remain an issue, even if the D.C.

Circuit and the Supreme Court determine that the DTA applies to those *habeas* cases currently

pending in the District Court."  Id.  Thus, the Magistrate Judge concluded there was no need to

wait to resolve the issue.

Further, as to the merits of petitioner's request for relief, the Magistrate Judge

characterized the Access Procedures as making next friend issues in these cases essentially

irrelevant.  The Magistrate Judge cited his discussion in Adem, where he described Al Odah v.

United States, 346 F. Supp. 2d 1 (D.D.C. 2004), as concluding "that Guantanamo detainees are

entitled to be represented by counsel and that this Court has the authority to 'craft the procedures

necessary' to enforce that right," and also described steps respondents had taken beginning in late

2004 to notify detainees of their ability to challenge their detention through petitions for writs of

*habeas* corpus sent directly to the Court or filed through family members or friends.[7]  See Adem,

---

[7] Beginning in December 2004, the Department of Defense provided written notifications to all detainees at Guantanamo Bay which informed them of their right to file petitions for writ of *habeas corpus* in federal court if they desired to challenge the lawfulness of their detention.  The detainees were informed that they could ask a friend, family member, or lawyer to file a petition on their behalf, and they were also provided with the address of the United States District Court in the event that they desired to submit their own petitions to the Court through the mail system administered by the Department of Defense.  See Second Declaration of Frank Sweigart, ¶¶ 3-5 & Exs. A-C (Exhibit A to Resps' Reply in Support of Mot. for Order to Show Cause Why Case Should Not Be Dismissed for Lack of Proper "Next Friend" Standing, dkt. no. 10).

In addition to these written notifications provided to all detainees at Guantanamo Bay which advised them of their right to file petitions for writ of *habeas corpus* and options for doing so, the Department of Defense also delivered to detainees who indicated a desire to challenge the legality of their detention a notification providing these detainees with a form to complete and mail to the American Bar Association, which agreed to recruit volunteer counsel for detainees desiring representation.  Beginning in September 2005 the Department of Defense delivered (and will continue to deliver on an ongoing basis) this notification to detainees who file *pro se* petitions for writ of *habeas corpus* and are not already represented by counsel, as well as other detainees who indicate to Guantanamo personnel that they desire or request the assistance of

- 10 -

2006 WL 751309 at *3-*4; see Mem. Order at 10.  In light of these factors, according to the

Magistrate Judge, the "legal fiction of a 'next friend' became largely irrelevant except as a

mechanism for identifying those detainees who seek to challenge their detention in the first

instance." Mem. Order at 8-9; see also Adem, 2006 WL 751309 at *4-*5 (noting parties' and

Judges' assertedly erroneous use of term "next friend "though the term's traditional legal

context no longer applied").

Accordingly, the Magistrate Judge did not conclude that Mr. Kabir in this case satisfies

applicable next friend standing requirements under Whitmore so that Court could exercise

jurisdiction over the case and compel respondents to permit counsel direct, privileged access to a

wartime detainee at Guantanamo Bay, a secure military detention facility.  Rather, applying his

construction of the Access Procedures, the Magistrate Judge ordered respondents to allow

counsel to meet with Mahnut and Amahmud.  Mem. Order at 13.

Respondents now timely move for reconsideration and a stay of the Magistrate Judge's

Memorandum Order.  See FED. R. CIV. P. 72(a); LCvR 72.2(b).

## ARGUMENT

Under Federal Rule of Civil Procedure 72(a), when a nondispositive, pretrial matter is

referred to a Magistrate Judge for determination, a party may object to the Magistrate Judge's

ruling, and "[t]he district judge to whom the case is assigned shall consider such objections and

shall modify or set aside any portion of the magistrate judge's order found to be clearly erroneous

or contrary to law." FED. R. CIV. P. 72(a); see 28 U.S.C. § 636(b)(1)(A).  Local Civil Rule

---

counsel.  See Second Declaration of Frank Sweigart, ¶ 7 & Ex. E (Exhibit A to Resps' Reply in
Support of Mot. for Order to Show Cause Why Case Should Not Be Dismissed for Lack of
Proper "Next Friend" Standing, dkt. no. 10).

72.2(c) similarly provides that upon a motion for reconsideration, a Judge may modify or set aside any portion of a Magistrate Judge's order "found to be clearly erroneous or contrary to law." LCvR 72.2(c).

"A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." Campbell v. Microsoft Corp., No. 04-CV-2060 (RWR), 2006 WL 463263 at *2 (D.D.C. Feb. 24, 2006) (citing United States v. United States Gypsum Co., 333 U.S. 364, 395 (1948)). Questions of law are reviewed de novo under the "contrary to law" standard. See Weekoty v. United States, 30 F. Supp. 2d 1343, 1344 (D.N.M. 1998). The Court, "therefore, owes no deference to the magistrate [judge]'s legal conclusions[,] and it may substitute its own judgment on questions of law." Id.

As explained below, the May 11 Memorandum Order in this case should be set aside as clearly erroneous and contrary to law.

I. **The Magistrate Judge's Order is Contrary to Law Because The Detainee Treatment Act of 2005 Withdraws District Court Jurisdiction To Provide The Relief Called For In The Order.**

_____The Magistrate Judge's Order is contrary to law, first of all, because the Detainee Treatment Act of 2005 withdraws jurisdiction from the Court to grant the relief the Order provides. The Act, among other things, amends the federal _habeas_ corpus statute to remove court jurisdiction to hear or consider applications for writs of _habeas corpus_ and other actions brought in this Court by or on behalf of aliens detained at Guantanamo. Section 1005(e)(1) of the Act amends 28 U.S.C. § 2241 to provide that "no court, justice, or judge shall have jurisdiction" to consider either (1) _habeas_ petitions filed by aliens detained by the Department of

Defense at Guantanamo, or (2) any other action relating to any aspect of the detention of such aliens.  In addition, the Act creates an exclusive review mechanism in the D.C. Circuit to address the validity of the detention of such aliens held as enemy combatants; section 1005(e)(2) of the Act states that the D.C. Circuit "shall have exclusive jurisdiction to determine the validity of any final decision of a Combatant Status Review Tribunal that an alien is properly detained as an enemy combatant," and it further specifies the scope and intensiveness of that review.  Section 1005(e)(1), which eliminates the jurisdiction of the courts to consider *habeas* and other actions brought by Guantanamo detainees, was made immediately effective without reservation for pending cases, and § 1005(e)(2), which establishes the exclusive review mechanism in the D.C. Circuit, was made expressly applicable to pending cases.  Id. § 1005(h).  In light of the statutory withdrawal of this Court's jurisdiction, and the creation of an exclusive review mechanism in the D.C. Circuit, the Court had no jurisdictional basis to order respondents to permit counsel privileged access to petitioners in person at Guantanamo Bay.

Notwithstanding the plain terms of the Act, the Magistrate Judge incorrectly concluded that "the issues raised by Adem's motion seeking access to counsel pursuant to the Amended Protective Order do not implicate any of the jurisdictional questions" presented by the Act.  See Mem. Order at 11.  In reaching this conclusion, the Court avoided ruling on the jurisdictional effect of the Act by essentially creating a "counsel access" exception to the Act that has no legal foundation.  The Court cannot avoid the Act's jurisdictional ouster by framing the issue simply as one of counsel access.  "Without jurisdiction [a] court cannot proceed at all in any cause." Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 94 (1998).  Therefore, when Congress withdraws jurisdiction, the affected court no longer has any power to act or to proceed further

with the case.  See Ex parte McCardle, 74 U.S. (7 Wall.) 506, 514 (1869) ("Jurisdiction is power

to declare the law, and when it ceases to exist, the only function remaining to the court is that of

announcing the fact and dismissing the cause.").  Indeed, it is well settled that statutes such as

§ 1005(e)(1) of the Act that remove jurisdiction apply to pending cases and ordinarily should be

given immediate effect.  The courts have "regularly applied intervening statutes conferring or

ousting jurisdiction, whether or not jurisdiction lay when the underlying conduct occurred or

when the suit was filed."  Landgraf v. USI Film Prods., 511 U.S. 244, 274 (1994).  This practice

is followed because "jurisdictional statutes speak to the power of the court rather than to the

rights or obligations of the parties." Id. (internal quotation marks and citation omitted); see

also Bruner v. United States, 343 U.S. 112, 116-17 (1952) ("This rule — that, when a law

conferring jurisdiction is repealed without any reservation as to pending cases, all cases fall with

the law — has been adhered to consistently by this Court.").  In this case, the Act has eliminated

the Court's jurisdiction, which means the Court no longer has the power to order the relief the

Magistrate Judge's Order provides.[8]   For this reason, the Court's Order is contrary to law.

The Magistrate Judge also concluded that his Order was a proper exercise of authority to

enforce the applicable Protective Order and Access Procedures, notwithstanding the Act's

withdrawal of the Court's jurisdiction.  See Mem. Order at 11-12.  This conclusion is clearly

erroneous or contrary to law.  As an initial matter, the Protective Order and Access Procedures do

---

[8] That the effect of the Act in eliminating district court jurisdiction with respect to
pending cases such as this one has been fully briefed in the pending D.C. Circuit appeals, does
not change the fact that to grant the relief petitioners' counsel seeks, the Court would be asserting
jurisdiction and authority to order a visit or grant access to a detainee.  Such an assertion of
jurisdiction would be improper in light of the Detainee Treatment Act's withdrawal of habeas
jurisdiction of this Court and investment of exclusive jurisdiction in the Court of Appeals, and
respondents' argument in this regard is in no way immaterial or premature.

not order, require, or compel respondents to permit a counsel visit with a detainee.  As explained

supra, the Access Procedures, which are subsidiary to a Protective Order preventing unauthorized

disclosure of classified or protected information, are incorporated into the Protective Order "to

the extent they place limitations on petitioners' counsel in their access to and interaction with

petitioners or handling of information."  Access Procedures ¶ 6.  While the Access Procedures

certainly operate with the assumption that counsel visits will occur in that they set the terms and

procedures applicable to any such visits, they do not themselves compel respondents to provide

such visits[9] on demand of counsel.[10]  Hence, the Court cannot compel respondents to permit a

visit by counsel with a detainee by relying upon "enforcement" of the terms of the Protective

Order and Access Procedures.

     Thus, the cases cited in the May 11 Memorandum Order to support the order requiring

respondents to permit a counsel visit, see Mem. Order at 12, are distinguishable from the present

context.  Those cases involved either a court's authority to enforce ongoing protective orders

---

     [9] While the Access Procedures provide that "[r]easonable efforts will be made to
accommodate the counsel's request regarding the scheduling of a meeting," that language is
embedded in a paragraph dealing solely with logistical arrangements as to the date and timing of
otherwise appropriate counsel meetings with represented petitioners.  See Access Procedures
§ III.D.1.

     [10] The relationship between counsel visits and the access procedures in this case would be
analogous to other cases in which an omnibus protective order is entered at the outset of the case
governing the use and handling of information that will be exchanged between parties in
discovery.  The omnibus protective order may set the terms of how information obtained in
discovery is to be treated, shared, or stored, for example, but a party's entitlement to any
particular requested discovery is settled through court process (e.g., a motion to compel) and not
through the protective order.  Thus, an omnibus protective order operates with the assumption
that discovery will occur, but typically does not by its own terms obligate the parties to produce
any particular information.

- 15 -

specifically prohibiting public disclosure of confidential discovery information[11] or the court's

power to enforce prospective injunctions though civil contempt penalties.[12]  The cases would also

be distinguishable in that while they may involve a court's authority to wind-up previously

exercised jurisdiction (such as in the oversight of the disposition of documents obtained through

court-sanctioned discovery) or to enforce valid, on-going injunctions, here the Magistrate Judge's

Order wreaks a radical reversal of long-standing practice under the Access Procedures in the

Guantanamo cases, with significant impact in the cases, including that respondents will be

required to provide direct, privileged access to wartime detainees in a military detention facility

by counsel merely purporting to represent a detainee, without any showing by counsel of proof of

appropriate authority to represent the detainee directly or through a next friend satisfying

appropriate standing requirements.  Thus, the Order improperly asserts jurisdiction to move this

case forward in the face of a statutory withdrawal of the Court's jurisdiction by an intervening

Act of Congress, cf. Peacock v. Thomas, 516 U.S. 349, 255 (1996) (concluding that the "primary

---

[11] See Gambale v. Deutsche Bank, AG, 377 F.3d 133, 139 (2d Cir. 2004) (concluding that court has power "to dispose of material in its files as it thinks appropriate or to modify or vacate its own protective orders with respect to" confidential documents after conclusion of case); Poliquin v. Garden Way, Inc., 989 F.2d 527, 535 (1st Cir. 1993) ("Where the district court does protect material during discovery, it is common to provide . . . for post-trial protection including the return or destruction of protected material."); United Nuclear Corp. v. Cranford Ins. Co., 905 F.2d 1424, 1427 (10th Cir. 1990) (concluding that court has power to modify ongoing protective order prohibiting public disclosure of all discovery materials following dismissal of underlying lawsuit).

[12] Broderick v. Donaldson, 437 F.3d 1226 (D.C. Cir. 2006) (concluding that court has power to impose civil contempt sanctions on employer for violation of 1988 order imposing continuing obligations on employer based employee's successful sexual harassment suit); Armstrong v. Executive Office of the President, 1 F.3d 1247, 1281, 1289 (D.C. Cir. 1993) (concluding that court has power to impose civil contempt sanctions based on defendant's failure to comply with "multi-part declaratory and injunctive order" regarding preservation of electronic federal records).

lawsuit must contain an independent basis for federal jurisdiction" in order for the court to

exercise jurisdiction over ancillary enforcement claims),[13] and raises very real separation of

powers concerns.[14]

    For similar reasons, the Magistrate Judge's Order cannot legitimately be grounded in any

authority of the Court under Judge Kollar-Kotelly's decision in Al Odah v United States, 346 F.

Supp. 2d 1 (D.D.C. 2004), which the Magistrate Judge believed permitted the Court to craft

procedures necessary to enforce a right to counsel to pursue a petition, see Mem. Order at 10.

---

    [13] Furthermore, the Magistrate Judge's ruling on petitioners' request for relief pending
resolution of the jurisdictional issue is inconsistent with the sense of the Court, expressed to
counsel, to await anticipated guidance from the D.C. Circuit regarding the effect of the Detainee
Treatment Act before deciding any pending motions.  The only reason respondents have not
moved to dismiss this case in its entirety and have, instead, noted that a stay of a ruling on
petitioner's request for relief would be appropriate pending resolution of the jurisdictional issues,
is due to the sense of the Court conveyed to counsel.  See supra note 4.  Accordingly, even
though respondents have thus far not moved to dismiss this case and continue to allow counsel
for other properly represented detainees to visit Guantanamo pending a decision from the D.C.
Circuit, such actions cannot be construed as a waiver or concession of jurisdiction, even if such a
waiver were possible.  See Floyd v. District of Columbia, 129 F.3d 152, 155 (D.C. Cir. 1997)
(noting that "jurisdiction cannot be waived" and the Court has "an independent obligation to
assure" itself of jurisdiction).  A stay of a ruling by the Court on petitioners' request for relief
pending resolution of the jurisdictional issues would have been appropriate, and for the same
reason it would be appropriate for the Court now to vacate or stay the effect of the Magistrate
Judge's ruling pending resolution of the jurisdictional issues.  But it is not appropriate for the
Magistrate Judge or the Court to grant petitioners' counsel the relief sought without resolution of
the jurisdictional issue.

    [14] See also Cafeteria & Rest. Workers Union, Local 473 v. McElroy, 367 U.S. 886, 890
(1961) ("The control of access to a military base is clearly within the constitutional powers
granted to both Congress and the President"); Hamdi v. Rumsfeld, 294 F.3d 598, 602-03 (4th
Cir. 2002) (court notes in context of challenge to standing of next friend purporting to act on
behalf of enemy combatant detainee that the standing doctrine "ensure[s] that the plaintiff has a
sufficient personal stake in the outcome of a dispute to render judicial resolution of it appropriate
in a society that takes seriously both the idea of separation of powers and, more fundamentally,
the system of democratic self-government that such separation serves") (citation and internal
quotations omitted).

The basis of the Al Odah decision rested not on any absolute right to counsel, but on a court's discretionary, statutory authority in *habeas* cases to appoint counsel to represent Guantanamo petitioners properly before the Court, if warranted.  See id. at 4-5, 7-8 (citing 18 U.S.C. § 3006A).  That authority under the *habeas* statute is now withdrawn with the Act's withdrawal of district court *habeas* jurisdiction (without prejudice, of course, to whether the exclusive review proceedings available in the D.C. Circuit Court of Appeals under the Act entail a right to counsel for detainees involved in such proceedings, see infra at 18-19).  Further, Al Odah did not, as here, involve any issue as to whether a *habeas* case had been properly brought and was properly pending before the Court to begin with, so as to support counsel's direct access to a detainee.  The case had been filed by family member next friends who had retained counsel, and respondents did not object to providing counsel access; merely the monitoring of counsel-detainee meetings was at issue.  See 346 F. Supp. 2d at 4-5 ("[T]he Court has confined its present inquiry to the attorney access issues that uniquely affect the three named Petitioners in this case. Accordingly, the Court considers whether the Government can impose real time monitoring on the three Petitioners.").

The Magistrate Judge's Order also erroneously purports to find authority to order the requested relief in the fact that the Act provides detainees the opportunity to seek review in the D.C. Circuit of the validity of a Combatant Status Review Tribunal determination that the detainee is an enemy combatant and thus properly detainable.  See Mem. Order at 13 n.14. According to the Court, counsel would "presumably" represent Adem in any such proceeding before the D.C. Circuit; thus, "the need to resolve questions regarding the logistics of counsel access will remain an issue, even if the D.C. Circuit and the Supreme Court determine that the

DTA applies to those *habeas* cases currently pending in the District Court." Id.  That an exclusive review proceeding before the D.C. Circuit is possible, however, does not authorize the Court to act on petitioner's requested relief; to the contrary, it precludes the Court from acting on the matter.  As explained above, the Act vests "exclusive" jurisdiction in the D.C. Circuit "to determine the validity of any final decision of a Combatant Status Review Tribunal that an alien is properly detained as an enemy combatant." See Act § 1005(e)(1).  The Act also expressly provides that exclusive review in the D.C. Circuit is applicable to pending cases. Id. § 1005(h).  As the Court of Appeals explained in Telecommunications Research and Action Center v. FCC, 750 F.2d 70, 75, 78-79 (D.C. Cir. 1984), a request for relief in district court that might affect the future, exclusive jurisdiction of the Court of Appeals is subject to the exclusive review of the Court of Appeals.  Consequently, issues of counsel access, and the prerequisites for such access, if any, are exclusive matters for the D.C. Circuit.  No authority can be found for the Magistrate Judge's Order in the fact that an exclusive review mechanism is available for detainees in the D.C. Circuit.  The Magistrate Judge's Order is contrary to the statutory withdrawal of this Court's jurisdiction pursuant to the Detainee Treatment Act.

**II.    The Magistrate Judge's Order is Also Clearly Erroneous and Contrary to Law Because It Is Contrary To The Language of the Access Procedures And The Applicable History And Context of The Guantanamo Cases And Because It Results In a Regime Inconsistent With Jurisdictional Principles.**

**A.    The Magistrate Judge's Interpretation of the Access Procedures Is Contrary to the Language of The Access Procedures and the History and Context of the Litigation, and Thus Is Clearly Erroneous.**

Aside from lacking jurisdiction to order the requested relief, the Magistrate Judge acted in a clearly erroneous fashion in rejecting respondents' position that the Access Procedures require that "[p]rior to being permitted access to the detainee," counsel must "provide evidence of his or her authority to represent the detainee," and then, subsequent to direct access to the detainee being permitted, provide an additional, direct authorization of representation from the detainee on whose behalf the *habeas* petition was filed, "no later than then (10) days after the conclusion of a second visit with the detainee."  See Access Procedures § III.C.  The Access Procedures govern "for purposes of litigating the cases in which this Order [the Protective Order] is issued."  Id. § I.  Consistent with that purpose, § III.C of the Access Procedures provides, in pertinent part:

1.    Prior to being permitted access to the detainee, counsel must provide DoD with a Notification of Representation. This Notification must include the counsel's licensing information, business and email addresses and phone number, as well as the name of the detainee being represented by the counsel. Additionally, counsel shall provide evidence of his or her authority to represent the detainee.

2.    Counsel shall provide evidence of his or her authority to represent the detainee as soon as practicable and in any event no later than ten (10) days after the conclusion of a second visit with the detainee.  The Court recognizes that counsel may not be in a position to present such evidence after the initial meeting with a detainee.  Counsel for detainees and counsel for respondents shall cooperate to the fullest extent possible to reach a reasonable agreement on the number of counsel visits allowed. Should counsel for a detainee believe that the government is unreasonably limiting the number of visits with a detainee, counsel may petition the Court at the appropriate time for relief.

- 20 -

The Access Procedures thus impose, in a paragraph applicable to certain requirements that must be met "[p]rior to being permitted access to the detainee," § III.C.1, a requirement of some evidence of authority to represent the detainee. This evidence has typically taken the form of letters from detainees directly authorizing a challenge to their detention, or affidavits and authorizations of "next friends" who have filed petitions on behalf of detainees. Then, a separate paragraph of the Access Procedures, § III.C.2, requires counsel to submit final evidence of his or her authority to represent the detainee after having the opportunity to meet with the detainee.[15] Hence, the Access Procedures contemplate a two-layer requirement regarding counsel's authority to bring and then maintain the lawsuit.

The Magistrate Judge interpreted § III.C.2, however, merely to refer to the timing of the requirement imposed by the last sentence of § III.C.1. See Mem. Order at 8. The Magistrate Judge's reading, however, fails to account for the fact that a proof of authorization requirement is contained in a paragraph that begins, "Prior to being permitted access to the detainee . . . ." Instead of giving credence to two separate paragraphs in § III.C containing authority of representation requirements, the Magistrate Judge's reading of § III.C effectively, and improperly, moves the last sentence of § III.C.1 to combine it into § III.C.2. This is inconsistent with the structure of the two paragraphs, as well as with the fact that each of the paragraphs in § III.C refers to separate submission requirements.

Furthermore, respondents' reading of the Access Procedures is consistent with the history and context of the Guantanamo *habeas* cases and the application of the Access Procedures in

---

[15] Additional paragraphs in § III.C of the Access Procedures concern notification of withdrawal or termination of representation by counsel, Access Procedures § III.C.3, and certification of the source of funding for counsel in the representation, id. § III.C.4.

those cases, while the Magistrate Judge's reading is inconsistent with that history, context, and application. The Guantanamo detainee *habeas* cases pending when the Protective Order and Access Procedures were negotiated and entered in the cases were uniformly next friend cases brought by family member next friends. See In re Guantanamo Detainee Cases, 344 F. Supp. 2d 174 (D.D.C. 2004) (entering Protective Order on Nov. 8, 2004). The counsel access procedures that served as the basis for the current Access Procedures were initially proposed by respondents in July 2004. The procedures explicitly required, in what would become the current § III.C.1, that "[p]rior to being permitted access to the detainee," in addition to a Notification of Representation,

> the counsel must provide sufficient details regarding the circumstances of his/her retention to demonstrate the counsel's authority or standing to bring a habeas or other federal court action on the detainee's behalf.

See Response to Complaint in Accordance with Court's Order of July 25, 2004, Exhibit A, in Al Odah v. United States, No. 02-CV-0828 (CKK) (dkt. no. 46) (copy attached for the Court's convenience at Tab 1). In addition, in a paragraph § III.C.2, the procedures provided,

> After meeting with the detainee, counsel must provide DoD with an *Acknowledgement of Representation*. This document must be signed by the detainee and must specifically state that the detainee is being represented in habeas or other federal litigation by counsel named in the Acknowledgement.

Id. (emphasis and misspelling of "Acknowledgment" in original). Furthermore, it was expressly contemplated and conveyed to the Court that once counsel demonstrated his or her authority "to bring a habeas . . . action on the detainee's behalf," i.e., at the time through demonstration that the case was an appropriate next friend case, the opportunity for access to the detainee would allow, where appropriate, conversion of the next friend petition into a petition directly authorized by the detainee. See, e.g., Tab 1 (Response to Complaint in Accordance with Court's Order of

- 22 -

July 25, 2004 in <u>Al Odah</u>) at p. 30 n.14 ("the access [to detainees] provided by the military will allow counsel to meet with the detainees, and counsel may then wish to convert their next-friend petition into a direct petition or otherwise amend their petition").

Subsequently, other aspects of the Protective Order and Access Procedures were the subject of negotiations and litigation of certain issues before Senior Judge Green, who served as Coordinating Judge in the cases at the time. This process culminated in a version of the access procedures being proposed by one petitioner's counsel,[16] to which respondents objected in part.[17] Both versions proposed by the parties contained the versions of § III.C.1 and C.2 originally proposed by respondents, with the additional requirement that the "Acknowledgment of Representation" be provided "as soon as is practical," and the provisions were considered non-controversial, though there had been discussion between counsel for the parties regarding the number of visits with a detainee that counsel would be allowed once access was permitted to obtain any such direct authorization of representation from the detainee. Thus, when Judge Green issued the Protective Order and Access Procedures in their current form, no change in contemplated operation of Access Procedures, <u>i.e.</u>, access being conditioned on initial proof of authority to represent a detainee with the requirement that direct authorization be submitted "as

---

[16] <u>See</u> Petr's Mot. for Order Requiring Parties to Abide By Proposed Procedures for Counsel Access & Ex. A (Proposed Procedures for Counsel Access) (dkt. no. 33) (filed Oct. 22, 2004 in *Begg v. Bush*, No. 04-CV-1137 (RMC)) (copy attached for the Court's convenience at Tab 2).

[17] <u>See</u> Resps' Response to Nov. 1, 2004 Order Setting Deadline for Submission in Response to Petr's Mot. for Order Requiring Parties to Abide By Proposed Procedures for Counsel Access & Ex. 1 (Revised Procedures for Counsel Access) (filed Nov. 4, 2004 in *In re Guantanamo Detainee Cases*, Nos. 02-CV-0299, *et al.*) (copy attached for the Court's convenience at Tab 3).

soon as practical" thereafter (though in no event more than 10 days after a second visit, under the final version of the Access Procedures), was comprehended.

Indeed, the consistent practice of respondents throughout the litigation has been to require counsel to provide proof of some authority to represent a detainee, either through a next friend or directly, prior to counsel being permitted access to the detainee. It was not even suspected that the language of § III.C.1 and C.2 might raise an issue until late last year when respondents began to confront various petitioners' counsel seeking access to detainees regarding counsel's authority to represent detainees they purported to represent, either directly or through improper (in respondents' view) next friends. It was at that time a reading of § III.C.1 and C.2 consistent with the Magistrate Judge's reading in this case began to be cited by counsel resistant to providing evidence of proof of their representation authority.

The Magistrate Judge has attempted to dismiss respondents' position as "hard to take seriously" because in his view, the next friend device was merely a "legal fiction" that became "largely irrelevant" because of the possibility that, in light of the notifications provided by DoD to detainees of their ability to contact the Court and submit a petition directly and the opportunity for visits between counsel and detainees in properly brought next friend cases, detainees might directly submit or authorize a *habeas* petition, such that the next friend issue becomes moot. See Mem. Order at 8-9; Adem, 2006 WL 751309 at *4, *10 n.29, *12. The fact of the matter is, however, that the next friend device has not been "irrelevant" or mere fiction in the Guantanamo *habeas* cases. Indeed, *habeas* counsel have sought and the Court has granted relief, such as requiring advance notice of any transfer of the detainee from Guantanamo, in cases brought by putative next friends prior to counsel visiting detainees, presumably based on the putative

standing of the next friends.  Moreover, the possibility that a next friend authorization might become moot does not mean that the Access Procedures never contemplated a showing of representation authority prior to access to a detainee being granted.  Indeed, because in a "next friend" case, the detainee on whose behalf the case is brought "remains the real party in interest," see Whitmore, 495 U.S. at 163, it is that detainee's legitimate desires and wishes that control in the litigation.  See also id. at 164 (cautioning against "intruders or uninvited meddlers" filing lawsuits on behalf of unwitting strangers).  It is unremarkable that a next friend authorization might become moot once direct access to the detainee on whose behalf a case is brought is obtained; the likelihood that the detainee may express his desires with respect to a lawsuit brought on his behalf certainly does not render the next friend device "irrelevant."

In sum, the Magistrate Judge's apparent view that respondents' reading of the Access Procedures is contrary to the factual and procedural underpinnings of the Guantanamo cases is wrong.  Indeed, for these reasons explained above, the Magistrate Judge's reading of the Access Procedures is inconsistent with the language of the Access Procedures, as well as with the history and context of the Guantanamo *habeas* cases and the application of the Access Procedures in the cases, and is clearly erroneous.[18]

---

[18] Previously, in Adem, Judge Roberts rejected the history and context of the Access Procedures as developed in the Guantanamo *habeas* case as being of any value in interpreting the Access Procedures.  See Adem, 2006 WL 1193853 at *6 (dkt. no. 42).  However, the Access Procedures were developed in habeas cases that were being coordinated pursuant to the order and direction of the Court as a whole, including through a September 15, 2004 Resolution of the Executive Session – coordination in which this Court participated at the time by transferring then-pending Guantanamo cases to Judge Green for handling consistent with the Court's orders. Furthermore, the Court in this case imported for use in this case the Access Procedures developed under Judge Green.  See Order (Oct. 11, 2005).  It would be unreasonable in such circumstances for the Court to interpret the Access Procedures inconsistent with that development and long-standing practice, especially in light of the Detainee Treatment Act and

**B.      The Magistrate Judge's Interpretation of the Access Procedures Results In The Extra-Legal Assertion of Court Jurisdiction And Is Contrary To Law.**

As explained above, the Magistrate Judge's reading of the Access Procedures is that counsel who purport to represent a detainee through a putative next friend or otherwise need not provide any evidence of any authority to represent the detainee prior to being entitled to privileged access to the detainee. Even if such a reading were possible divorced from consideration of the history and context of the Guantanamo *habeas* cases, the reading creates a scheme that is contrary to law, and it can and should be rejected for that reason alone. The Magistrate Judge's interpretation of the Access Procedures essentially results in the creation of court jurisdiction in *habeas* actions that is contrary to the plain language of the *habeas* statute and requirements for standing under that statute. Section 2242 of the *habeas* statute requires that a *habeas* petition must be "signed and verified by the person for whose relief it is intended or by someone acting in his behalf." 28 U.S.C. § 2242. Thus, the law provides only two avenues by which a *habeas* petition may be properly brought: (1) the individual who is seeking *habeas* relief must sign and verify the petition, i.e., the petition must be directly authorized; or (2) the petition must be signed and verified by another person acting on that individual's behalf – a "next friend" – whom the Supreme Court has determined must satisfy certain requirements in order to properly serve in this capacity. See Whitmore, 495 U.S. at 163-64. The Whitmore requirements have not been determined to have been satisfied in this case; thus, the Magistrate Judge's Order in effect invents a new, third option for standing that is not found in the *habeas* statute or case law. Under the theory reflected in the Memorandum Order, a court may exercise jurisdiction over a case

the previously expressed sense of the Court to defer action in the Guantanamo habeas cases pending guidance from the Court of Appeals on the jurisdictional issue.

simply upon some person acting as a conduit and passing along to an attorney a purported desire for assistance of counsel by some other individual, without any demonstration of an attorney-client relationship between counsel and the person on whose behalf relief is sought or satisfaction of the "next friend" requirements established by the Supreme Court.  See Mem. Order at 9 ("[T]he detainees who initiated a *habeas* petition on behalf of a fellow detainee generally do not seek to serve as a 'next friend' in the traditional sense, but are simply passing on another detainee's request for help, a fact that can be confirmed once counsel meets directly with the detainee.").[19]   There is simply no basis in the law for such an approach.[20]

The Magistrate Judge's Order attempts to justify the creation of this unprecedented "conduit" theory of establishing standing in *habeas* cases by citing certain concerns about the circumstances of detention at Guantanamo Bay which, in the Magistrate Judge's view, apparently warrant an extra-legal scheme for establishing jurisdiction in these *habeas* cases.  Not only is the assessment reflected in the Memorandum Order of the factual circumstances involved often

---

[19]   Although the Magistrate Judge believed the "next friend" standing doctrine to be merely a "legal fiction" in the Guantanamo detainee *habeas* cases and largely irrelevant in these cases, see Mem. Order at 8-9, other Judges of the Court who have addressed the issue of a detainee's ability to seek *habeas* relief on another detainee's behalf have recognized that the Supreme Court's Whitmore requirements for next friend standing must be satisfied before the Court may exercise jurisdiction over the case.  See, e.g., Ahmed v. Bush, No. 05-CV-0665 (RWR) (Order dated May 24, 2005) (dkt. no. 12); Hamlily v. Bush, No. 05-CV-0763 (JDB) (Order dated October 3, 2005) (dkt. no. 16); Ahmed Doe v. Bush, No. 05-CV-1458 (ESH), et al. (Order dated November 4, 2005) (dkt. no. 10) (Oberdorfer, J.).

[20]   Thus, even if respondents' reading of § III.C of the Access Procedures was not consistent with the plain language of § III.C, as the Magistrate Judge believed, respondents' application of the Access Procedures to require some demonstration of appropriate representation authority prior to providing access to the detainee "for purposes of litigating the case[] in which the . . . [Access Procedures were] issued," Access Procedures § I, is compelled by jurisdictional considerations.

inaccurate, but the circumstances of detention at Guantanamo Bay in any event do not justify disregarding the plain language of the *habeas* statute and governing case law.

The Magistrate Judge incorrectly concluded that an analysis of whether proper *habeas* standing exists in this case may be avoided in favor of an extra-legal scheme for establishing jurisdiction because the notifications provided by the Department of Defense to detainees at Guantanamo Bay regarding their right to file a petition for *habeas* corpus allegedly caused some level of confusion among unnamed detainees. Specifically, the Magistrate Judge criticized the notifications as "fail[ing] to provide any explanation of what a petition for *habeas corpus* is or how a detainee would go about getting one," Mem. Order at 3 n.6, and informing the detainees that they can "ask a friend" to file a petition on their behalf without also advising them of the jurisdictional requirements of "next friend" standing as articulated by the Supreme Court, see id. at 3. The Order cites no legal basis for these critiques. Moreover, the government cannot simply waive jurisdictional requirements mandated by the *habeas* statute and governing Supreme Court precedent by advising detainees that they may "ask a friend" to file a *habeas* petition on their behalf, nor was it the government's intent to do so. See Floyd v. District of Columbia, 129 F.3d 152, 155 (D.C. Cir. 1997) (noting that "jurisdiction cannot be waived" and the Court has "an independent obligation to assure" itself of jurisdiction).

In any event, the record in this case establishes that the Department of Defense's notifications adequately informed detainees how they may challenge the legality of their detention and, as a result, scores of petitions have been filed on behalf of detainees at Guantanamo Bay. The notifications provided beginning in December 2004 notified each detainee at Guantanamo Bay that "you may challenge your detention in a United States court"

and "[y]ou may ask a civilian judge to look at the lawfulness of your detention through a process

called a *petition for writ of habeas corpus*." See Second Declaration of Frank Sweigart, Ex. A-C

(Exhibit A to Resps' Reply in Support of Mot. for Order to Show Cause Why Case Should Not

Be Dismissed for Lack of Proper "Next Friend" Standing, dkt. no. 10).  The notifications further

explained that detainees may "ask a friend or family member or a lawyer" to file a petition on

their behalf, or they may do so themselves by writing to the United States District Court for the

District of Columbia at an address provided on the notifications.  See id.  Thus, although the

notifications may not have provided the detainees with a precise legal definition and explanation

of a "petition for writ of *habeas corpus*," they clearly explained to the detainees that they may

ask a United States judge to review whether they should be detained at Guantanamo Bay and

provided them with options on how to do so.  As a result of these notifications, 58 petitions for

writ of *habeas corpus*, i.e., letters construed as petitions, have already been filed by detainees

writing directly to the Court.[21]  Further, other detainees have directly authorized petitions by

writing to lawyers already representing other detainees, and scores of additional detainees have

filed petitions through family members and friends who arguably satisfy the Supreme Court's

_____

       [21] As explained in the record, detainees are afforded the opportunity regularly to send and
receive mail through the mail system administered by the Department of Defense and through the
International Committee for the Red Cross.  See Sweigart Declaration, Ex. D.  These systems
were developed and operational prior to and independent of the Protective Order in this
litigation.  See id.; see also, e.g., Coalition of Clergy, Lawyers, and Professors v. Bush, 310 F.3d
1153, 1160 (9th Cir. 2002) (noting, pre-Rasul, that Guantanamo detainees were able to send and
receive mail and were permitted to communicate outside Guantanamo through the International
Committee of the Red Cross).  Given that Guantanamo Bay is an overseas military base
operating during a time of war, respondents acknowledge that mail may take some time to be
transmitted to and from Guantanamo Bay through the United States Postal Service (which is
beyond the control of the Department of Defense), however, the processing by the Department of
Defense of incoming and outgoing detainee mail at Guantanamo Bay has consistently taken two
weeks, on average.  See Sweigart Declaration, Ex. D.

requirements for next friend standing.[22]  Given that hundreds of detainees have legitimately

sought to challenge the legality of their detention by seeking *habeas* relief in federal court, the

Magistrate Judge's conclusion that the notifications were inherently misleading and insufficient

is incorrect,[23] and in any event, does not justify excusing petitioners from satisfying the necessary

jurisdictional requirements in *habeas* cases.[24]  See Whitmore, 495 U.S. at 155-56 ("A federal

court is powerless to create its own jurisdiction by embellishing otherwise deficient allegations of

standing.").[25]

_____

[22] In addition, as explained supra, detainees who indicate to Guantanamo personnel that they desire a lawyer, are provided a form in their own language (or are read the form in their language if they are illiterate) to request a lawyer from the ABA.  See Second Declaration of Frank Sweigart ¶ 7 & Ex. E (Exhibit A to Resps' Reply in Support of Mot. for Order to Show Cause Why Case Should Not Be Dismissed for Lack of Proper "Next Friend" Standing, dkt. no. 10).

[23] The Magistrate Judge characterized respondents' contention as an "unconscionable" and "unworkable" demand that detainees "identify a specific lawyer from among all the volunteer lawyers – most of whom are unknown to the detainee before a meeting . . . ."  See Mem. Order at 10.  That characterization is erroneous, however; as demonstrated above, respondents make no such demand, but rather have provided reasonable mechanisms, consistent with the jurisdictional requirements in *habeas* cases, for detainees to contact the Court or a source for counsel should they desire to do so.

[24] Of course, because the Magistrate Judge's Order purports to rest on the interpretation of operative language of the Access Procedures and does not resolve respondents' motion for an order to show cause as to why the case should not be dismissed for lack of proper "next friend" standing, further proceedings on issues such as the adequacy of the notifications to detainees for purposes of considering respondents' challenge to next friend standing conceivably would be appropriate should the jurisdictional issues under the Detainee Treatment Act be resolved in favor of retention of district court jurisdiction over detainees' *habeas* challenges.  Specifically, in such circumstances respondents should be granted the opportunity to respond to the supplemental factual submissions on the issues in this case, i.e., the supplemental declaration of Mr. Kabir in Razakah v. Bush, No. 05-CV-2370 (EGS) (dkt. no. 8), relied upon by the Magistrate Judge in this case.

[25] As explained supra at 17-18, Judge Kollar-Kotelly's opinion in Al Odah cannot be viewed somehow authorizing the Court to ignore jurisdictional standing requirements, if such a

The Magistrate Judge also justified his interpretation of the Access Procedures on the assertion that petitioners Mahnut and Amahmud personally authorized representation by counsel, citing Mr. Kabir's declaration submitted in connection with the petition and a supplemental declaration from Kabir submitted in connection with petitioners' counsel's February 17, 2006 letter to the Magistrate Judge.  See Mem. Order at 3-4.  While the Magistrate Judge's reading of the Access Procedures arguably would not depend on such matters in any event, the declarations cited by the Magistrate Judge do not bear the weight placed upon them in the Memorandum Order.  The declaration submitted with the petition in this case states only that Mr. Kabir allegedly knows that the almost three dozen people listed in the declaration "want lawyers," see Petition, Exhibit (dkt. no. 1), though he offers no specifics whatsoever in this regard.  The supplemental declaration as well says nothing specific about why petitioners in particular were or are not able to avail themselves of the means to access the Court and/or counsel provided by DoD; other than stating that petitioners allegedly do not want their families contacted, Gutierrez Declaration ¶ 22, it provides only subjective, conclusory, and hearsay generalizations about alleged confusion among detainees at Guantanamo Bay regarding the filing of *habeas* petitions.  DoD, however, has endeavored to provide reasonable mechanisms, consistent with the jurisdictional requirements in *habeas* cases, for detainees to contact the Court or a source for counsel directly, should they choose to do so.[26]  Any dissatisfaction with those mechanisms,

---

thing were even possible.  The Al Odah case did not involve a situation in which a counsel's authority to act in the case was in question.

[26] The Magistrate Judge also cited a statement by petitioner Amahmud to his Combatant Status Review Tribunal as evidence of authorization of suit.  Petitioner stated at his November 2004 Combatant Status Review Tribunal hearing, "I wanted the US Court system or US Judges to determine my case, they have to come up with, if I am innocent or not. . . .  Other wise [sic] do

however, is not appropriate justification for an interpretation of the Access Procedures that is inconsistent with the jurisdictional requirements in *habeas* cases.

Furthermore, the prejudicial impact of the Magistrate Judge's interpretation of the Access Procedures is significant. Under the Magistrate Judge's interpretation, which if allowed to stand would be potentially applicable not only in this case but in numerous other Guantanamo cases in which respondents have challenged next friend standing or counsel have failed to present sufficient evidence of their authority to represent a detainee,[27] respondents would be required to provide direct, privileged access to wartime detainees in a military detention facility by counsel merely purporting to represent a detainee, without any showing by counsel of proof of appropriate authority to represent the detainee directly or through a next friend meeting appropriate standing requirements. Indeed, this interpretation of the Access Procedures could permit virtually any attorney to file suit asserting that they represent a detainee and thereby require the government to provide them privileged access to the detainee. Even if counsel's ability to claim authority to represent a detainee were cabined by having to receive word of a detainee's desire for counsel through a purported "conduit" detainee, that arrangement could lead

---

something faster to finish my case. I would like the results as soon as possible." Mem. Order at 9-10. That statement, however, was made well prior to DoD's delivery of notifications advising detainees how they could challenge their detention by submitting a letter/petition for writ of habeas corpus to the federal court. Given that petitioner Amahmud has not availed himself of the opportunities provided by DoD and submitted any such letter/petition challenging his detention, and his purported next friend, Mr. Kabir, has not provided an adequate explanation why petitioner is unable to do so, Mr. Amahmud's isolated statement during the Combatant Status Review Tribunal proceedings does not constitute sufficient evidence that the jurisdictional prerequisites for this *habeas* case have been satisfied.

[27] Approximately 20 such cases currently exist including those in which respondents have challenged next friend standing.

to detainees effectively initiating *habeas* petitions on behalf of, with concomitant required counsel access to, any detainee they recall once having a conversation with that gave the "conduit" detainee the inkling that the other detainee might want a lawyer or might want to challenge his detention.[28]  The separation of powers concerns implicated in such an arrangement of compelled access to wartime detainees in a military detention facility are substantial.  Such an arrangement flies in the face of fundamental standing and jurisdictional concepts in the law of *habeas corpus*.

Accordingly, the Magistrate Judge's interpretation of the Access Procedures results in an extra-legal assertion of court jurisdiction and, thus, is clearly erroneous and contrary to law and should be set aside.

**III.    The Magistrate Judge's Order Should Be Stayed Pending Reconsideration.**

The Court should immediately stay the Magistrate Judge's Order to the extent it requires action by respondents pending the Court's resolution of respondents' motion for reconsideration.[29]  Petitioners' counsel have recently requested the visit to Guantanamo ordered by the Magistrate Judge beginning June 17, 2006, though the feasibility and logistics of such a visit for Guantanamo are such that a visit will not be supportable until July, given other counsel

---

[28] Indeed, the putative next friend in this case, Mr. Kabir, purports to act as next friend on behalf of approximately three dozen detainees, with a dearth of specifics as to why any particular detainee on Mr. Kabir's list is or was unable to avail himself of the means to access the Court and/or counsel provided by DoD.

[29] A stay of resolution of petitioner's request for relief in this matter would be appropriate pending resolution of the effect of the Detainee Treatment Act on the pending cases, including this one.  If such a course is taken, however, it is imperative that the Magistrate Judge's Order be stayed to preserve the status quo pending resolution of the Detainee Treatment Act issues.

visits, military commission matters, and other operational needs of the base.[30]  Respondents,

however, should not be required to provide direct, privileged access to a wartime detainee in a

military detention facility by counsel merely purporting to represent the detainee, without an

appropriate showing by counsel of proof of appropriate authority to represent the detainee

directly or through a next friend meeting appropriate standing requirements, as is contemplated

by the Magistrate Judge's Order, prior to resolution of this motion for reconsideration.  Aside

from the significant jurisdictional issues that exist given the statutory withdrawal of the Court's

jurisdiction in the Detainee Treatment Act of 2005 and otherwise, as well as the gravely serious

issue of the construction of Access Procedures applicable in the Guantanamo cases, such access

raises significant separation of powers concerns.  See supra at 32-33.  Those harms will be

incurred in just a few weeks under the current visit request of counsel unless the Order is stayed.

Cf. Cuomo v. United States Nuclear Regulatory Comm'n, 772 F.2d 972, 974 (D.C. Cir. 1985) (in

deciding stay pending appeal, court balances: "(1) the likelihood that the party seeking the stay

will prevail on the merits of the appeal; (2) the likelihood that the moving party will be

irreparably harmed absent a stay; (3) the prospect that others will be harmed if the court grants

the stay; and (4) the public interest in granting the stay;" "stay may be granted with either a high

probability of success and some injury, or vice versa").

      Finally, any potential for harm to petitioners would not outweigh the need for stay.

Congress has by statute now withdrawn the jurisdiction of this Court to proceed in the case.

Maintenance of the status quo through a stay of the Order pending resolution of the motion for

---

[30] Respondents' counsel is discussing alternative visit dates with petitioners' counsel.

reconsideration would not outweigh the potential harms implicated by allowing the Order it's full effect.

Accordingly, the Court should immediately stay the Magistrate Judge's Order.

## CONCLUSION

For the foregoing reasons, the Magistrate Judge's Order is contrary to law and clearly erroneous – it is clear from all the circumstances that a mistake has been committed.  The Memorandum Order, accordingly, should be set aside.  Furthermore, the Order should be stayed pending resolution of respondents' motion to reconsider the Order.

Dated: May 25, 2006                    Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

DOUGLAS N. LETTER
Terrorism Litigation Counsel

     /s/ Terry M. Henry
JOSEPH H. HUNT (D.C. Bar No. 431134)
VINCENT M. GARVEY (D.C. Bar No. 127191)
TERRY M. HENRY
JAMES J. SCHWARTZ
PREEYA M. NORONHA
ROBERT J. KATERBERG
NICHOLAS J. PATTERSON
ANDREW I. WARDEN
EDWARD H. WHITE
MARC A. PEREZ
Attorneys
United States Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Ave., N.W.  Rm. 7212
Washington, DC  20530
Tel:  (202) 514-4107
Fax:  (202) 616-8470

Attorneys for Respondents

- 35 -