**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

GHANIM-ABDULRAHMAN AL-HARBI,
*et al.,*

      *Petitioners,*

           v.

GEORGE W. BUSH,
*et al.*

      *Respondents.*

**Civil Action No. 05-CV-02479 (HHK)**

<u>**PETITIONERS' REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF PETITIONERS' MOTION FOR ENTRY OF AMENDED PROTECTIVE ORDER**</u>

      Petitioners' Motion seeks straightforward and modest relief that is squarely rooted in applicable precedent which the Respondent's opposition continues to disregard.  Entry of the Amended Protective Order is necessary to secure the Petitioners' well-established right to have access to counsel.  This is the same access to counsel currently enjoyed by scores of other detainees in whose cases the Amended Protective Order has already been entered.

      The pending motion is not an academic exercise.  Detainee mail addressed to Douglas K. Spaulding, one of the Petitioners' counsel in this case, has been received and is being kept at the secure facility.  It may not be reviewed by counsel unless the Amended Protective Order is entered in this case.  Even the most rudimentary means of communication between a lawyer and his client are unavailable in the absence of the Amended Protective Order.[1]

---

[1]    Although counsel in this case has requested the Privilege Review Team to review the detainee mail to determine whether it may be declassified, no such determination has been made and the detainee's efforts to communicate with counsel remain blocked.

As has been repeatedly held in other Guantanamo Bay detainee cases in this court, the Respondents' objections to the standing of Petitioners, or the fellow detainee who communicated with his attorney the Petitioners' desire to obtain counsel, is without merit.  In *Adem v. Bush*, No. Civ.A.05CV00723 (RWR)(AK), 2006 WL 751309 (D.D.C. Mar. 21, 2006), *recons. denied*, 2006 WL 1193853 (D.D.C. Apr. 28, 2006), Magistrate Judge Alan Kay rejected both the "next friend" and "existing procedures" arguments that Respondents are attempting to assert in this case, and ordered Respondents to comply with the Amended Protective Order and allow Petitioners' counsel access to their clients.  Magistrate Judge Kay's decision in *Adem* was affirmed by Judge Roberts on April 28, 2006.  *See also* Order, *Razakah v. Bush*, Case No. 05-2370 (EGS)(D.D.C. May 18, 2006); *see also* Order, *Al Salami v. Bush*, Case No. 1:05-cv-02452 (PLF) (D.D.C. Apr. 13, 2006).

The Department of Defense (DoD) procedures provided to detainees, and upon which the Respondents rely, expressly provide that detainees "may ask a friend or family member or a lawyer to file such a petition with the court."  *See* Exhibits A-C to the Declaration of Frank Sweigart dated September 19, 2005.  It is ironic that those very DoD procedures, which Respondents claim were implemented to *assist* detainees in procuring counsel are now being used by Respondents to *deprive* the Petitioners of their right to counsel.  Because Respondents' arguments against entry of the Amended Protective Order are without merit, Petitioners' motion should be granted.

## I.    Background

Each of the Petitioners in this case has been kept virtually *incommunicado* at the Guantanamo Bay Naval Station detention facility for several years.  Overcoming this imposed isolation, these Petitioners have managed to make known their desire to be represented by counsel.

Nearly nine months ago the Petitioners communicated their request for counsel to a fellow detainee, Elham Battayav, who was himself already represented by attorneys from the law firm of Perkins Coie LLP in a separate *habeas corpus* petition filed in this court as Case No. 1:05-cv-00714 (RBW).

Thomas R. Johnson, one of Battayav's counsel, executed a Declaration that was attached to the Petition for Writ of *Habeas Corpus* in this case. Mr. Johnson stated:

> 4.      On August 23, 24, and 25, I met with Mr. Battayav in an interview cell at Guantanamo Bay. I was accompanied by Mr. William Hopkins, a hired translator. During our conversation, I explained to Mr. Battayav the American concept of "Next Friend" with respect to representation before a court of law. After receiving my explanation, Mr. Battayav said that he understood and told me that, during his almost four years of imprisonment at Guantanamo Bay, he had come to know a few detainees on a meaningful level.

> 5.      Mr. Battayav then explained to me that there were three detainees [the Petitioners in this case] who had expressed to Mr. Battayav a desire to be represented by counsel in connection with their imprisonment at Guantanamo Bay. These prisoners all challenged the lawfulness of their detention and wished to have counsel assist them in securing their release from the prison camp at Guantanamo Bay. Mr. Battayav told me that he knew these men and understood their desire to be represented by counsel for these purposes. I explained to Mr. Battayav that I would pass these persons' names along to the Center for Constitutional Rights ("CCR") in New York and that CCR would either represent these individuals or find lawyers who would.

Declaration of Thomas R. Johnson ("Thomas Decl.") at ¶¶ 4-5.

Based upon the Petitioners' requests for counsel, as communicated by Mr. Battayav through his lawyer, the Center for Constitutional Rights filed a petition instituting this case on December 28, 2006. The Petition is filed "directly" on behalf of each of the Petitioners by their counsel. *See* Petition for Writ of *Habeas Corpus* ¶¶ 3, 5 and 7 ("Upon information and belief, Petitioner desires undersigned counsel to file this petition directly on his behalf."). In addition to the direct filing by Petitioners, Mr. Battayav also alternatively filed as Next Friend "in order to assist" Petitioners. *Id.* at ¶¶ 4, 6 and 8.

3

## II.     Argument

"[T]he writ of *habeas corpus* is the fundamental instrument for safeguarding individual freedom against arbitrary and lawless state action."  *Harris v. Nelson*, 394 U.S. 286, 290-291 (1969).  The Supreme Court affirmed the applicability of the Great Writ's protections to Guantanamo Bay detainees in *Rasul v. Bush*, 542 U.S. 466, 485 (2004), holding that "federal courts have jurisdiction to determine the legality of the Executive's potentially indefinite detention of individuals who claim to be wholly innocent of wrongdoing."  In *Al Odah v. United States*, 346 F. Supp. 2d 1 (D.D.C. 2004), the court determined that Guantanamo Bay detainees are entitled to be represented by counsel in connection with their *habeas corpus* petitions. Unless the Amended Protective Order is entered in this case, the Petitioners will be denied their legal right to assistance of counsel.

Without having access to counsel, Petitioners cannot meaningfully avail themselves of the *habeas corpus* jurisdiction extended to this Court by *Rasul.*  Respondents' opposition to entry of the Amended Protective Order – a prerequisite to communicating with counsel – relies on arguments that have already been rejected by this court and thus appears to be a thinly-veiled attempt to stall, delay or prevent detainees from exercising their right to counsel.  Moreover, Respondents have not identified any prejudice that they will suffer from entry of the Amended Protective Order, nor could they given that counsel access to detainees in other cases in which the Amended Protective Order has already been entered continues without interruption. Respondents' attempt to prevent counsel access here should be denied.

### A.     Respondents' Next Friend Challenge is Without Merit Because the Petition in This Case is Filed Directly

The Petition in this case is filed directly on behalf of Petitioners, and in addition is filed alternatively through a next friend and fellow detainee.  Respondents have failed to present any argument objecting to the direct Petition filed on behalf of Petitioners by their counsel.

Respondents do not dispute that the Petitioners have requested counsel to represent them in challenging their detention. Respondents have not challenged the substance, accuracy or veracity of Petitioners' statements as reported by Mr. Battayav in the declaration attached to the Petition. Those statements clearly communicate Petitioners' desires to "have counsel assist them in securing their release from the prison camp at Guantanamo Bay." *See* Thomas Decl. at ¶ 5. Respondents' "next friend" objections are simply not applicable to Petitioners' direct Petition, and they provide no basis for refusing to enter the Amended Protective Order to allow access to counsel.

    **B.**    **Respondents' "Next Friend" Challenge is Without Merit Because This Case Does Not Involve Traditional Concepts of Next Friend Standing**

As Magistrate Judge Kay recently articulated, a detainee who provides information upon which a *habeas* petition is filed on behalf of a fellow detainee should not be considered to be acting as a "next friend" in the traditional sense. *See Adem,* 2006 WL 751309, at *4-5 (reviewing history of use of "next friend" devise in Guantanamo *habeas* cases), *recons. denied*, 2006 WL 1193853 (D.D.C. Apr. 28, 2006); *see also* Order, *Sadar Doe v. Bush*, No. 05-CV-1704 (JR)(LFO)(AK) (D.D.C. May 11, 2006)("*Doe* Order"). Mr. Battayav does not seek to stand in Petitioners' shoes to represent their interests throughout the course of their *habeas* challenge. Rather, Mr. Battayav seeks to represent Petitioners' interests only until the undersigned counsel can establish more direct communications with their clients. Thus, Petitioners only rely on the legal concept of a "next friend" in this case to demonstrate that they "seek to challenge their detention in the first instance." *Adem*, 2006 WL 751309, at *4. For these reasons, Judge Kay recently described the "next friend" mechanism as "largely irrelevant" in detainee *habeas* cases. *See id.* at *3-5.

Respondents argue that Petitioners are not entitled to entry of the Amended Protective Order and access to their counsel because their "next friend" Mr. Battayav lacks standing to bring this action.  *See* Respondents' Memorandum in Opposition to Petitioners' Motion for Entry of Amended Protective Order ("Opp.").[2]  In support of this contention, Respondents rely on *Whitmore v. Arkansas*, 495 U.S. 149 (1990).  In *Whitmore*, the Supreme Court held that a third party lacked standing to challenge the validity of a death sentence imposed on a defendant convicted of capital murder who had *elected to forgo his right of appeal* to the State Supreme Court.  *Id.* at 166 (emphasis added).  In dismissing Whitmore's writ of *certiorari* for want of jurisdiction, the Supreme Court concluded that Whitmore did not seek a writ of *habeas corpus* on behalf of the convicted defendant but instead desired to intervene in a state-court proceeding to appeal the defendant's conviction and death sentence.  *Id.* at 164.  Unlike Whitmore, Battayav is a party to this *habeas* action at the request of Petitioners not to advance his own agenda.  Because none of the policy concerns elucidated in *Whitmore* and raised by Respondents in their opposition are present in this case, Respondents' reliance on *Whitmore* is misplaced.

### C. Respondents' "Next Friend" Challenge Will Not Be Ripe Until the Amended Protective Order is Entered and Respondents Demonstrate That the Undersigned Counsel have Failed to Provide Direct Evidence of Their Authority to Represent Petitioners

Under the terms of the Amended Protective Order, and case law interpreting the Order, the undersigned counsel would be entitled to two visits with each of the Petitioners and an

---

[2] When the undersigned counsel contacted Respondents' counsel on April 17, 2006, to notify them of Petitioners' intent to file its Motion for Entry of the Amended Protective Order, Respondents refused to consent to the motion on the basis that the Detainee Treatment Act of 2005 ("DTA") divested this Court of the subject matter jurisdiction to enter the Amended Protective Order.  Respondents did not raise a "next friend" issue.  That issue was first raised in the written Opposition filed in response to Judge Kennedy's Order dated May 11, 2006, CA 05-02479. *See* Respondents' Memorandum in Opposition to Petitioners' Motion for Entry of Amended Protective Order, *Al-Harbi v. Bush*, Case No. 1:05-cv-02479 (HHK) (D.D.C. May 25, 2006).  Because Respondents did not initially raise the "next friend" issue, Petitioners did not address it in their opening motion.

additional period of ten days before any challenge to Battayav's standing as "next friend" would be ripe.  *See* Amended Protective Order, Ex. A § III.C.2; *see also Adem*, 2006 WL 751309, at *12; Memorandum Order, *Sadar Doe v. Bush,* Case No. 1:05-cv-01704 (JR) (D.D.C. May 11, 2006), at 6; Order, *Razakah v. Bush*, No. 05-2370 (EGS) (D.D.C. May 18, 2006), at 4; Memorandum Order, *Said v. Bush*, No. 05-2384 (RWR) (AK) (D.D.C. May 23, 2006), 4, *aff'd* by Judge Roberts on May 26, 2006 (Minute Order, *Said*, (D.D.C. May 26, 2006)).  As explained in *Adem*, if the undersigned counsel obtain evidence of their authority to represent Petitioners within the timeframe established under the Amended Protective Order, this Court can simply convert the "next friend" petition into a direct petition as has been done in numerous cases.  *See* Order, *Hamily v. Bush*, No. 05-763 (JDB) (D.D.C. Oct. 31, 2005) (dismissing Shaker Aamer as next friend and substituting Adel Hamily as sole petitioner); *see also* Order, *Zakirjan v. Bush*, No. 05-2053 (HHK) (D.D.C. Dec. 12, 2005) (dismissing as moot government's "Motion to Show Cause Why Case Should Be Dismissed for Lack of Proper 'Next Friend' Standing" because detainee who was real party in interest authorized counsel to represent him directly); *Muhammed v. Bush*, No. 05-2087 (RMC) (D.D.C. Dec. 16, 2005) (same); Memorandum and Order, *Idris v. Bush*, No. 05-1555 (JR) (D.D.C. Nov. 1, 2005) (same).  If, on the other hand, the undersigned counsel are not able to procure sufficient evidence of their authority to represent one or more of the Petitioners within ten days after counsels' second visit with the Petitioners, "then, and only then, would a motion to dismiss for lack of proper 'next friend' standing be appropriate."  *Adem*, 2006 WL 751309, at *2.

It is nonsensical for Respondents to argue that they should not be required "to provide direct, privileged access to wartime detainees, without [Petitioners] demonstrating satisfaction of the jurisdictional requirements of a habeas case" when such direct access is essential to satisfying *habeas* jurisdiction.  Opp. at 5.  Moreover, it is a pointless and illogical exercise to require Mr.

Battayav to establish proper "next friend" standing as a prerequisite to consenting to entry of the Amended Protective Order only to then require undersigned counsel to prove that they have direct authorization to represent Petitioners once the Amended Protective Order is entered. This Court should enter the Amended Protective Order in this case to permit the undersigned counsel the opportunity to communicate with their clients effectively and thereby demonstrate their authority to represent Petitioners.[3]

### D.    Existing DoD Procedures for Providing Detainees with Meaningful Access to Counsel, Family Members, and the Court Are Ineffective

Respondents contend that Petitioners should file *habeas* petitions on their own behalf because DoD has purportedly notified each detainee of his right to file a *habeas* petition. Opp. at 7. Respondents further argue that DoD has "taken affirmative steps to facilitate legal representation for detainees who have indicated a desire to challenge the legality of their detention by providing such detainees with a form to complete and mail to the American Bar Association ("ABA"), which has agreed to recruit volunteer counsel for detainees desiring representation." *Id.* at 8. In addition, Respondents maintain that detainees have the ability to send and receive mail and have been informed that they may contact family and friends who may file *habeas* petitions on their behalf. *Id.*

Magistrate Judge Kay was, understandably, not persuaded by these arguments. "[E]vidence suggests…that DoD's attempts to notify detainees of their right to challenge their detention have been marginally effective at best." *Adem*, 2006 WL 751309, at *5. Magistrate Kay's view in this respect was substantially informed by two declarations of CCR attorney Gitanjali Gutierrez. For example, "[n]o U.S. personnel are available at the base to answer any

---

[3] Even if Mr. Battayav were considered to be a "next friend" as that term is conventionally applied, his capacity to serve as next friend for Petitioners is well-established in the facts contained in the Johnson Declaration and the special circumstances surrounding the isolated nature of the Petitioners' confinement at Guantanamo Bay.

detainee's questions about how to obtain a lawyer or what a *habeas* petition is." *Id.*[4].
"Language issues appear to have compounded the confusion." *Id.* at *6. Although the DoD's
notice regarding *habeas* petitions was translated into Arabic, "the Arabic version was much more
difficult to understand." *Id.*[5]

      Perhaps most troubling is a detainee's comment to Gutierrez that, "the authorities at
Guantanamo have deceived the prisoners so consistently and so often the detainees simply do not
trust anything they are told by their captors." *Id.* (quoting Gutierrez (Al-Rawi) Decl. ¶ 6.)
(internal quotation marks omitted). Instead, "most detainees only trusted contacting other
detainees who had actual *habeas* lawyers as a means of securing legal representation." *Id.*
(quoting Gutierrez (Al-Rawi) Decl. ¶ 14.) In fact, this is precisely the way in which Petitioners
obtained representation by undersigned counsel – by seeking the assistance of Mr. Battayav, a
fellow detainee who had already secured a *habeas* lawyer, Mr. Johnson. *See infra* pp.2-3.

      Magistrate Kay's opinion further describes the confusion and frustration brought about
by the fact that the DoD notices instructed detainees to write to a court when the detainees were
seeking attorneys to represent them. *Id.* Additionally, Judge Kay emphasized that:

> Detainees have no way of knowing what kind of institution the
> United States District Court for the District of Columbia is and
> whether it is associated with the military. According to Al-Rawi,
> the view of most detainees that it was useless to try to write the
> Court has been confirmed by the fact that, as of yet, *no detainee*
> *who sent a letter to the Court has been able to meet with a lawyer.*

*Id.* (emphasis added) (*citing* Gutierrez (Al-Rawi) Decl. ¶¶ 10-11).

---

[4] *See* Declaration of Gitanjali S. Gutierrez, attached as Exhibit B to Supplement to Motion to
Expedite Petitioner Access to Counsel, *Adem v. Bush*, Case No. 1:05-cv-00723 (RWR) (D.D.C.
Feb. 7, 2006) at ¶ 12. (Hereinafter "Gutierrez (Al-Rawi) Decl.").

[5] *See* Declaration of Gitanjali S. Gutierrez, attached as Exhibit A to Petitioners' Reply
Memorandum of Law in Further Support of Petitioners' Motion for Expedited Entry of
Protective Order, *Razakah v. Bush*, Case No. 1:05-cv-02370 (EGS) (D.D.C. Feb. 3, 2006) at ¶
18. (Hereinafter "Gutierrez (Kabir) Decl.").

In rejecting Respondents' arguments that Guantanamo detainees have the ready ability to communicate with friends and family, Magistrate Kay's opinion cites the "wildly divergent claims" made by the Petitioner and Respondents. *Adem*, 2006 WL 751309, at *7 note 22. Magistrate Kay concludes by rejecting Respondents' arguments as without merit:

> Adem, who has been detained *incommunicado* without charge by the United States, who does not speak English, who has no access to family or friends, has indicated to a fellow detainee who is represented by counsel that he wished to challenge his potentially indefinite detention without charge. *Rasul* and *Al Odah* give him the right to have counsel. The Protective Order provides the mechanisms by which detainees may access the counsel to which they are entitled. Petitioner Adem's counsel have fully complied with the procedures necessary to meet with Adem. Nothing more is necessary.

*Id.*

Respondents' refusal to consent to entry of the Amended Protective Order in this case has put Petitioners al-Harbi, Mingazov, and Merozhev in similar positions to that of Adem. Respondents hold Petitioners *incommunicado*, without charge, presumably indefinitely. Petitioners have indicated to fellow detainee, Battayav, who is represented by counsel that they wish to challenge their potentially indefinite detention without charge. Under *Rasul* and *Al Odah*, Petitioners unquestionably have a right to counsel. The undersigned counsel have applied for and are awaiting security clearances and are prepared to comply with the requirements set forth in the Amended Protective Order for meeting with Petitioners. Nothing more is necessary.

## **CONCLUSION**

For the foregoing reasons, Petitioners respectfully request that the Amended Protective Order be entered in the instant case without delay.

Dated:  June 1, 2006

REED SMITH LLP

By:____/s/ Douglas K. Spaulding_____
Douglas K. Spaulding, D.C. Bar No. 936948
Bernard J. Casey, D.C. Bar No. 112219
Melissa J. Keppel, D.C. Bar No. 477302
1301 K Street, NW
Suite 1100 – East Tower
Washington, DC 20005
Tel: (202) 414-9200

- and -

CENTER FOR CONSTITUTIONAL RIGHTS
Barbara J. Olshansky (NY-0057)
Tina Monshipour Foster
(Pursuant to LCvR 83.2(g))
Gitanjali S. Gutierrez
Pursuant to LCvR 83.2(g))

666 Broadway, 7th Floor
New York, NY 10012
Tel: (212) 614-6485
Fax: (212) 614-6499

*Counsel for Petitioners*

## CERTIFICATE OF SERVICE

      I hereby certify that a true and correct copy of the foregoing instrument has been served on Respondents' by ECF and a copy of all instruments have been emailed to the following persons:

> **Terry M. Henry, Esq.**
> U.S. Department of Justice
> Civil Division, Federal Programs Branch
> 20 Massachusetts Ave., NW, Room 6120
> Washington, DC  20530
> Terry.Henry@usdoj.gov
>
> -and-
>
> **Andrew I. Warden**
> U.S. Department of Justice
> Civil Division, Federal Programs Branch
> 20 Massachusetts Ave., NW, Room 6120
> Washington, DC  20530
> Andrew.Warden@usdoj.gov

On this the 1st day of June, 2006

/s/ Melissa J. Keppel
Melissa J. Keppel