UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| Ghanim-Abdulrahman al-Harbi, et al., <br><br> v. <br><br> George W. Bush, et al., <br><br> *Respondents.* | Civil Action No: 05-CV-2479 (HHK) |

## REPLY TO RESPONDENTS' OPPOSITION TO PETITIONERS' MOTION FOR 30 DAYS' ADVANCE NOTICE OF ANY INTENDED REMOVAL OF PETITIONERS FROM GUANTANAMO

Respondents assert that this Court lacks jurisdiction under the Detainee Treatment Act (Pub. L. No. 109-148, Tit. X, 119 Stat. 2680) ("DTA") to hear the motion seeking 30 days' notice of transfer. They also object on the grounds that this relief is not warranted under the criteria for an injunction, thus ignoring Petitioners' arguments under the All Writs Act and *Said v. Bush*, No. 05-CV-2384, as well as the numerous precedents granting the requested relief.[1] Respondents' jurisdictional argument misconstrues the Supreme Court's opinion in *Hamdan v.*

---

[1] *See, e.g., Zakirjan v. Bush,* No. 05-02053 (HHK) (Aug. 1, 2006); *Al-Mohammed v. Bush,* No. 05-CV-0247 slip op. (HHK) (D.D.C. Mar. 30 2005); *Al-Asadi v. Bush,* No. 05-CV-2197, slip op. (HHK) (Nov. 29, 2005); *Abdah v. Bush,* No. 04-CV-1254, 2005 WL 711814 (HHK) (D.D.C. March 29, 2005); *Said v. Bush,* No. 05-CV-2384, slip op. (RWR) (D.D.C. July 25, 2006); *Zadran v. Bush,* No. 05-CV-2367, slip op. (RWR) (D.D.C. July 19, 2006); *Hamoud v. Bush,* No. 05-CV-1894, slip. op. (RWR) (D.D.C. July 6, 2006); *Mamet v. Bush,* No. 05-CV-1602, slip op. (ESH) (D.D.C. Sept. 30, 2005), *appeal docketed*, No. 05-5488 (D.C. Cir. Dec. 20, 2005); *Kiyemba v. Bush,* No.05-CV-1509, slip op. (RMU) (D.D.C. Sept. 13, 2005), *appeal docketed*, No. 05-5487 (D.C. Cir. Dec. 30, 2005); *Al-Joudi v. Bush,* No.05-CV-301, 2005 WL 774847 (GK) (D.D.C. Apr. 4, 2005), *appeal docketed*, No. 05-CV-5231 (D.C.Cir. June 16, 2005).

*Rumsfeld,* 126 S. Ct. 2749 (2006), and their high-blown constitutional arguments on the injunction criteria are sophistic evasions bearing no resemblance to the real issues at bar.

Respondents also raise the same tired "duplicate filings" and "next friend" objections which are, and have been consistently held to be, without merit.

## ARGUMENT

I.  **THIS COURT HAS JURISDICTION TO HEAR THE MOTION AND TO GRANT THE REQUESTED RELIEF**

Respondents contend that the underlying habeas corpus claims asserted in this case are jurisdictionally barred by the DTA notwithstanding the Supreme Court's unequivocal holding that the DTA's jurisdiction-stripping provision does *not* apply to detainee cases such as this which were pending at the time of that statute's enactment. *Hamdan*, 126 S. Ct. at 2769. Respondents' effort to circumvent this holding involves a contorted parsing of three inter-related provisions of the DTA.

Section 1005(e)(1) purports to strip the courts of jurisdiction to hear habeas corpus and other claims by alien detainees held at Guantanamo, and §§1005(e)(2) and (e)(3) create an exclusive review mechanism in the District of Columbia Court of Appeals to hear detainee appeals.  Essentially, Respondents maintain that even though, per *Hamdan*, it can no longer argue that 1005(e)(1) – the jurisdiction-stripping provision of the Act – applies to this case, the "exclusive review" provisions of 1005(e)(2) and (e)(3) nonetheless deprive the Court of jurisdiction.  Respondents advance a two-fold theory in this respect.  Neither has merit.

First, Respondents argue by implication.  They contend that "exclusive review" provisions by their nature trump more general jurisdictional grants such as habeas corpus.  *See* Resp. Opp. pp 3-4.  They argue that nothing in *Hamdan* erodes that basic construct.  In other

words, say Respondents, *Hamdan's express* preservation of habeas jurisdiction is undone by the *implied* effect of DTA's "exclusive review" provisions. That argument is not only untenable on its face, it was briefed and argued at the Supreme Court and was flatly rejected. The Court declined to accept the premise that the DTA replaced habeas with an "exclusive review" scheme. Instead, it found that the statute accommodated two separate and co-existing lines of review for detainee petitions:

> [A] scheme under which pending habeas actions – particularly those, like this one that challenge the very legitimacy of the tribunals whose judgments Congress would like to have reviewed – are preserved, and more routine challenges to final decisions rendered by those tribunals are carefully challenged to a particular court and through a particular lens of review.

126 S. Ct. at 2769.

Second, Respondents argue that the instant case falls within an exception to the Court's preservation of habeas jurisdiction. In this respect, Respondents focus on footnote 14 in the *Hamdan* opinion (126 S. Ct. at 2769) in which the Court reserved the question of whether habeas petitions that raised routine challenges to the decisions of the military tribunals or commissions could only be heard through the "exclusive review" mechanism. *See* Resp. Opp. at 2. As an initial matter, footnote 14 provides no authority whatsoever as the Court did not decide and "express[ed] no view" on the issue. Further, the argument – whatever its merits in the abstract – has no bearing on the instant case.

To the extent the Court in footnote 14 or elsewhere left open any issue regarding the review mechanism for the "more routine challenges" to the fact-specific findings of military tribunals, such issues are not in play here. The issues raised by this habeas Petition are anything

- 3 -

but routine. This Petition goes to the heart of the President's constitutional and lawful authority to confine these Petitioners. While these Petitioners deny they are or were enemy combatants, the underlying habeas action presents a fundamental challenge to the exercise of unilateral executive authority in detaining Petitioners and to the unlawful conditions of their confinement. *See, e.g.*:

> Their detention is without lawful basis, without charge, and without access to counsel or any fair process by which they might challenge their detention. Petitioners are being held under color and authority of the Executive, in violation of the Constitution, laws and treaties of the United States, in violation of the fundamental due process principles of the common law, and in violation of customary international law.

*Al-Harbi, et al. v. Bush*, Petition for Writ of Habeas Corpus, p. 2.

This Petition never even mentions military tribunals or commissions. Rather, it challenges the Joint Resolution[2] and the Executive Order[3] authorizing the Secretary of Defense to detain indefinitely anyone the President believes is a member of al Qaeda or has engaged in or aided and abetted terrorism to cause injury to the United States. *Id.* at ¶¶ 20-27. It also challenges the conditions of confinement as violations of the constitution, and domestic, military and international law. *Id.* at ¶¶31-46. With specific application to the motion *sub judice,* the Petition challenges the basic authority of the government to transfer Petitioners through "extraordinary rendition" to other countries that engage in torture. *Id.* at ¶47.

---

[2] Joint Resolution 23, Authorization for Use of Military Force, P.L. 107-40, 115 Stat 224 (January 18, 2001).

[3] Executive Order, 66 Fed Reg. 57,833, §2 (November 13, 2001).

These are not the routine, fact-specific, record-sifting issues which may or may not fall under DTA's "exclusive review" provisions. To the contrary, the issues raised by the Habeas Petition filed herein are sweeping in scope and fundamental in nature. They are precisely the kind of issues found to be reviewable by the District Court through writ of habeas corpus. *Rasul v. Bush,* 542 U. S. 466 (2004). Nothing in the DTA changes that fact and no slicing of the Supreme Court's *Hamdan* opinion – an opinion that expressly *preserves* habeas jurisdiction – can lead to such a conclusion.

## II. THE MOTION PRESENTS JUSTICIABLE CLAIMS FOR RELIEF

In a lengthy dissertation on separation of powers, Respondents argue that the relief requested in the pending motion would undermine the President's constitutional authority to conduct foreign affairs and would cause the court to traduce the unreviewable prerogatives of foreign nations to conduct prisoner detentions and interrogations in any manner they see fit.

Respondents' howitzer pays undeserved tribute to this rather modest motion. It is also ill-conceived on the merits. Its dramatic pronouncements of grave constitutional dimensions, which are set forth in the prosaic framework of standards for injunctive relief, suggest either that Respondents have set up a straw-man or have misconstrued the relief that has been requested.

Basically, Respondents contend that the motion fails to satisfy the "irreparable injury" criterion because it would interfere with the government's decision to release the detainees and, after all, release is what the detainees are ultimately seeking. How then, Respondents ask, can Petitioners be harmed by obtaining that which they are seeking through habeas corpus?

But, as is obvious, this motion in no sense seeks to *prevent* release or transfer. It seeks only 30 days' *notice* of intended transfer in order to permit Petitioners to assess whether the particular intended transfer might perpetuate or even exacerbate the basic injustices and the

palpable injuries that are the subjects of their habeas action. Whether Petitioners, having been given notice, would then seek further relief in the form of an injunction on a particular transfer to a particular country is a matter, if at anytime, for a later day.[4] The pending motion might seek a delay in the transfer, but it is a delay that is necessary and proper not just to avoid making a bad situation worse for Petitioners, but to aid the court's jurisdiction to determine the underlying merits of the habeas proceeding challenging the lawfulness of the existing and continuing detention.

With respect to the balancing of competing interests, another of the injunction criteria, the failure to issue a 30-day notice could have profoundly damaging consequences to the Petitioners while the granting of the notice would make no significant incursion into presidential decision making. In this respect, contrary to Respondents' characterization, the fear of rendition is not theoretical. Resp. Opp. at 11. Petitioners' original memorandum on this motion, at pp. 2-4, provides ample references to just some of the many published reports that rendition to torturing countries is a fact, not a theory. Moreover, as this Court has held in this context, the potential impact on the President's ability to conduct foreign policy is remote at best. *Abdah v. Bush*, No. 04-CV-1254, 2005 WL 711814 (HHK) at *5 ("Beyond these vague premonitions, however, the court does not have any indication that notifying Petitioners' counsel 30 days ahead of planned transfers of their clients will intrude upon executive authority.").

Further, Respondents argue that Petitioners are not likely to succeed on the merits because the Court lacks authority to second-guess the Executive on matters of international

---

[4] Should it be necessary to seek such further relief, Petitioners would argue that this Court has the inherent power to enjoin any particular transfer that has the effect of continuing or exacerbating the very detention policies and decisions that are the subject of the pending habeas petition.

relations and that, in any case, it has no authority to interfere with the decisions of foreign governments respecting detentions and the conditions thereof. *Id*. at 14-22. This argument is fundamentally misplaced first because the relief sought in the pending motion would bind only the United States, not foreign governments and, second, because any impact a 30 day advance notice would have on this government would, in the scheme of things, be insignificant. *Abdah v. Bush, supra*. Moreover, this argument is susceptible to the same weakness as set forth above, namely, that it fails to address the point that a transfer that continues or worsens the existing detention raises the very issues that are before the court in the underlying habeas action.

In addition, Respondents' thesis relating to "success on the merits" is structured on a phony logic. Respondents aver that any right the Petitioners might have to challenge their detention does not translate into a right to challenge the *termination* of their detention. *Id*. at 15. Respondents ignore the self-evident fact that Petitioners have no problem whatever with the *termination* of their detention, only with the continuation and aggravation of that detention at the order of the Executive, albeit in a different venue.

### III.  RESPONDENTS' "DUPLICATIVE FILINGS" AND "NEXT FRIEND" OBJECTIONS ARE WITHOUT MERIT

Duplicative petitions do not constitute a basis for denying petitioners 30 days' advance notice of any intended removal of their removal from Guantanamo. Respondents allege that Petitioners Merozhev and Mingazov seek to choose among duplicate petitions in which to seek injunctive relief. This is not true. Counsel on behalf of petitioner Ravil Mingazov in both case number 05-CV-2010 and case number 05-CV-2479 are preparing to file a joint motion to request transfer of case number 05-CV-2010 to this court, and for consolidation of the two cases. In addition, counsel on behalf of Petitioner Zein Al-Abedeen in *Mohammon v. Bush*, 05-CV-2386,

who has the same ISN number as Zainulabidin Merozhev (ISN #1095), is preparing a notice of voluntarily dismissal on behalf of Zein Al-Abedeen. As soon as counsel receives sufficient confirmation that the petitioners in these "duplicate" petitions are in fact the same persons, counsel will file the proper motions to dismiss, transfer and consolidate. Accordingly, there is no basis to refuse petitioners' request for 30 days' advance notice of intended removal based upon duplicative petitions.

Respondents' so-called "next friend" objection is spurious and should be rejected (again) by this Court. Respondents previously asserted their "next friend" objection in this very same case when they opposed petitioners' request for entry of the Amended Protective Order. The Court rejected respondents' "next friend" argument at that time, and the ruling on that issue constitutes law of the case. Respondents may not assert a legal theory rejected by the Court previously in this same case. Moreover, other courts addressing this same "next friend" issue have repeatedly rejected it. See *Kiyemba v. Bush*, 05-CV-1509 (D.D.C. August 7, 2006) (RMU) (order denying Respondents' motion for reconsideration of Magistrate Judge Kay's order requiring Petitioners' counsel access to Petitioners); *Qasim v. Bush*, 05-CV-1779 (D.D.C. August 2, 2006) (JDB)(AK) (order granting Petitioners' motion to enforce order granting access to counsel); *Mohammon v. Bush*, 05-CV-2386 (D.D.C. July 26, 2006) (RBW) (order granting motion for access to counsel for the purpose of verifying detainee's request for counsel); *Said v. Bush*, 05-CV-2384 (D.D.C. May 23, 2006) (RWR)(AK) (order granting motion to compel counsel access); *Razakah v. Bush*, 05-CV-2370 (D.D.C. May 18, 2006) (EGS) (order granting motion for access to counsel).

## CONCLUSION

For the reasons discussed above, Respondents' opposition should be rejected and Petitioners' motion should be granted.

Dated: August 15, 2006

                Respectfully submitted,

                REED SMITH LLP

                By:   /s/ Bernard J. Casey
                     Douglas K. Spaulding, D.C. Bar No. 936948
                     Bernard J. Casey, D.C. Bar No. 112219
                     Melissa J. Keppel, D.C. Bar No. 477302
                     1301 K Street, NW
                     Suite 1100 – East Tower
                     Washington, DC 20005
                     Tel: (202) 414-9200

                          - and -

                CENTER FOR CONSTITUTIONAL RIGHTS
                     Barbara Olshansky (NY0057)
                     Gitanjali S. Gutierrez (NY1234)
                     666 Broadway, 7th Floor
                     New York, New York 10012
                     Tel: (212) 614-6439
                     Fax: (212) 614-6499

                *Counsel for Petitioners*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of Petitioners' Reply to Respondents' Opposition to Petitioners' Motion For 30-Days' Advance Notice of Any Intended Removal of Petitioners' From Guantanamo was served upon the following person by electronic filing and email on the 15th day August, 2006:

**Terry M. Henry, Esq.**
U.S. Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Ave., NW, Room 6120
Washington, DC  20530

/s/ Melissa J. Keppel
Melissa J. Keppel