IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

| | |
|---|---|
| Ghanim-Abdulrahman al-Harbi,<br>    Detainee,<br>        Guantanamo Bay Naval Station<br>        Guantanamo Bay, Cuba;<br><br>Ravil Mingazov,<br>    Detainee,<br>        Guantanamo Bay Naval Station<br>        Guantanamo Bay, Cuba;<br><br>Zainulabidin Merozhev,<br>    Detainee,<br>        Guantanamo Bay Naval Station<br>        Guantanamo Bay, Cuba,<br><br>    *Petitioners/Appellants,*<br><br>        v.<br><br>George W. Bush, et al.<br><br>    *Respondents/Appellees.* | Case No. 07-5052 |

**MOTION TO GOVERN FURTHER PROCEEDINGS IN THIS APPEAL
PURSUANT TO THIS COURT'S FEBRUARY 21, 2007 ORDER**

    Pursuant to this Court's February 21, 2007 order, Petitioners-Appellants Ghanim-Abdulrahman al-Harbi, Ravil Mingazov, and Zainulabidin Merozhev (together, "Appellants") respectfully submit this motion to govern further proceedings in the above-captioned appeal.

**I.    Introduction**

    This is an appeal from an order of the district court denying Appellants' motion to compel Respondents to produce immediately the factual returns to Appellants' *habeas corpus* petition filed on December 28, 2005. Production of the factual returns is essential to Appellants because without them, Appellants and their counsel lack any meaningful opportunity to evaluate the reasons purportedly justifying Appellants' ongoing detention, much less to prepare an effective legal argument in support of their release.

This Court's recent, divided opinion in *Boumediene v. United States*, Nos. 05-5062, *et al.* and *Al Odah v. United States*, Nos. 05-5064, *et al.*, does not preclude the limited relief Appellants seek. *Boumediene* holds that federal courts lack jurisdiction to consider petitions for writs of *habeas corpus* lodged by those detained in the U.S. Naval Base at Guantanamo Bay, Cuba. But nothing in *Boumediene* alters this Court's continued statutory jurisdiction under the Detainee Treatment Act ("DTA") and the Military Commissions Act ("MCA") to review the decisions of Combatant Status Review Tribunals ("CSRT"). Given the oppressive conditions Appellants continue to endure at Guantanamo, Appellants' need for the factual returns is immediate and apparent. Since this Court has the power to order Respondents to produce the factual returns, we respectfully urge that it do so now by granting Appellants' Emergency Motion.

## II.   Appellants' Detention

Appellants are detainees in the U.S. Naval Base at Guantanamo Bay.[1] They have been held there for several years without charges. No factual information has been provided by the Government to support a finding that the Appellants are "enemy combatants" or to justify their indefinite detention. During the time of their imprisonment, they have endured severe conditions and physical abuse, in violation of U.S. and International laws, including the Geneva Conventions.

Appellants additionally have been the subject of several secret proceedings. They were declared "enemy combatants" before CSRTs. Those proceedings took place without counsel, and full information about those proceedings has never been provided to Appellants or their

---

[1] The facts recited here mirror those recited in the Emergency Motion Pursuant To Rule 8 For Immediate Injunctive Relief Ordering Factual Returns filed by Appellants in the above-captioned appeal. Those facts are based on the affidavit attached to the Emergency Motion of Appellants' undersigned counsel, Douglas K. Spaulding.

counsel. Thus, neither Appellants nor counsel are in a position to refute or even challenge whatever evidence there may be that allegedly supports the CSRT determinations.

Appellants also have been denied release by Administrative Review Boards ("ARB"). ARBs are assembled periodically to determine whether, despite status as an "enemy combatant," a detainee may be released or transferred to another country (with conditions) because he is no longer a "threat" to the United States or its allies. As in Appellants' CSRT proceedings, no counsel were allowed and full information about them has never been provided. Just as with the CSRT proceedings, therefore, Appellants and their counsel are in no position to evaluate the reasons for their status or continued confinement. And yet, Appellees persist in their contention that the CSRTs and ARBs entitle them to detain Appellants indefinitely, and that the legality of Appellants' detentions and conditions of imprisonment may not be challenged in court.

### III.    This Court's Decision In *Boumediene*

On February 20, 2007, a divided panel of this Court issued its decision in *Boumediene v. United States*, Nos. 05-5062, *et al.* and *Al Odah v. United States*, Nos. 05-5064, *et al.* The Court vacated a district court judgment and dismissed *habeas* petitions filed by Boumediene, Al-Odah and certain other Guantanamo prisoners for lack of jurisdiction. The panel majority concluded that: (1) the MCA operated to strip federal courts of jurisdiction over *habeas* petitions filed by Boumediene, Al-Odah, and certain other Guantanamo prisoners; and (2) the MCA's jurisdiction-stripping provisions did not offend the Suspension Clause of the U.S. Constitution because *habeas corpus* would not have been available in 1789 to persons "without presence or property within the United States." Judge Rogers dissented, concluding that the MCA did offend the Suspension Clause.

Appellants respectfully submit that *Boumediene* was wrongly decided for several reasons.[2] As a threshold matter, Appellants submit that the panel majority incorrectly disregarded the Supreme Court's strict requirements for retroactive repeal of *habeas* jurisdiction when it held that the MCA operated to strip federal courts of jurisdiction over the *habeas* petitions filed by Boumediene, Al-Odah, and the other Guantanamo prisoners. The panel majority should have construed the MCA narrowly in order avoid any constitutional question.

When the panel majority faced the constitutional question, it committed other serious errors in its analysis of the Suspension Clause. First, the panel majority erred when it confined its analysis of the Suspension Clause to historical materials predating 1789 and failed to consider whether the Suspension Clause might protect any expansion of the writ after the Constitution was adopted. Second, the panel majority erroneously disregarded the Supreme Court's analysis in *Rasul v. Bush*, 542 U.S. 466 (2004), which recognized that the application of the writ to Guantanamo prisoners is consistent with the writ's historical reach. Third, the panel majority failed to account for the way in which the United States exercises complete jurisdiction and control over the Guantanamo Bay Naval Station. *See Rasul*, 542 U.S. at 480, 487 ("Guantanamo Bay is in every practical respect a United States territory."). Fourth, the panel majority erred by relying on *Johnson v. Eisentrager*, 336 U.S. 763 (1950), a case which *Rasul* recognized as being "distinguishable" from the situation in Guantanamo in "critical" ways. *Rasul*, 542 U.S. at 476. Fifth, the panel majority erroneously suggested that Guantanamo detainees must establish additional constitutional rights (such as Fifth Amendment rights) in order to invoke the Suspension Clause. Rather, as Judge Rogers recognized in her dissent, the Suspension Clause as

---

[2]   Appellants recognize the majority opinion in *Boumediene* and *Al-Odah;* however, it is for this panel—like any other panel of this Court—to determine the applicability and precedential force of this Court's prior opinions on the case before it.

a limitation on Congressional power that can be raised by any party prejudiced by legislation that exceeds that limit, regardless of whether constitutional violations are alleged in the petition.3

### IV. This Court Should Order Respondents To Produce The Factual Returns, And *Boumediene* Does Not Preclude It From Doing So

As Appellants highlighted in their Emergency Motion, district courts repeatedly have ordered the production of factual returns despite the jurisdiction-stripping provisions contained in the DTA and the MCA.4 Likewise, this Court can and should order the production of factual returns here as well.

Factual returns are critical to the effective representation of Appellants' rights and interests and, indeed, are within their rights to possess. The district court acknowledged this in *Feghoul v. Bush*, 2006 U.S.Dist. LEXIS 79147 (D.D.C. Oct. 31, 2006), where it ordered factual returns shortly after and notwithstanding passage of the MCA. The court explained that "[d]espite the lack of finality regarding the issues on appeal ... it is hardly sensible to withhold or frustrate something that no one doubts is petitioner's right – a meaningful communication with counsel regarding the factual basis of petitioner's detention. 'Allowing the petitioners to meet with their lawyers...is not the type of interim relief that even remotely risks infringing on the Court of Appeals' possible jurisdiction." *Id.* at *3 (quoting *Said v. Bush*, 2006 U.S.Dist. LEXIS 60044 (D.D.C. May 23, 2006)). More recently, in *Razakah v. Bush*, 05-2370 (EGS),

---

3   Although the panel majority did not address the Government's contention that the MCA replaced *habeas* with a commensurate procedure—*e.g.*, the judicial review of CSRTs under § 1005(e)(2) of the DTA—the dissent expressly and correctly noted the numerous deficiencies in both CSRTs and the DTA's provisions for limited judicial review of CSRT determinations.

4   *See, e.g., Al-Asadi v. Bush*, No. 05-2197 (HHK), Order dated October 10, 2006; *Kahn v. Bush*, 05-1001 (KSH), Order dated August 10, 2006; *Al-Ghizzawi v. Bush*, No. 05-2378 (JDB), Order dated August 9, 2006; *Zadran v. Bush*, No. 05-2367 (RWR), Order dated July 19, 2006; *Rabbani v. Bush*, 05-1607 (RMU), Order dated June 16, 2006; *Said v. Bush*, 05-2384 (RWR), Order dated May 23, 2006; *Almerfedi v. Bush*, No. 05-1645 (PLF), Order dated March 3, 2006; *Alsaaei v. Bush*, 05-2369 (RWR), Order dated August 14, 2006; *Amin v. Bush*, 05-2336 (PLF), Order dated September 18, 2006; *Thabid v. Bush*, 05-2398 (ESH), Order dated August 18, 2006. Such routine orders to produce factual returns likewise predate the DTA. *See, e.g., Hatim v. Bush*, No. 05-1429, Order dated August 22, 2005; *M.C. v. Bush*, No.,05-0430 (ESH), Order dated April 13, 2005; *Ameziane v. Bush*, No. 05-0392 (ESH), Order dated April 12, 2005.

Order dated Jan. 23, 2007, the district court ordered production of factual returns as well, reasoning that any uncertainty regarding jurisdiction "is not an adequate reason to deny petitioners' motion because a factual return '*will obviously be needed regardless of the resolution of the jurisdictional question*'." (emphasis added) (citation omitted).

This is the correct approach. The DTA and the MCA specifically provide for judicial review of whether a prisoner is correctly deemed an "enemy combatant." Absent access to evidence considered by CSRTs and ARBs, it is impossible for detainees and their counsel to adequately evaluate and challenge that determination. Indeed, without the information in a factual return, "petitioner's counsel cannot offer anything approaching effective representation in these proceedings."[5] See *Kahn v. Bush,* 05-1001 (KSH), Order dated August 10, 2006; see also *Al-Ghizzawi v. Bush*, No. 05-2378 (JDB), Order dated August 9, 2006 (ordering factual returns and explaining that "[b]ecause the Court has concluded that the outcome sought by petitioner through the present motion [for factual returns], would ultimately be achieved regardless of the disposition of the jurisdictional question…the Court will rule on the motion without resolving respondent's jurisdictional challenge. To do otherwise could unnecessarily prejudice petitioner's ability to timely and meaningfully communicate with counsel in advance of his claims, given the logistical difficulties and limitation associated with attorney-client communications in this unique detention setting.").

---

[5] On March 19, 2007, Appellees filed their Motion To Govern And Opposition To Pending Motions To Govern in this and related appeals. One of their primary contentions in opposition to Appellants' request for factual returns is that Appellants could gain access to the CSRT record—including the "bulk of classified material in the record[,]" though subject to an undefined protective order—if they filed a petition in this Court pursuant to the DTA. See Appellees' Motion at 3. As such, there is no guarantee that Appellants will receive potentially critical portions of the record. And Appellees' logic places the cart before the horse—Appellants must have an opportunity to review the evidence supposedly against them before they can craft a full and effective attack on their respective CSRT determinations via a DTA petition. Requiring the filing of a DTA petition *before* Appellants can receive factual returns thwarts this ability and renders the DTA petition an impotent remedial mechanism.

The immediate relief sought in Appellants' Emergency Motion is especially critical given the oppressive circumstances of their confinement. As described more fully in their Emergency Motion, Appellants have experienced extreme conditions and mistreatment during their detention. Appellant Ravil Mingazov, for example, recently was transferred to the maximum security isolation cells of the new "Camp 5," and struggles daily to survive. Counsel has learned that the conditions in Camp 5 have worsened to the point where many detainees, including Mingazov, are on a hunger strike. Appellant Zainulabidin Merozhev is detained in "Camp 6," reported to be the worst camp at Guantanamo, with extreme conditions of isolation, maximum security and mistreatment by guards.

*Boumediene* does not impact the relief Appellants seek. That decision left this Court's statutory jurisdiction to review CSRTs under the DTA and MCA intact. And the extreme conditions Appellants are enduring compel the conclusion that Respondents should be ordered to turn over the factual returns now.[6]

Appellees thus offer nothing persuasive to support their ongoing withholding of the factual material that purportedly justifies Appellants' detention. If the United States government is going to provide some procedure, however minimal, by which those detained at Guantanamo can contest their confinement, it must at least meet the most *de minimis* standard of process conceivable—allowing Appellants and their counsel to see the evidence against them. This Court has the power to order this limited relief now, and we respectfully urge it to do so.

---

[6] Petitioners in *Boumediene* have filed a petition for writ of certiorari with the Supreme Court, which is pending as of the date of this Motion. Its pendency, however, is no reason for this Court to delay acting on Appellants' Emergency Motion. Even if the Supreme Court decides to review *Boumediene* and concludes that courts lack jurisdiction over detainees' *habeas* petitions, the fact will remain that, as discussed above, this Court retains the power to grant Appellants' narrow request to see the evidence claimed to support their ongoing detention.

## V. Conclusion

Appellants request that this Court adjudicate, as soon as practicable and without delay, the merits of Appellants' Emergency Motion and grant relief by ordering Respondents to produce the needed factual returns.

Dated: March 22, 2007

Respectfully submitted,

Douglas K. Spaulding
Gary S. Thompson
Allison M. Lefrak
REED SMITH LLP
1301 K Street, NW, Suite 1100
(East Tower)
Washington, DC 20005
Tel: (202) 414-9220

Bernard J. Casey
Casey ADR Services
P.O. Box 26215
San Francisco, CA 94126
Tel: (415) 515-0855

Gitanjali S. Gutierrez (pursuant to LCvR 83.2(g))
CENTER FOR CONSTITUTIONAL RIGHTS
666 Broadway, 7th Floor
New York, NY 10012
Tel: (212) 614-6485

*Counsel for Petitioners*

## CERTIFICATE OF SERVICE

I hereby certify that on the 22nd day of March, 2007, a copy of the foregoing **MOTION TO GOVERN FURTHER PROCEEDINGS IN THIS APPEAL PURSUANT TO THIS COURT'S FEBRUARY 21, 2007 ORDER** was hand-delivered to the Court Security Officer, who will serve the following persons when the document has been determined to be unclassified:

        Andrew I. Warden
        United States Department of Justice
        Civil Division, Federal Programs Branch
        20 Massachusetts Ave., N.W.
        Washington, D.C. 20530

        _____
        Douglas K. Spaulding