*E Hogarty (CSO)*
*2/14/2007*

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

Ghanim-Abdulrahman al-Harbi,
    Detainee,
    Guantanamo Bay Naval Station
    Guantanamo Bay, Cuba;

Ravil Mingazov,
    Detainee,
    Guantanamo Bay Naval Station
    Guantanamo Bay, Cuba;

Zainulabidin Merozhev,
    Detainee,
    Guantanamo Bay Naval Station
    Guantanamo Bay, Cuba,

    *Petitioners/Appellants,*

        v.

George W. Bush, et al.

    *Respondents/Appellees.*

Civil Action No. 05-CV-2479 (HHK)

---

## EMERGENCY MOTION PURSUANT TO RULE 8 FOR
## IMMEDIATE INJUNCTIVE RELIEF ORDERING FACTUAL RETURNS

Pursuant to Fed. R. App. P. 8 and D.C. Cir. Rule 8, Petitioners-Appellants Ghanim-Abdulrahman al-Harbi, Ravil Mingazov, and Zainulabidin Merozhev (together, "Appellants") hereby seek to compel the Appellees to produce immediately the factual returns to their *habeas corpus* petition filed on December 28, 2005.[1] *Such relief is needed no later than next Tuesday, February 20, 2007.* Attached hereto is the Affidavit of Douglas K. Spaulding ("Aff.").

## I.    INTRODUCTION

Appellants are detainees at the U.S. Naval Base in Guantanamo Bay. Aff. ¶3. They each have been held there for several years without charges. *Id.* No factual information has been provided by the Government to support a finding that the Appellants are "enemy combatants" or

---

[1] On February 13, 2007 at approximately 10 a.m., counsel for the Appellants telephoned counsel for the Government Appellees (Andrew I. Warden, Esq.) advising of this emergency motion and, in general terms, its basis and timing. Appellees would not consent to the relief requested. Aff. ¶15.

to justify their indefinite detention.  As alleged in their petitions, during the time of their

imprisonment, they have endured severe conditions and physical abuse, in violation of U.S. and

International laws, including the Geneva Conventions.

Although this motion and the other detainee cases pending in this Court present abstract

legal issues of power and jurisdiction, they also involve flesh-and-blood men whose freedom,

mental health, and lives are at stake.  The present conditions of "Camp 5" and the newly opened

"Camp 6" – both maximum security isolation facilities – to which two of these Appellants and

many other detainees have recently been transferred, are draining the life and hope from men

who have persevered against despair for as much as five long years.  The conditions of isolation

and solitary confinement that now exist for the vast majority of detainees are driving them to

desperate measures that the courts may not ignore.

Appellants have been the subject of several secret proceedings.  First, they were declared

"enemy combatants" before the Appellees' Combatant Status Review Tribunals ("CSRTs").

Aff. ¶6.  Appellants were not allowed to participate in the CSRTs in any meaningful way, with

no counsel allowed.  *Id*.  Full information about the CSRTs regarding Appellants has never been

provided by Appellees.  *Id*.  Thus, neither Appellants nor counsel are in a position to refute or

even challenge whatever evidence there may be that allegedly supports the determination.

Second, Appellants have each been rejected for release by Administrative Review Boards

("ARB"), which are assembled periodically to determine whether, despite status as an "enemy

combatant," a detainee may be released or transferred to another country (with conditions)

because he is no longer a "threat" to the United States or its allies.  Aff. ¶7.  Similarly, counsel

was not allowed to be present or participate in the ARB proceedings and full information about

them has never been provided.  *Id*.  And yet, Appellees contend that the CRSTs and ARBs entitle

them to detain Appellants indefinitely, and that the legality of their detentions or conditions of imprisonment may not be challenged in court. This is a full suspension of the rule of law, unprecedented in American history.

Appellants and their counsel desperately need factual returns *now* from Appellees in order to conduct the most basic defense based upon the most fundamental tenet of due process: the ability to confront the evidence against the accused.

Appellants have waited more than a year for these factual returns, seeking relief in the court below. During that time, this Court has long been considering important jurisdictional issues relating to the many pending Guantanamo Bay detainee cases, including under the Military Commissions Act of 2006, 120 Stat. 2600 ("MCA"). During this time of jurisdictional uncertainty, the majority of District Courts have ordered factual returns, both before and *after* the MCA. This makes perfect sense, as the pending appeals regarding jurisdiction in no way justify the delay of production of the basic factual information that would be provided in the returns. Effective representation of counsel is impossible without this information, the absence of which makes a mockery out of the most fundamental notions of fair play and due process.

Moreover, even if it is held that this Court has "exclusive jurisdiction" under the MCA to review CSRTs (and that no other court has any jurisdiction over any related matters), the same information will have to be provided to counsel in connection with the review called for in *this* Court. And with no burden involved, there is no rational or humane excuse for the Appellees' failure to provide the factual returns now, in these proceedings. It would be disingenuous for Appellees to argue that Appellants could obtain factual returns simply by abandoning the habeas process, waiving all rights in relation thereto, and submitting to the exclusive jurisdiction and

narrow scope of review of this Court. And yet that unprincipled argument – forcing a Catch-22 onto Appellants – has been Appellee's major point in opposition to similar motions to this Court.

Before ordering factual returns, a few judges, including the District Court Judge below in this action, have felt constrained to await this Court's rulings on jurisdictional issues. As argued below, this reluctance is error. Because time is of the essence, Appellants are constrained to come before this Court under Fed. R. App. P. 8 on an emergency basis. Effective representation by counsel is obviously impossible without such factual returns.

While Appellants have been patient, time is now critical. Shortly before the end of 2006, counsel for Appellants were invited to participate in the ARB process for the first time. Aff. ¶9. The Government directed that Counsel must file submissions *by February 23, 2007. Id.* Without the factual returns, counsel cannot adequately assess the evidence and make adequate comment to the ARBs. Aff. ¶10. Without the factual returns in hand, the ARB process becomes even more of a one-sided exercise with a virtually certain outcome. The fact that there is no court review of the ARBs, as Appellees will likely argue, is beside the point. Without the factual returns, Appellants will be irreparably prejudiced before the ARBs.

With this February 23 date looming, Appellants pressed their motion for factual returns in the Court below. However, on January 31, 2006, the District Court Judge denied the motion. *See* attached Order at Ex. A. The Judge gave no basis for the denial. However, in another case, the Judge below denied the same relief "pending the resolution of the question of jurisdiction by the Court of Appeals for the D.C. Circuit in *Boumediene v. Bush*, 450 F.Supp.2d 25 (D.D.C. 2006) (appeal pending), and *Al Odah v. United States*, 346 F.Supp.2d 1 (D.D.C. 2004) (appeal pending)." *See* attached Order at Ex. B. Uncertainty regarding jurisdiction appears to be the basis for the denial here.

At this point, any relief on this issue from the Court below is "impracticable" within the meaning of Fed. R. Civ. P. 8(a)(2)(A)(i).  Thus, Appellants come before this Court on an emergency basis, and as per D.C. Cir. Rule 27(f).  The four standards for injunctive relief are met:  (1) the likelihood of success on the merits is clear, as reviewed below; (2) the irreparable harm is that without the factual returns, the Appellants and their counsel will be deprived of facts essential to their February 23 ARB submissions; (3) there is no harm to the Appellees or others from not producing the information; and (4) the public interest weighs in favor of the relief.

Counsel are especially concerned that the upcoming February 23, 2007 ARB submission could well be the *last realistic opportunity* for Appellants to gain release.  While this Court and others work out issues of jurisdiction and process, each day spent by all three Appellants in their respective camps is a day of irreparable harm.  For example, counsel has learned that the conditions for one of the Appellants, Ravil Mingazov (who is in "Camp 5") have worsened to the point where many detainees, including Ravil Mingazov, are on a hunger strike.  Aff. ¶11.  In an unclassified letter received last Friday, February 9, and probably written several weeks before, Mr. Mingazov states that he and others are on the 28th day of a hunger strike, with detainees beginning to "faint from starvation." *Id.*  It is unclear whether Mr. Mingazov will live even to see his next ARB hearing.

For these reasons, and as detailed further below, this Court can and should order the injunctive relief requested herein. *This Court should not stay this motion pending its rulings on jurisdiction in related matters.*  These Appellants do not have the luxury of a stay of this critical, emergency relief.  A stay is tantamount to denial, and would prolong irreversible injury not only to Appellants' legal defense, but to their physical health and possibly their lives.

## II. MOST COURTS BELOW HAVE ORDERED FACTUAL RETURNS, INCLUDING WHILE JURISDICTION HAS BEEN QUESTIONED

To date, the Supreme Court has twice confirmed the jurisdiction of lower courts over habeas corpus petitions challenging the legality of the detention of foreign nationals captured abroad and incarcerated at Guantanamo Bay. *See Rasul v. Bush.*, 542 U.S. 466 (2004) (confirming jurisdiction under federal habeas corpus statute); *Hamdan v. Rumsfeld*, 126 S.Ct. 2749 (2006) (reconfirming jurisdiction for any habeas corpus case pending at the time of passage of the Detainee Treatment Act of 2005, 119 Stat. 2739). The jurisdiction of the lower courts continues to be an issue today following the enactment of the MCA, which purports to strip retroactively the federal district courts of any habeas jurisdiction and instead grants exclusive jurisdiction to this Court for the limited purpose of review of CSRTs.

Indeed, a fair characterization of the most current MCA-related jurisdictional issue, awaiting a ruling in the *Boumendiene* and *Al Odah* cases, is whether the district courts below have jurisdiction over these habeas actions or whether *this* Court has exclusive jurisdiction to review CSRT determinations (with all other habeas review impermissible notwithstanding the "Suspension Clause" in the U.S. Constitution).

Most importantly for purposes of the present motion, *at every stage, Judges below have continued to order factual returns.* The DTA, signed into law on December 30, 2005, led to challenges to jurisdiction by Appellees even over cases filed before the DTA was passed. But after passage of the DTA, motions for factual returns were granted routinely.[2] This is not

---

2    *See, e.g., Al-Asadi v. Bush,* No. 05-2197 (HHK), Order dated October 10, 2006; *Kahn v. Bush,* 05-1001 (KSH), Order dated August 10, 2006; *Al-Ghizzawi v. Bush,* No. 05-2378 (JDB), Order dated August 9, 2006; *Zadran v. Bush,* No. 05-2367 (RWR), Order dated July 19, 2006; *Rabbani v. Bush,* 05-1607 (RMU), Order dated June 16, 2006; *Said v. Bush,* 05-2384 (RWR), Order dated May 23, 2006; *Almerfedi v. Bush,* No. 05-1645 (PLF), Order dated March 3, 2006; *Alsaaei v. Bush,* 05-2369 (RWR), Order dated August 14, 2006; *Amin v. Bush,* 05-2336 (PLF), Order dated September 18, 2006; *Thabid v.*

surprising given that the DTA (like the more recent MCA) specifically provided for judicial review of whether a prisoner is correctly deemed an "enemy combatant." Common sense dictates that absent access to evidence considered by CSRTs and ARBs, it is *impossible* for detainees and their counsel to adequately evaluate and challenge that determination.

The lack of factual returns more generally puts counsel in a position of proceeding with hands tied behind the back. As Judge Huvelle explained in *Kahn v. Bush,* 05-1001 (KSH), Order dated August 10, 2006, "[w]ithout access to information contained within a factual return, petitioner's counsel cannot offer anything approaching effective representation in these proceedings." Likewise, in *Al-Ghizzawi v. Bush*, No. 05-2378 (JDB), Order dated August 9, 2006, Judge Bates ordered factual returns and noted that the United States concedes that such returns will have to be produced in the D.C. Circuit Court in any event. "Because the Court has concluded that the outcome sought by petitioner through the present motion [for factual returns], would ultimately be achieved regardless of the disposition of the jurisdictional question...the Court will rule on the motion without resolving respondent's jurisdictional challenge. *To do otherwise could unnecessarily prejudice petitioner's ability to timely and meaningfully communicate with counsel in advance of his claims, given the logistical difficulties and limitation associated with attorney-client communications in this unique detention setting.*"

As Judge Bates continued: "Because 'the factual returns appear necessary for...counsel effectively to represent petitioners' and 'even initial conversations [between counsel and client] may be very difficult without access to that basic factual information,' *Al Anazi v. Bush*, 370 F.Supp.2d 188, 200 (D.D.C. 2005), the court will require respondents to produce the factual

> *Bush*, 05-2398 (ESH), Order dated August 18, 2006. Such routine orders to produce factual returns likewise predate the DTA. *See, e.g., Hatim v. Bush,* No. 05-1429, Order dated August 22, 2005; *M.C. v. Bush,* No.,05-0430 (ESH), Order dated April 13, 2005; *Ameziane v. Bush,* No. 05-0392 (ESH), Order dated April 12, 2005.

return to the petitioner's counsel...." As Judge Bates noted, even if jurisdiction lies in *this* Court instead of the District Courts, the petitioner would be entitled to a review of such information. Either way, the information will be produced. Indeed, the United States confirmed in writing to Judge Bates that they "do not anticipate objecting to production of petitioners' records for review in any Court of Appeals' proceedings." *Id.*

*The MCA in no way changed the balance on the issue of the production of factual returns.* Although the MCA created further questions about jurisdiction, motions to produce factual returns continued to be granted routinely. For example, in *Feghoul v. Bush*, 2006 U.S.Dist. LEXIS 79147 (D.D.C. Oct. 31, 2006), Judge Roberts ordered factual returns shortly after and notwithstanding passage of the MCA. As he explained, "[d]espite the lack of finality regarding the issues on appeal, however, *it is hardly sensible to withhold or frustrate something that no one doubts is petitioner's right – a meaningful communication with counsel regarding the factual basis of petitioner's detention.* '*Allowing the petitioners to meet with their lawyers…is not the type of interim relief that even remotely risks infringing on the Court of Appeals' possible jurisdiction.*" *Id.* at *3, quoting *Said v. Bush*, 2006 U.S.Dist. LEXIS 60044 (D.D.C. May 23, 2006) (emphasis added).

Also for example, in *Razakah v. Bush*, 05-2370 (EGS), Order dated Jan. 23, 2007, Judge Sullivan ordered production notwithstanding the MCA, adopting the rationale of *Al-Ghizawi, Kahn, Feghoul* with respect to the DTA. As he explained, uncertainty regarding jurisdiction "is not an adequate reason to deny petitioners' motion because a factual return '*will obviously be needed regardless of the resolution of the jurisdictional question*'." (quoting *Kahn*).

Only a small minority of Judges – including the District Judge below – have decided to halt the issuance of factual returns pending this Court's decisions on the jurisdiction issue.

### III.    THE RULE 8 CONDITIONS ARE MET

This motion complies with the conditions of Fed. R. Civ. P. 8(a) and 27, as well as this Court's related Rules 8(a) and 27. The Rule 8 conditions have been met in this Motion. *First*, further application by Appellants to the District Court Judge for the requested relief is "impracticable" within the meaning of Fed. R. App. P 8(a)(2)(A)(i). The Judge below clearly denied the motion, apparently on the grounds that there is no guidance yet from this Court on the issue of jurisdiction (even though many other Judges granted the relief notwithstanding the long period of waiting for appellate court guidance on jurisdiction, for the good reasons noted above). That is a threshold issue that will not allow Appellants past the front door in the court below, no matter how a request for further relief may be styled.

Moreover, it would be "impracticable" to obtain the relief below because Appellants' counsel must have the factual returns in hand before February 23, when the ARB submissions are due. Additional motion practice in the court below would waste valuable days. In order to prevent the irreparable harm of counsel having to prepare ARB submission by February 23 without factual returns, this Court must grant the requested relief now.

*Second*, in accordance with Rule 8(a)(2)(B)(i), this motion details "the reasons for granting the relief requested and the facts relied on."

*Third*, in accordance with Rule 8(a)(2)(B)(ii), attached hereto is an Affidavit of counsel Douglas Spaulding supporting certain facts stated herein. Ironically, other "relevant parts of the record" cannot be attached as per Rule 8(a)(2)(B)(iii) because the Government has refused to produce the record. The attached Affidavit attests to as many of the facts as can reasonably be included herein given the absence of factual returns. Under these extreme circumstances, affidavits from Appellants are not possible, thus justifying use of a counsel affidavit.

*Fourth*, reasonable notice was provided to Appellee's counsel as per Rule 8(a)(2)(C).

*Fifth*, Appellants request expedited consideration as per this Court's Rule 27(f) "on the ground that, to avoid irreparable harm, relief is needed in less time than would ordinarily be required for this court to receive and consider a response." Relief is needed seven calendar days from this date, *or February 20, 2007.*

*Sixth*, the four parts required by D.C. Cir. Rule 8 for injunctive relief are addressed below.

*Finally*, an addendum hereto addresses D.C. Cir. Rules 28(A)(1) and 26.1.

## IV.    THE FOUR CONDITIONS FOR EMERGENCY RELIEF ARE MET

### A.    Appellants Have a Likelihood of Success on the Merits

As exemplified by the well-reasoned opinions in *Al-Ghizawi, Kahn,* and *Feghoul* (as discussed above) the purported habeas-stripping provisions of the MCA do not affect the need for production of factual returns.

*First*, key to this analysis is the undeniable fact – fully admitted by Appellees – that the information *will* have to be provided. If the lower court does have jurisdiction, then it will order the returns. If the lower court does *not* have jurisdiction because the MCA creates in this Court "exclusive jurisdiction" over review of CSRT proceedings – and *even if* all other review, habeas or otherwise, is stripped from lower district courts (notwithstanding the Suspension Clause and other legal arguments) – this information will still have to be provided to Appellants. Either way, it will be provided. There is no reason whatsoever – other than sheer stubbornness – for Appellees not to provide the information *now* to Appellants. Indeed, Appellees have readily produced factual returns to other detainees when routinely ordered to do so by various district courts. By chance, these Appellants have not enjoyed such a court order. Appellees cannot

fairly argue that Appellants could obtain the factual returns if they would only give up on the habeas front and file an action in this Court under the MCA, thus dramatically dwarfing the relief available to them and any hope of being released or having their conditions improved.

*Second*, this information is critical to allow for effective representation by counsel. At present, counsel cannot explore the factual basis for the CSRT determinations, or comment on these facts to the ARB. This is a Kafkaesque absurdity, wholly out of step with the most fundamental principles of due process and the rule of law. It bears repeating that, as Judge Huvelle notes, "[w]ithout access to information contained within a factual return, petitioner's counsel cannot offer anything approaching effective representation in these proceedings." *Kahn v. Bush,* 05-1001 (KSH), Order dated August 10, 2006. And indeed, as Judge Roberts noted, "it is hardly sensible to withhold or frustrate something that no one doubts is petitioner's right – a meaningful communication with counsel regarding the factual basis of petitioner's detention." *Feghoul v. Bush*, 2006 U.S.Dist. LEXIS 79147 at *3 (D.D.C. Oct. 31, 2006).

Counsel have only twice been able to meet with Appellants (under very difficult, highly restricted circumstances), but have never seen the full factual returns supposedly supporting the determination by CSRTs that they are so-called "enemy combatants" and the further determinations by the ARBs that their continued detention is necessary. Aff. ¶¶ 4, 6, 7. Certain unclassified summary information regarding two of the Appellants has been obtained through litigation arising from an Associated Press Freedom of Information Act request; but even for these two, this is a scant amount of information, and it presumably contains only some of the evidence (unclassified) that the Government relies upon to continue the detentions. This lack of information has severely impeded counsel's ability to develop a defense for their clients. Aff.

¶8.  Without this relief – and before February 23 – severe prejudice will hamper Appellants'

counsel in their ability to prepare ARB submissions.  Aff. ¶10.

　　*Third*, there is no burden of any note on Appellees to provide the factual returns.  Indeed,

in many other cases where ordered, the copying and production have occurred in short order.

Whatever tiny burden there is, it is dwarfed by the burden imposed on Appellants and their

counsel by the absence of returns.  The present state of the disclosed record simply does not

support the Government's "enemy combatant" findings with respect to these three Appellants.  If

there is any basis for those findings, it should be disclosed so that Petitioners and their counsel

can respond.

**B.    Without Immediate Production of the Factual Returns, Appellants Will Be Irreparably Injured**

　　Emergency injunctive relief is further supported by the undeniable fact that without

immediate production of the factual returns, Appellants will be irreparably and seriously injured.

　　The factual information is absolutely vital to the preparation of the ARB submissions due

February 23.  Aff. ¶10.  After that date passes, the prejudice will have been irreparable.  If, upon

review, the ARB concludes that a mistake was made or that conditions have changed so that the

Appellants do not pose a continuing threat to the United States or that they no longer are of

intelligence value to the holding power, they will be released or transferred.  *See* Revised

Implementation of ARB Procedures for Enemy Combatants at U.S. Naval Base at Guantanamo

Bay, Cuba at 2.[3]  But Appellants do not have a fair chance to win their release, having no access

to the evidence against them.  The inability to challenge the ARBs in court does not change the

fact that the failure to provide the factual returns works severe prejudice on Appellants.

---

3 Available at http://www.defenselink.mil/news/Aug2006/d20060809ARBProceduresMemo.pdf.

This critical nature of this matter and the dire consequences of a failure to address it *now* are demonstrated first through the example of Appellant Ravil Mingazov, the only remaining Russian in detention in Guantanamo. Mingazov is a Russian ballet dancer, also having danced ballet in the Russian Army for a period of time. Aff. ¶11. Many Muslims in Russia endure religious persecution. In 2000, Ravil decided to travel south from his central Russian village, in search of a new home for his wife and new son. He was arrested in Pakistan far from any field of combat, with no weapons in his possession. He was beaten and endured severe conditions at the Bagram prison, and then was transferred to Guantanamo in 2002. There, he has been beaten and subjected to extreme conditions and mistreatment (such as gasoline being poured on him). Aff. ¶11.

Nearly five years at Guantanamo, and recently transferred to the maximum security isolation cells of the new "Camp 5," Mingazov struggles to survive. Counsel has learned that the conditions in Camp 5 have worsened to the point where many detainees, including Mingazov, are on a hunger strike. Aff. ¶12. In an unclassified letter received just last Friday, February 9, and probably written several week before, Mingazov relates that he and others are on the 28th day of a hunger strike, with detainees starting to faint from starvation. *Id.*

Next, Petitioner Ghanim Abdulraham al-Harbi is a Saudi Arabian national. Aff. ¶13. He and his family live on the eastern side of Saudi Arabia, near Kuwait. In mid 2001, he traveled to Afghanistan. He never engaged in any combat or hostilities against the United States. After 9/11, while trying to return home, he was severely injured by a U.S. bomb. Suffering in a hospital, he requested to be turned over to American troops, thinking this would help him get home. Instead he was arrested (a large bounty having been paid to individuals that turned him

in).  He was subject to physical abuse at Bagram prison, and then sent to Guantanamo where he

has been imprisoned for five years.  Aff. ¶ 13.

Last, Appellant Zainulabidin Merozhev is from Tajikistan, north of Afghanistan.  Aff.

¶14.  In 1991, during a time of civil unrest in Tajikistan following the collapse of the Soviet

Union, his family became refugees and fled south across the border.  Merozhev was 13 years old.

As refugees, he and his family lived in a refugee camp organized by the United Nations.  Later

he went to Pakistan for school.  He contacted tuberculosis, which has plagued him severely

thereafter.  He returned to Afghanistan but his family had left to return to Tajikistan.  For several

years, he worked as a driver in Afghanistan.  He was arrested by American forces in July 2003.

He endured severe conditions and mistreatment at Bagram Prison, and then was sent to

Guantanamo.  He was 23 years old.  After he arrived in Guantanamo, American forces

mistakenly identified him as a certain Taliban military leader named "Jumma Jan."  Merozhev is

not "Jumma Jan" and he has never heard of such an individual.  He has tried but has been unable

to discover why the Government thinks that, and to date, the Government has refused to reveal

such information to counsel through factual returns.  Merozhev is in "Camp 6," reported to be

the worst camp at Guantanamo, with extreme conditions and mistreatment by guards.  In protest

of the conditions at Camp 6, Merozhev advised us that he would begin a hunger strike on

January 23, 2007.  Aff. ¶14.

The Government's position is that the federal courts cannot address this severe life-

threatening situation.  The Appellees' staunch position is that the CSRT rulings are subject to

modest, highly deferential review by this Court, and that no other court may issue any relief

whatsoever – shockingly, even to enjoin torture or life-threatening prison conditions in violation

of international law.  These Appellants were declared "enemy combatants" in closed

proceedings, without counsel, without the receipt of charges or evidence, and without recourse, and have been held virtually *incommunicado* for years in severe conditions and with many strong indications of mistreatment.

According to Appellees, there is nothing the detainees can do about this – there is no recourse except through Appellees. Thus, their one glimmer of hope, at least according to the Appellees, is to convince the ARB that despite their "enemy combatant" status, they are no longer a threat to the United State or its allies, and thereby eligible for release or transfer to another country (with conditions). The ARB process is heavily stacked against the detainee. The detainee is allowed to be present for portions of the proceedings, but his *counsel is not*. Counsel is permitted to make a submission, which will be "considered." These ARB hearings offer Appellants the *only* opportunity currently available to them (absent court relief) to present their arguments for their release. The ARB hearings are only held once a year.

As noted, the due date for the statements is February 23, 2007. Without access to the classified factual returns, the Appellants and their counsel will be unable to analyze the Appellees' claims and prepare a defense, thereby greatly increasing the likelihood that Appellants al-Harbi, Mingazov, and Merozhev each will remain incarcerated in harsh conditions at Guantanamo Bay for another year.

*Each day that the Appellants remain imprisoned is a day of irreparable harm for them.* Their continuing inability to fight for their liberty and an opportunity to challenge their imprisonment according to the available procedures (the ARB and/or a *habeas*/MCA challenge) are obviously a most serious continuing and irreparable injury. Their present incarcerations at Guantanamo, during which they are prevented from obtaining even the facts upon which the Government rests its claims against them, is a perverse denial of due process.

C.    **There Is No Harm To Other Interested Parties If This Relief Is Granted**

There is no harm or inconvenience whatsoever to the Appellees or others if these factual returns are ordered.  Indeed, they have been routinely turned over in numerous other habeas cases.  In fact, the habeas statute contemplates prompt filing of the return, within a few days.  *See* 28 U.S.C. 2243 (directing that return be produced within 3 days, providing that this can only be extended 20 days "for good cause").  Here, the District Court's denial of factual returns, if it is not reversed, will most certainly harm Appellees' ability to present their case to the ARB and virtually guarantee them continued and indefinite captivity at Guantanamo Bay.

D.    **The Public Interest Weighs Heavily In Favor Of The Relief**

The public interest is best served by conformity with due process of law.  The ability of the accused to confront the evidence against him is one of the most basic notions of fair play deeply embedded in American principles and jurisprudence.  "The concept of ordered liberty" cannot exist without this basic rule of law.  Appellants submit that the "public interest" most heavily weighs in favor in favor of the relief requested.

V.    **CONCLUSION**

For the forgoing reasons, Petitioners respectfully urge the Court to grant Appellants' Emergency Motion Pursuant to Rule 8 for Immediate Injunctive Relief Ordering Factual Returns.  Such relief is needed no later than next Tuesday, February 20, 2007.

Dated: February 13, 2006

Douglas K. Spaulding
Bernard J. Casey
Gary S. Thompson
Allison M. Lefrak
REED SMITH LLP
1301 K Street, NW, Suite 1100 (East Tower)
Washington, DC 20005
Tel: (202) 414-9220

- 16 -

Gitanjali S. Gutierrez (pursuant to LCvR 83.2(g))
CENTER FOR CONSTITUTIONAL RIGHTS
666 Broadway, 7th Floor
New York, NY 10012
Tel: (212) 614-6485

*Counsel for Petitioners*

## CERTIFICATE OF SERVICE

I hereby certify that on the 13th day of February, 2007, a copy of the foregoing

Emergency Motion Pursuant to Rule 8 for Immediate Injunctive Relief Ordering Factual Returns

was hand-delivered to the Court Security Officer who will serve the following person when the

document has been determined unclassified:

> Andrew I. Warden
> United States Department of Justice
> Civil Division, Federal Programs Branch
> 20 Massachusetts Ave., N.W.
> Washington, D.C. 20530

Douglas K. Spaulding

**IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT**

| | |
|---|---|
| **Ghanim-Abdulrahman al-Harbi,**<br>   **Detainee,**<br>   **Guantanamo Bay Naval Station**<br>   **Guantanamo Bay, Cuba;**<br><br>**Ravil Mingazov,**<br>   **Detainee,**<br>   **Guantanamo Bay Naval Station**<br>   **Guantanamo Bay, Cuba;**<br><br>**Zainulabidin Merozhev,**<br>   **Detainee,**<br>   **Guantanamo Bay Naval Station**<br>   **Guantanamo Bay, Cuba,**<br><br>      *Petitioners/Appellants,*<br><br>                    **v.**<br><br>**George W. Bush, et al.**<br><br>      *Respondents/Appellees.* | **Civil Action No. 05-CV-2479 (HHK)** |

**ADDENDUM TO EMERGENCY MOTION PURSUANT TO RULE 8 FOR
IMMEDIATE INJUNCTIVE RELIEF ORDERING FACTUAL RETURNS**

**RULE 28(A)(1) CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES**

**(A) Parties and Amici.**

The Appellants in this action, who are also the Petitioners in the district court, are

Ghanim-Abdulrahman al-Harbi, Ravil Mingazov, and Zainulabidin Merozhev, all of whom are

Detainees at Guantanamo Bay Naval Station Guantanamo Bay, Cuba. There are no other parties,

intervenors, or amici.

The Appellants, who are also the Respondents in the district court, are George W. Bush,

President of the United States, The White House, 1600 Pennsylvania Ave., N.W., Washington,

D.C. 20500; Donald Rumsfeld, Secretary, United States Department of Defense, 1000 Defense

Pentagon, Washington, D.C. 20301-1000; Army Brig. Gen. Jay Hood, Commander, Joint Task

Force-GTMO, JTF-GTMO, APO AE 09360; and Army Col. Mike Bumgarner, Commander,

Joint Detention Operations Group, JTF-GTMO, JTF-GTMO, APO AE 09360.  There are no

other parties, intervenors, or amici.


**(B) Rulings Under Review.**

     Under review in this Court is the Honorable Henry H. Kennedy's Order Denying

Petitioners' Motion for Order Requiring Respondents to Provide Counsel for Petitioners with

Factual Returns, dated January 31, 2007, which is attached hereto as Ex. A.

<u>**D.C. CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**</u>

     Appellants state that they are not corporate parties and therefore have no disclosures as

per D.C. Circuit Rule 26.1 and Fed. R. App. P. 26.1.

Dated: February 13, 2006

Douglas K. Spaulding
Bernard J. Casey
Gary S. Thompson
Allison M. Lefrak
REED SMITH LLP
1301 K Street, NW, Suite 1100 (East Tower)
Washington, DC 20005
Tel.: (202) 414-9220

Gitanjali S. Gutierrez  (pursuant to LCvR 83.2(g))
CENTER FOR CONSTITUTIONAL RIGHTS
666 Broadway, 7th Floor
New York, NY 10012
Tel: (212) 614-6485

*Counsel for Petitioners*

- 2 -

**IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT**

| | |
|---|---|
| **Ghanim-Abdulrahman al-Harbi,**<br>        **Detainee,**<br>        **Guantanamo Bay Naval Station**<br>        **Guantanamo Bay, Cuba;** | |
| **Ravil Mingazov,**<br>        **Detainee,**<br>        **Guantanamo Bay Naval Station**<br>        **Guantanamo Bay, Cuba;** | **Civil Action No. 05-CV-2479 (HHK)** |
| **Zainulabidin Merozhev,**<br>        **Detainee,**<br>        **Guantanamo Bay Naval Station**<br>        **Guantanamo Bay, Cuba,** | |
| *Petitioners/Appellants,* | |
|           v. | |
| **George W. Bush, et al.** | |
| *Respondents/Appellees.* | |

**<u>Affidavit of Douglas K. Spaulding</u>**

WASHINGTON, D.C.:

        Personally appeared before me, the undersigned, Douglas K. Spaudling, who being duly

sworn, deposes and says on oath as follows:

        1.        My name is Douglas K. Spaulding.  I am of mature age and fully competent.  I

have personal knowledge of the following facts.

        2.        ʼ I and my co-counsel are *pro bono* counsel to the Appellants.

        3.        Appellants are detained at the U.S. Naval Base in Guantanamo Bay.  They each

have been held there for several years without charges.

        4.        I have met with each of Appellants individually in Guantanamo Bay on two

separate occasions, most recently on January 19th, 2007 (although I was not permitted to meet

with Appellant Ravil Mingazov on the second trip).

5.    I am submitting this Affidavit on behalf of the Appellants because they cannot submit an affidavit on their own behalf and are otherwise unavailable due to their continuing imprisonment at Guantanamo. I am qualified to submit this Affidavit, and to attest to the facts stated herein, based on my communications with Appellants and knowledge of the facts of this case.

6.    Appellants were declared "enemy combatants" before the Appellees' Combatant Status Review Tribunals ("CSRTs"). Counsel was not allowed in the CSRTs. Full information about the CSRTs regarding Appellants has never been provided by Appellees.

7.    Appellants have each been rejected for release by Administrative Review Boards ("ARB"), which are assembled periodically to determine whether, despite status as an "enemy combatant," a detainee may be released or transferred to another country (with conditions) because he is no longer a "threat" to the United States or its Allies. Counsel was not allowed to be present or participate in the ARBs. Full information about the ARBs regarding Appellants has never been provided by Appellees.

8.    This lack of information has severely impeded my and my co-counsel's ability to develop a defense for these Appellants.

9.    On December 23, 2006, by e-mail only, counsel for Appellants (along with counsel for other detainees) were invited to participate in the ARB process for the first time. We were instructed to file submissions by February 23, 2007.

10.   Without the factual returns, we cannot adequately assess the evidence and make adequate comment to the ARBs.

11.   As I have learned from interviews and from other sources (among other facts), Appellant Ravil Mingazov is the only remaining Russian in detention in Guantanamo. Mingazov

- 2 -

is a Russian ballet dancer, also having danced ballet in the Russian Army for a period of time. Many Muslims in Russia endure religious persecution. In 2000, Ravil decided to travel south from his central Russian village, in search of a new home for his wife and new son. He was arrested in Pakistan far from any field of combat, with no weapons in his possession. He was beaten and endured severe conditions at the Bagram prison, and then was transferred to Guantanamo in 2002. There, he has been beaten and subjected to extreme conditions and mistreatment (such as gasoline being poured on him).

12.    I have learned that the conditions in Camp 5 have worsened to the point where many detainees, including Mingazov, are on a hunger strike. In an unclassified letter received last Friday, February 9, 2007, and probably written several week before, Mingazov relates that he and others are on the 28th day of a hunger strike, with detainees starting to "faint from starvation."

13.    As I have learned from interviews and from other sources(among other facts), Petitioner Ghanim Abdulraham al-Harbi is a Saudi Arabian national. He and his family live on the eastern side of Saudi Arabia, near Kuwait. In mid 2001, he traveled to Afghanistan. He never engaged in any combat or hostilities against the United States. After 9/11, while trying to return home, he was severely injured by a U.S. bomb. Suffering in a hospital, he requested to be turned over to American troops, thinking this would help him get home. Instead he was arrested (a large bounty having been paid to individuals that turned him in). He was subject to physical abuse at Bagram prison, and then sent to Guantanamo where he has been imprisoned for five years.

14.    As I have learned from interviews and from other sources (among other facts), Appellant Zainulabidin Merozhev is from Tajikistan, north of Afghanistan. In 1991, during a

time of civil unrest in Tajikistan following the collapse of the Soviet Union, his family became refugees and fled south across the border. Merozhev was 13 years old. As refugees, he and his family lived in a refugee camp organized by the United Nations. Later he went to Pakistan for school. He contacted tuberculosis, which has plagued him severely thereafter. He returned to Afghanistan but his family had left to return to Tajikistan. For several years, he worked as a driver in Afghanistan. He was arrested by American forces in July 2003. He endured severe conditions and mistreatment at Bagram Prison, and then was sent to Guantanamo. He was 23 years old. After he arrived in Guantanamo, American forces mistakenly identified him as a certain Taliban military leader named "Jumma Jan." Merozhev is not "Jumma Jan" and he has never heard of such an individual. He has tried but has been unable to discover why the Government thinks that, and to date, the Government has refused to reveal such information to counsel through factual returns. Merozhev is in "Camp 6," reported to be the worst camp at Guantanamo, with extreme conditions and mistreatment by guards. In protest of the conditions at Camp 6, Merozhev advised us that he would begin a hunger strike on January 23, 2007.

15.    On February 13, 2007 at approximately 10 a.m., counsel for the Appellants telephoned counsel for the Government Appellees (Andrew I. Warden, Esq.) advising of this emergency motion and, in general terms, its basis and timing. Appellees would not consent to the relief requested.

Further, affiant sayeth not.

Dated this 13th day of February, 2007

_____
Douglas K. Spaulding

SWORN to before me this

13th day of February, 2007

_____ (Seal)
Notary for the District of Columbia

My Commission Expires: June 30, 2011

RHAE A. FOREMAN
NOTARY PUBLIC DISTRICT OF COLUMBIA
My Commission Expires June 30, 2011

- 5 -

# Exhibit A

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| **GHANIM-ABDULRAHMAN AL-HARBI, et al.,**<br><br>         **Petitioners,**<br><br>      **v.**<br><br>**GEORGE W. BUSH,**<br><br>         **Respondents.** | **Civil Action 05-02479 (HHK)** |

### ORDER

Before the court is the petitioners' "Motion for Order Requiring Respondents to Provide Counsel for Petitioners with Factual Returns" [#47], filed December 19, 2006. Based upon the motion, the opposition thereto, and the record in this case, it is this 31st day of January 2007, hereby

**ORDERED** that petitioners' "Motion for Order Requiring Respondents to Provide Counsel for Petitioners with Factual Returns" [#47] is **DENIED**.

Henry H. Kennedy, Jr.
United States District Judge

# Exhibit B

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **MAHMOAD ABDAH, et al.,** | |
| **Petitioners,** | |
| **v.** | **Civil Action 04-1254 (HHK)** |
| **GEORGE W. BUSH, et al.,** | |
| **Respondents.** | |

### ORDER

Before the court is the petitioners' "Motion to Compel Access to Unredacted Factual Returns" [#113], filed February 28, 2005. Based upon the motion, the opposition thereto, and the record in this case, it is this 1st day of February 2007, hereby

**ORDERED** that petitioners' "Motion to Compel Access to Unredacted Factual Returns" [#113] is **DENIED** without prejudice to renewal pending the resolution of the question of jurisdiction by the Court of Appeals for the D.C. Circuit in *Boumediene v. Bush*, 450 F. Supp. 2d 25 (D.D.C. 2006) (appeal pending), and *Al Odah v. United States*, 346 F. Supp. 2d 1 (D.D.C. 2004) (appeal pending).

Henry H. Kennedy, Jr.
United States District Judge