DOJ cleared for public filing 5/___/07

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| **GHANIM-ABDULRAHMAN AL-HARBI**, *et al.,* | ) ) ) ) | |
| *Petitioners,* | ) ) | |
| *v.* | ) ) | Civ. No. 05-CV-02479 (HHK) |
| **GEORGE W. BUSH**, *et al.,* | ) ) | |
| *Respondents.* | ) ) ) | |

## PETITIONERS' OPPOSITION TO RESPONDENTS' MOTION TO DISMISS

Douglas K. Spaulding
Gary S. Thompson
Allison M. Lefrak
Richard W. Roberts
REED SMITH LLP
1301 K Street, NW, Suite 1100
(East Tower)
Washington, DC 20005
Tel: (202) 414-9220

Bernard J. Casey
Casey ADR Services
P.O. Box 26215
San Francisco, CA 94126
Tel: (415) 515-0855

May 3, 2007

**Counsel for Petitioners**

DOJ cleared for public filing 5/___/07

# TABLE OF CONTENTS

**Page**

Introduction ................................................................................................................. 1

A.     This Court Retains Subject-Matter Jurisdiction Over The Habeas Corpus Petitions As Long As Petitioners' Claims Are Not Frivolous And Have Not Been Decided On The Merits By The Supreme Court. ................................... 2

B.     The *Boumediene* Case Establishes That The Present Case Involves Substantial Issues That Have Not Been Decided By The Supreme Court And That The Exhaustion Of Available Remedies Should Precede A Decision On The Merits. ....................................................................................... 5

      1.     Justices Stevens And Kennedy Explicitly And The Circuit Court Implicitly Adopted The Exhaustion Of Remedies Model For Habeas Relief ................................................................................. 6

      2.     The Supreme Court Has Not Decided Any Questions Regarding The Jurisdiction Of This Court Or The Rights That Can Be Enforced Through Habeas Corpus Proceedings ......................................... 7

      3.     The Jurisdictional Questions Regarding Habeas Corpus Cannot Be Resolved Until The Adequacy Of The DTA Remedy Becomes Known ................................................................................................ 8

C.     Because Petitioners Are Exhausting Available Remedies, The District Court Not Only Has Discretion To Enter A Stay-And-Abey Order, But Such An Order Is Mandatory Under *Rhines* .......................................................... 9

D.     Under *United Mine Workers*, The Court Has Authority To Preserve The Status Quo While Jurisdictional Questions Are Litigated .................................... 11

E.     The Protective And Other Procedural Orders Are Necessary To Assure That The Office And Purpose Of The Writ Of Habeas Corpus Are Not Compromised. ............................................................................................. 13

F.     *Boumediene* Does Not Establish The Record To Which Petitioners Should Be Bound Because They Are Exhausting Available Remedies And Other Legal Theories May Be Available On The Particular Facts Of Their Case ......... 14

G.     The Pendency Of Two Appeals From This Court's Orders In This Case Divests This Court Of Jurisdiction To Dismiss Petitioners' Habeas Petition ................................................................................................... 15

DOJ cleared for public filing 5/___/07

## TABLE OF CONTENTS

**Page**

    H.     Dismissal Of This Action Will Not, By Itself, Effect The Dissolution Of This Court's Protective And Other Injunctive Orders ......................................... 16

Conclusion ...................................................................................................................... 18

DOJ cleared for public filing 5/___/07

**Introduction**

Petitioners, through undersigned counsel Douglas K. Spaulding and Reed Smith LLP,

oppose Respondents' Motion to Dismiss because controlling D.C. Circuit and U.S. Supreme

Court precedent require this Court to continue the stay of proceedings before it and hold them in

abeyance pending Petitioners' exhaustion of remedies under the Detainee Treatment Act of 2005

("DTA").[1]

This Court has subject-matter jurisdiction over this habeas corpus petition under the

Supreme Court case upon which Respondents' Motion primarily is based: *Steel Co. v. Citizens

for a Better Environment*, 523 U.S. 83, 89 (1998), which held that dismissal for lack of subject-

matter jurisdiction is proper only when the federal claim is frivolous or foreclosed by prior

decisions of the ***Supreme Court***. The D.C. Circuit's split decision in *Boumediene v. Bush*, 476

F.3d 981 (D.C. Cir.), *cert. denied*, 127 S.Ct. 1478 (2007), and the subsequent commentary from

Supreme Court Justices accompanying the Court's denial of certiorari in that case, establish that

the issues involved are substantial and that the Supreme Court has *not* decided the important

questions that were deferred pending exhaustion of available remedies.

The Supreme Court elsewhere has provided a clear road map for the litigation involving

detainees who filed habeas corpus petitions from Guantánamo at a time when this Court had

initial jurisdiction under *Rasul v. Bush*, 542 U.S. 466 (2004). While available remedies under the

DTA are being exhausted, this Court has authority to enter a stay-and-abey order to safeguard

habeas rights during the period of exhaustion, and such an order is mandatory in the absence of

frivolous claims and intentional delay. *See Rhines v. Weber*, 544 U.S. 269, 274 (2005). While

Petitioners' habeas petition is stayed pending exhaustion of Petitioners' DTA litigation, this

---

[1]    Petitioners filed a petition for immediate release and other relief under the DTA in the D.C.
Circuit on April 17, 2007. *See* D.C. Circuit, No. 07-1095. That action remains pending.

DOJ cleared for public filing 5/___/07

Court has the authority to maintain, and should maintain, the supervisory orders it has entered regarding the protective order, access to counsel and other materials, and the required 30-day notice before transfer. *See United States v. United Mine Workers of America*, 330 U.S. 258, 290-91 (1947); *In re President and Directors of Georgetown College*, 331 F.2d 1000, 1005 (D.C. Cir. 1964). Indeed, even if this Court grants dismissal, that dismissal will not, by itself, dissolve this Court's protective and injunctive orders in this case—further adjudication will be required. *See, e.g., United States v. Swift & Co.*, 286 U.S. 106, 114 (1932); *Cobell v. Norton*, 392 F.3d 461, 467 (D.C. Cir. 2004); *Hodge v. Dep't of Housing and Urban Development,* 862 F.2d 859, 861 (11th Cir. 1989).

Finally, at the same time this Court retains limited jurisdiction to stay-and-abey this action pending DTA exhaustion, it lacks any broader jurisdiction to dismiss the action as requested by Respondents due to the pendency of appeals from two of its orders in the D.C. Circuit.

For all of these reasons, Respondents' Motion to Dismiss should be denied, and this Court should enter an order staying this action in abeyance until future events occur as discussed fully below.

A.    **This Court Retains Subject-Matter Jurisdiction Over The Habeas Corpus Petitions As Long As Petitioners' Claims Are Not Frivolous And Have Not Been Decided On The Merits By The Supreme Court.**

Respondents place primary reliance on *Steel Co.* for the unremarkable proposition that jurisdiction is a threshold question (Gov't Motion at 4). Respondents ignore the preceding language in *Steel Co.* that supports this Court's jurisdiction to maintain the habeas action as long as a legitimate controversy exists that has not been resolved on the merits by the Supreme Court. *Steel Co.*, 523 U.S. at 89.

2

DOJ cleared for public filing 5/___/07

The starting point of *Steel Co.* is that the district court has subject matter jurisdiction as

long as there is a non-frivolous argument that the laws and Constitution support the claim:

> [T]he district court has jurisdiction if "the right of the petitioners to recover under
> their complaint will be sustained if the Constitution and laws of the United States
> are given one construction and will be defeated if they are given another." . . .
> unless the claim "clearly appears to be immaterial and made solely for the
> purpose of obtaining jurisdiction or where such a claim is wholly insubstantial
> and frivolous."

523 U.S. at 89 (quoting *Bell v. Hood*, 327 U.S. 678, 682-83, 685 (1946)).  As demonstrated by

the dissent from the D.C. Circuit's decision in *Boumediene*, and the three-Justice dissent from

the Supreme Court's denial of certiorari in that case, there is a reading of the Constitution and

laws of the United States that would sustain Petitioners' habeas corpus petition.  *Boumediene*,

476 F.3d at 994-1012 (Rogers, J., dissenting); 127 S.Ct. at 1479-81 (Breyer, Souter & Ginsburg,

JJ., dissenting from denial of certiorari).

Alternatively, *Steel Co.* also establishes that a court of appeals decision such as the D.C.

Circuit's decision in *Boumediene* is not sufficient to deprive this Court of subject-matter

jurisdiction.  Only when the **Supreme Court** rules adversely on the merits is dismissal for want

of subject matter jurisdiction appropriate: "Dismissal for lack of subject-matter jurisdiction

because of the inadequacy of the federal claim is proper only when the claim is 'so insubstantial,

implausible, *foreclosed by prior decisions of this Court*, or otherwise completely devoid of merit

as not to involve a federal controversy.'"  *Steel Co.*, 523 U.S. at 89 (quoting *Oneida Indian

Nation of N.Y. v. County of Oneida*, 414 U.S. 661, 666 (1974)(emphasis added)).  The Supreme

Court's denial of certiorari in *Boumediene* is emphatically not a ruling on the merits.

Petitioners' jurisdictional contentions obviously are not frivolous because the courts have

divided over their proper resolution at each level of the litigation:  The district courts are divided,

leading to the D.C. Circuit's two-to-one decision in *Boumediene*, resulting in the Supreme

DOJ cleared for public filing 5/___/07

Court's three-way fracture in the denial of certiorari in *Boumediene*. Seldom have we faced weightier issues about the meaning of our Constitution. The main case upon which Respondents rely establishes that the Motion to Dismiss should be denied while remedies are exhausted.

Ironically, Respondents' own Motion recognizes this Court's continuing jurisdiction while the DTA remedies are exhausted. In footnote 15, Respondents point out that the protective order here should survive dismissal, citing to a case upon which Petitioners rely— *United States v. United Mine Workers of America*, 330 U.S. 258, 290-91 (1947) (*See* Gov't Motion at 8-9). As argued below at pages 11-13, *United Mine Workers* establishes that this Court has the authority throughout the litigation to maintain the status quo by enforcing the protective order and otherwise ensuring that "the office and purposes of the writ of habeas corpus are not compromised," as Justices Stevens and Kennedy put it in *Boumediene*.

In the final analysis, Respondents' position is based on a fundamental misunderstanding of what it means for a court to have jurisdiction. "Jurisdiction is a word of many, too many, meanings." *Steel Co.*, 523 U.S. at 90 (quoting *United States v. Vanness*, 85 F.3d 661, 663 n. 2 (D.C. Cir. 1996)). While the *Boumediene* opinion states the current law of the Circuit, the ruling does nothing to impair Petitioners' rights to exhaust their remedies while this Court preserves the status quo.[2] If necessary, after exhaustion, this Court, the D.C. Circuit, and the Supreme Court will have jurisdiction to determine the substantial issues raised by Petitioners without

---

[2]    Respondents erroneously cite to *Ayuda v. Thornburgh*, 919 F.2d 153 (D.C. Cir. 1990), for the proposition that a court of appeals opinion immediately becomes the law of the circuit upon issuance, depriving the courts of the power to stay and hold in abeyance. In fact, the majority ruled in *Ayuda* that a stay was appropriate. The government cited a concurring opinion only, and, in that opinion, the concurring Judge ultimately agreed with the majority, which rejected the proposition that the court lacked the power to enter a stay. *See Ayuda*, 919 F.2d at 153. The other concurring and dissenting opinion correctly articulated the applicable law that, until the Supreme Court speaks on jurisdiction, the district court has the power to determine its own jurisdiction including "minimally, the power to maintain the status quo." *Ayuda*, 919 F.3d at 155-56 (Wald, C.J., concurring and dissenting).

DOJ cleared for public filing 5/___/07

prejudgment based on a Circuit Court ruling that does not address Petitioners' specific factual and legal claims.

This Court retains the power to decide its own jurisdiction in the first instance. *Kircher v. Putnam Funds Trust*, 126 S.Ct. 2145, 2155 (2006); *United States v. Ruiz*, 536 U.S. 622, 628 (2002). While the efficacy of the DTA remedies is determined, it is premature for this Court to determine the dispositive questions. Meanwhile, this Court should follow the stay-and-abey norm established in *Rhines*; then, if the case is not mooted by the DTA proceedings, this Court should provide Petitioners the opportunity to make their record, present their claims, and receive a decision based on the facts and law of their individual cases.

> **B.    The *Boumediene* Case Establishes That The Present Case Involves Substantial Issues That Have Not Been Decided By The Supreme Court And That The Exhaustion Of Available Remedies Should Precede A Decision On The Merits.**

Respondents attempt to stretch the D.C. Circuit's *Boumediene* decision far beyond its reach. Despite the initial jurisdiction found in *Rasul*, a divided panel of the D.C. Circuit found that post-*Rasul* federal statutes deprived the courts of jurisdiction over petitions involving aliens detained at Guantánamo. *Boumediene v. Bush*, 476 F.3d 981 (D.C. Cir. 2007). Only because the petitioners in those cases had declined to pursue remedies directly with the D.C. Circuit under the DTA, the court found that the "only recourse" was to vacate the district court decision and dismiss the case for lack of jurisdiction. *Boumediene*, 476 F.3d at 994. The petitioners filed for a writ of certiorari and, on April 2, 2007, the Supreme Court denied certiorari, with both a three-Justice dissent and a two-Justice statement respecting the denial of certiorari. *Boumediene v. Bush*, 127 S.Ct. 1478 (2007).

The statement of Justices Stevens and Kennedy found that, given "our practice of requiring the exhaustion of available remedies as a precondition to accepting jurisdiction over

DOJ cleared for public filing 5/___/07

applications for the writ of habeas corpus," denial of certiorari was appropriate "at this time." *Id.* The Justices specifically expressed concern regarding maintenance of the status quo during the litigation: "Were the government to take additional steps to prejudice the position of petitioners in seeking review in this Court, 'courts of competent jurisdiction,' including this Court, 'should act promptly to ensure that the office and purposes of the writ of habeas corpus are not compromised.'" *Id.* (quoting *Padilla v. Hanft*, 547 U.S. 1062 (Kennedy, J., concurring in the denial of certiorari)).

Respondents' reliance on *Boumediene* is misplaced for several reasons. First, the D.C. Circuit's reference to the *Boumediene* petitioners' decision not to exhaust, coupled with Justice Stevens and Kennedy's explicit adoption of the exhaustion model based on *Ex parte Hawk*, 321 U.S. 114 (1944), support continuing the stay while the DTA remedies are exhausted. *Id.* Second, the jurisdictional questions have not been finally resolved because "as always, denial of certiorari does not constitute an expression of any opinion on the merits." *Boumediene*, 127 S.Ct. at 1478 (Stevens & Kennedy, JJ., statement regarding denial of certiorari)(citing *Rasul*, 542 U.S. at 480-81). Third, Justice Stevens and Kennedy's citation to Supreme Court authority regarding the efficacy of the alternative remedies contemplates an underlying habeas corpus case in which the petitioner can present such arguments to the district court and, if necessary, the court of appeals and Supreme Court. We address each of these reasons in turn.

      *1.    Justices Stevens And Kennedy Explicitly And The Circuit Court Implicitly Adopted The Exhaustion Of Remedies Model For Habeas Relief.*

*Boumediene* does not control this case because, unlike the petitioners in that case, Petitioners here are exhausting their remedies under the DTA. The D.C. Circuit's opinion expressly predicated its dismissal order on the petitioners' failure to utilize available remedies under the DTA. *Boumediene*, 476 F.3d at 994. Justices Stevens and Kennedy explained that

DOJ cleared for public filing 5/___/07

"[d]espite the obvious importance of the issues," the Court was denying certiorari "at this time"

in light of the Court's practice of requiring exhaustion of available remedies, citing *Ex parte*

*Hawk. Boumediene*, 127 S.Ct. at 1478.

The citation to *Hawk* is telling.  In that case, the petitioner filed for federal habeas corpus

relief under circumstances, as in the present case, in which the effectiveness of other remedies

had not been established.  The Supreme Court not only applied the exhaustion rule but held that

the adequacy of the available remedy should be decided in the first instance by "the federal

district court":

> Where the state courts have considered and adjudicated the merits of his contentions, and this Court has either reviewed or declined to review the state court's decision, a federal court will not ordinarily reexamine upon writ of habeas corpus the questions thus adjudicated . . . .  But where resort to state court remedies has failed to afford a full and fair adjudication of the federal contentions raised, either because the state affords no remedy . . . or because in the particular case the remedy afforded by state law proves in practice unavailable or seriously inadequate . . . , a federal court should entertain his petition for habeas corpus, else he would be remediless.  ***In such a case he should proceed in the federal district court before resorting to this Court by petition for habeas corpus***.

321 U.S. at 118 (citations omitted) (emphasis added).  This exhaustion model anticipates that the

ultimate questions regarding jurisdiction, which may depend in large part on the efficacy of the

DTA remedy here, will first be considered and decided in the district court.  The ultimate issues

would then be preserved for appellate review, if necessary.

> 2.     *The Supreme Court Has Not Decided Any Questions Regarding The Jurisdiction Of This Court Or The Rights That Can Be Enforced Through Habeas Corpus Proceedings.*

Respondents' assertions regarding *Boumediene* ignore the basic reality that "as always,

denial of certiorari does not constitute an expression of any opinion on the merits."  127 S.Ct. at

1478.  In *Boumediene*, three dissenting Justices and Circuit Judge Rogers in dissent explained

that the constitutional ramifications of a statute that purports to disenfranchise petitioners in

existing habeas corpus petitions are profound and of obvious importance.  *See Boumediene*, 476

DOJ cleared for public filing 5/___/07

F.3d at 994-1012; 127 S.Ct. at 1479-81.  The addition of Justices Stevens and Kennedy's

statement confirms that Petitioners' petition should be fully considered, after DTA exhaustion,

upon its unique facts and legal arguments.  Simply put, *Boumediene* does not finally resolve the

jurisdictional questions in Petitioners' case.[3]

> 3.     *The Jurisdictional Questions Regarding Habeas Corpus Cannot Be Resolved Until The Adequacy Of The DTA Remedy Becomes Known.*

Questions regarding the suspension and elimination of the writ of habeas corpus require

consideration of whether alternative remedies provide protection coextensive with the Great

Writ.  *Swain v. Pressley*, 430 U.S. 372, 381 (1977) ("the substitution of a collateral remedy

which is neither inadequate nor ineffective to test the legality of a person's detention does not

constitute a suspension of the writ of habeas corpus.").  Justices Stevens and Kennedy's

statement on certiorari in *Boumediene* clearly sets out that if the DTA remedy is "inadequate,"

the Supreme Court is prepared to address the merits of the habeas corpus claims.  *See* 127 S.Ct.

at 1478.  In the interim, they continued, Respondents should take no additional steps "to

prejudice the position of petitioners" in seeking review.  *Id.*  By maintaining the status quo in

present case, this Court will be in a position to "act promptly to ensure that the office and

purposes of the writ of habeas corpus are not compromised."  *Id.*  The exhaustion model from the

*Boumediene* litigation counsels that this proceeding should remain in place in this Court for

potential, post-DTA exhaustion litigation.

---

[3]     The *Boumediene* case does not even finally decide the questions for the *Boumediene* petitioners, given that the D.C. Circuit's mandate in that case has not yet issued, and remains subject to motions and briefing.

DOJ cleared for public filing 5/___/07

**C.    Because Petitioners Are Exhausting Available Remedies, The District Court Not Only Has Discretion To Enter A Stay-And-Abey Order, But Such An Order Is Mandatory Under *Rhines*.**

Given the need to exhaust remedies under the DTA, the proceedings in this court should continue to be stayed and held in abeyance pending completion of Petitioners' DTA action.[4]  In *Rhines*, the Supreme Court explicitly approved the stay-and-abey procedure in the closely analogous context of federal habeas corpus proceedings.  544 U.S. at 278.  There, the prisoner filed a mixed habeas petition in federal court which contained both claims exhausted through the state court system and unexhausted claims.  Given the major procedural risks of a dismissal order, the Court found that district courts have discretion to enter stay-and-abey orders in federal habeas cases while the unexhausted claims are presented to the state court.  The federal habeas corpus case is stayed and held in abeyance for a reasonable time while available state remedies are exhausted.

The *Rhines* Court found three preconditions for, in effect, mandatory stay-and-abey.  "[I]t would likely be an abuse of discretion for a district court to deny a stay and to dismiss" if the petitioner demonstrated (1) good cause for the failure to exhaust, (2) potentially meritorious unexhausted claims, and (3) no intentionally dilatory tactics by the petitioner.  *Rhines*, 544 at 278; *accord Pace v. DiGuglielmo*, 544 U.S. 408, 416-17 (2005).[5]  The petition here satisfies all three conditions for mandatory stay-and-abey.

There is good cause for Petitioners' refusal to exhaust DTA remedies until now:  The potential remedy did not exist until after the habeas corpus petition was filed and did not purport

---

[4]    Petitioners are filing contemporaneously with this Court a formal motion seeking a stay-and-abey order as described herein.

[5]    In *Rhines*, three Justices concurred, stating that stay-and-abey is required in the absence of proof of "intentionally dilatory litigation tactics." 544 U.S. at 279 (Souter, J., concurring, joined by Justices Ginsburg and Breyer).

DOJ cleared for public filing 5/___/07

to provide the habeas relief to which Petitioners were entitled at the time the habeas action was

filed.  In *Pace*, the Court noted that potential confusion regarding state remedies required

equitable protections.  544 U.S. at 416.  Guantánamo detainees face complexities that are similar

and worse.  The questions left open by the Supreme Court's decision in *Rasul*, which established

a right to proceed under § 2241,[6] and the subsequently enacted DTA and Military Commission

Act of 2006, have resulted in major complications.  Petitioners did not even have the potential

DTA remedy prior to October 2006 because, as the Supreme Court held, the DTA did not apply

retrospectively to habeas corpus petitions filed prior to the effective date of the statute.  *Hamdan*

*v. Rumsfeld*, 126 S.Ct. 2749, 2762-69 (2006).

The claims raised by Petitioners likewise are substantial and meritorious.  In their

pending DTA petition, Petitioners assert a number of potentially meritorious unexhausted claims

for relief, including generally that: (1) the Combatant Status Review Tribunal's ("CSRT")

determinations that Petitioners are "enemy combatants" were not supported by a preponderance

of the evidence, and were otherwise inconsistent with the procedures and standards governing

the CSRT proceedings; (2) such procedures and standards followed by the CSRT are inconsistent

with multiple provisions of the United States Constitution and other federal law; and (3) that

Petitioners' ongoing detention is unconstitutional and inconsistent with other federal law.  In the

event Petitioners' DTA action ultimately is remanded to this Court for some reason, or if the

DTA procedures prove an inadequate substitute for constitutionally-required habeas corpus

procedures, this Court should be in position to proceed immediately on the habeas petition.

---

[6]     The construction of § 2241 in *Rasul* is what the statute has always meant.  *Rivers v. Roadway Express, Inc.*, 511 U.S. 298, 313 n.12 (1994) ("[W]hen this court construes a statute, it is explaining its understanding of what the statute has meant continuously since the date when it became law.").

DOJ cleared for public filing 5/___/07

Nor have Petitioners engaged in dilatory tactics. On the contrary, they have been diligent in presenting their claims and attempting to obtain relief. They have been confined at Guantánamo for over 5 years in virtual isolation, cut off from their families and subjected to harsh treatment and conditions. This habeas corpus litigation is their main—and perhaps only—hope of gaining release from their confinement.

Respondents' attempt to distinguish *Rhines* fails. They contend that the power of the district court to stay-and-abey under *Rhines* is limited only to those instances when failing to stay-and-abey would cause a statute of limitations to run that would preclude the petitioner from refiling (Mot. at 6-7). But this was the factual predicate in *Rhines*, not its holding. Nothing in *Rhines* limited a district court's equitable power to stay-and-abey only to concerns regarding statutes of limitation. Rather, *Rhines* held that the equitable powers the district court possessed before enactment of the statute of limitations continued to exist and were not extinguished by the statute. *Rhines*, 544 U.S. at 276. As in *Pace*, the concern warranting stay-and-abey was to protect the petitioner from impairment of future exercise of habeas corpus rights. *See Omar v. Harvey*, 479 F.3d 1 (D.C. Cir. 2007)(affirming the district court's preliminary injunction barring transfer of a prisoner entered to preserve the court's jurisdiction over the habeas corpus petition of an American citizen detained in a military facility in Iraq). *Rhines* is controlling authority regarding stay-and-abey procedures while remedies are being exhausted, and it applies here to require this Court's entry of a stay-and-abey order.

> **D.    Under *United Mine Workers*, The Court Has Authority To Preserve The Status Quo While Jurisdictional Questions Are Litigated.**

As noted above, in the statement accompanying the *Boumediene* order, two Justices stated: "Were the government to take additional steps to prejudice the position of petitioners in seeking review in this Court, 'courts of competent jurisdiction,' including this Court, 'should act

DOJ cleared for public filing 5/___/07

promptly to ensure that the office and purposes of the writ of habeas corpus are not compromised.'" 127 S.Ct. at 1478. The Justices' language echoes the long-established principle that, even if there is no jurisdiction, that ultimate question is for the Supreme Court, and that while the matter is under consideration, the courts have "authority, from the necessity of the case, to make orders to preserve the existing conditions and the subject of the petition." *United Mine Workers*, 330 U.S. at 291 (quoting *United States v. Shipp*, 203 U.S. 563, 573 (1906) (Holmes, J.)). The D.C. Circuit has not hesitated to apply this preservation principle:

> Of course, whether or not there was jurisdiction to decide the merits, until the question of jurisdiction is determined, there was "authority from the necessity of the case to make orders to preserve the existing conditions and the subject of the petition . . . ." Clearly there was "power to preserve existing conditions while . . . determining (the) authority to grant injunctive relief."

*In re President and Directors of Georgetown College*, 331 F.2d at 1005 (internal citations omitted) (quoting *Shipp* and *United Mine Workers*).

Accordingly, this Court should carefully protect the status quo by maintaining the orders entered to date to assure that Petitioners are not prejudiced in their ability to litigate their pending DTA action in the D.C. Circuit and to preserve potential remedies in this Court and on appeal.[7] There is, moreover, a demonstrable need for such caution. The denial of certiorari in *Boumediene* leaves unanswered predicate questions necessary to deciding issues in Petitioners' case, including: Does the DTA provide a forum for resolving issues regarding unlawful detention coextensive with traditional habeas corpus? If not, has the writ been unconstitutionally

---

[7] The supervisory orders this Court has entered include not only the protective order, but also the order granting Petitioners' motion for a 30-day notice order prior to transfer (presently on appeal to the D.C. Circuit in No. 06-5191), and the order denying Petitioners' motion for production of factual returns (presently on appeal to D.C. Circuit in No. 07-5052). Respondents have asked the D.C. Circuit to dismiss both of the appeals from this Court's 30-day notice and factual return orders. Petitioners have opposed dismissal in both appeals, asking instead that the D.C. Circuit at least stay the appeals for the same reasons discussed herein. (In the factual return appeal, Petitioners alternatively moved for emergency relief asking the D.C. Circuit to order the production of factual returns itself.) As noted, both appeals remain pending in the D.C. Circuit.

DOJ cleared for public filing 5/___/07

suspended or eliminated?  Is the government taking "additional steps to prejudice the position of petitioners in seeking review of this Court" and, if so, should this Court "act promptly to ensure that the office and purposes of the writ of habeas corpus are not compromised?"

Respondents' Motion to Dismiss should be denied for the additional reason that this Court has insufficient information to answer a number of questions the DTA proceedings will answer.  Further, if this Court eventually reaches the jurisdictional and constitutional questions, and rules adversely to Petitioners, there must be an adequate record for the D.C. Circuit's appellate review and, if necessary, for the Supreme Court to decide whether to grant a writ of certiorari, all of which requires that the petition in this Court remain in place until after Petitioners have exhausted the DTA procedures.

### E.    The Protective And Other Procedural Orders Are Necessary To Assure That "The Office And Purpose Of The Writ Of Habeas Corpus Are Not Compromised."

Here, the dismissal of the district court proceedings would constitute exactly the type of prejudice to Petitioners' ability to litigate that Justices Kennedy and Stevens instructed that the courts should guard against.  This Court has properly addressed issues preliminary to ultimate disposition throughout this litigation.  This Court's protective order, its orders regarding access to counsel and other materials, and its order requiring 30-days' advance notice before transfer, should remain intact pending exhaustion of DTA remedies.

Respondents suggest that the protective order they agreed to should be renegotiated and replaced in the D.C. Circuit (*See* Gov't Motion at 9-11).  This Court has been supervising the protective order for almost a year.  If difficulties arise beyond the powers of the parties to resolve, the protective order includes remedial mechanisms for Respondents to exhaust, up to and including contempt and criminal prosecution.  Respondents' failure to exhaust these available remedies should foreclose any additional action based on their complaints.

13

DOJ cleared for public filing 5/___/07

Respondents' desire to substitute protective orders is no reason to dismiss this action instead of following the Supreme Court-approved stay-and-abey procedure.

Access between Petitioners and counsel is critical in this case. The complexities of the litigation need to be explained to persons like Petitioners who are unfamiliar with the legal process in the United States, much less the uncharted and ever-shifting processes they have had to follow during their years of detention. The protective order should remain intact, especially given that the D.C. Circuit should have the option of continuing to administer the DTA litigation under the auspices of this Court's orders.

### F.    *Boumediene* Does Not Establish The Record To Which Petitioners Should Be Bound Because They Are Exhausting Available Remedies And Other Legal Theories May Be Available On The Particular Facts Of Their Case.

Respondents' request for dismissal also fails to recognize Petitioners' unique arguments, underlying facts, and resulting legal issues that separate this case from *Boumediene*. The *Boumediene* cases involve specific allegations and legal theories; those cases do not control all the potential issues to be raised by Petitioners. *Texas v. Cobb*, 532 U.S. 162, 169 (2001) ("Constitutional rights are not defined by inferences from opinions which did not address the question at issue."); *see also United States v. Booker*, 543 U.S. 220, 239-242 (2005) (limiting *stare decisis* effect of cases where constitutional issue was not raised or resolved). The most basic distinction between this case and *Boumediene* is that the scope and efficacy of the DTA remedies presently are being tested and will provide this Court necessary information that will only be known once the exhaustion of DTA remedies is completed. Until then, the factual predicate for evaluating the legal issues is lacking, rendering the case unripe for the fully developed review anticipated by Justices Kennedy and Stevens.

*Boumediene* also did not resolve all potential legal issues regarding the purported statutory disenfranchisement of the jurisdiction that existed under *Rasul* at the time Petitioners

14

DOJ cleared for public filing 5/___/07

filed their habeas petition. The post-DTA exhaustion litigation, if not mooted by relief granted under the DTA, will involve legal approaches that the *Boumediene* majority did not address and resolve. If *Rasul* means anything, Petitioners' many unique claims in this action for relief under constitutional, statutory and international law principles must ultimately be adjudicated, whether through their DTA action or any post-DTA litigation in this Court.

**G.  The Pendency Of Two Appeals From This Court's Orders In This Case Divests This Court Of Jurisdiction To Dismiss Petitioners' Habeas Petition**

As discussed above, this Court possesses limited jurisdiction to freeze this litigation until certain further events transpire. But this Court's jurisdiction is in fact limited to this extent, and certainly does not extend as far as Respondents suggest to dismissal of this habeas petition because appeals from two of this Court's orders remain pending in the D.C. Circuit.

It is well-settled in this Circuit that "[t]he filing of a notice of appeal, including an interlocutory appeal, 'confers jurisdiction on the court of appeals and divests the district court of control over those aspects of the case involved in the appeal.'" *United States v. DeFries*, 129 F.3d 1293, 1302 (D.C. Cir. 1997) (quoting *Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56, 58 (1982) (*per curiam*)). "The district court does not regain jurisdiction over those issues until the court of appeals issues its mandate." *Id.* (citation omitted).

Applied here, these principles preclude this Court from taking any steps that might affect the two orders it has issued that remain pending on appeal—the order granting Petitioners' motion for 30-days' notice prior to transfer, and the order denying Petitioners' motion for production of factual returns. This Court is not divested of all jurisdiction, of course, including namely its jurisdiction to maintain the status quo in this litigation pursuant to *Rhines* and the stay-and-abey procedure that precedent directs. But without further direction from the D.C. Circuit, this Court cannot dismiss this action entirely, thereby impairing the very foundation of

DOJ cleared for public filing 5/___/07

the orders that are pending on appeal.  Thus, while this Court retains limited jurisdiction in this

case to preserve the status quo, it lacks jurisdiction to grant Respondents' Motion to Dismiss.

### H.    Dismissal Of This Action Will Not, By Itself, Effect The Dissolution Of This Court's Protective And Other Injunctive Orders

Respondents apparently conceive of a dismissal here as effecting a dissolution of the

protective and other injunctive orders (*i.e.*, 30-day notice order) entered by this Court.  They

argue that the stay-and-abey relief requested by some of the Guantanamo detainees

"contemplates that various orders of the Court, including the protective order imposing a counsel

access regime and any orders requiring advance notice of any transfer of detainees from

Guantanamo, would remain extant and enforceable, effectively imposing Court-ordered

obligations where the Court has no jurisdiction to act."  (Gov't Mot. at 7-8) (footnotes omitted).

Respondents dispute that possibility, contending that, as a result of the D.C. Circuit's decision in

*Boumediene*, this Court must promptly dismiss these cases and that "prompt dismissal of these

cases … would bring this Court's counsel access regime to an end[.]"  Id. at 10.

Contrary to Respondents' contention, however, dismissal of this case would not result

automatically in the dissolution of the protective and injunctive orders entered by this Court.  As

the district court recognized in *Adem v. Bush,* 425 F. Supp. 2d 7, 20 (D.D.C. 2006), the

"Amended Protective Order and Procedures for Counsel Access to Detainees at the United States

Naval Base in Guantanamo Bay, Cuba," entered on November 8, 2004, like all protective orders

directed to future events, survives dismissal of this case and may be modified, enforced, or

dissolved only by separate order of the Court.  *See also Gambale v. Deutsche Bank AG*, 377 F.3d

133, 140-41 (2d Cir. 2004); *Poliquin v. Garden Way, Inc.*, 989 F.2d 527, 535 (1st Cir. 1993);

*United Nuclear Corp. v. Cranford Ins. Co.*, 905 F.2d 1424, 1427 (10th Cir. 1990); *Public Citizen

v. Liggett Group*, 858 F.2d 775, 780-82 (1st Cir. 1988); *Marshall v. Planz*, 347 F. Supp. 2d,

DOJ cleared for public filing 5/___/07

1198, 1201 (M.D. Ala. 2004); *Tucker v. Ohtsu Tire & Rubber Co., Ltd.*, 191 F.R.D. 495, 499 (D.

Md. 2000).

Similarly, injunctive decrees directed to future events, such as the orders entered by this

Court requiring 30-days' advance notice of potential transfers of Petitioners from Guantanamo

and the preservation of government records and counsel papers, survive dismissal of this case

and may be modified, enforced, or dissolved only by separate order of this Court. *See United*

*States v. Swift & Co.*, 286 U.S. 106, 114 (1932); *Cobell v. Norton*, 392 F.3d 461, 467 (D.C. Cir.

2004); *Gilmore v. California*, 220 F. 3d 987, 1007 (9th Cir. 2000); *Dahlen v. Kramer Machine &*

*Engineering Products Co.*, 303 F.2d 293, 295 (10th Cir. 1961); *State Police for Automatic*

*Retirement v. Difava*, 164 F. Supp. 2d 141, 156 (D. Mass. 2001); *EEOC v. Local 40, Int'l Ass'n*

*of Bridge, Structural and Ornamental Iron Workers*, 855 F.Supp. 488, 491-92 (S.D.N.Y. 1994).

Although Respondents are aware of at least some of these precedents, they mistakenly

interpret them to mean that only "certain requirements of this Court's Protective Order, *i.e.*,

requirements pertaining to the handling of classified and 'protected' information appropriately,

retain vitality beyond the required dismissal of these cases." (Gov't Mot. at 8-9 n.15). In other

words, Respondents contend that only those portions of this Court's protective and injunctive

orders that they like, because they constrain Petitioners' counsel, survive dismissal, but those

portions they do not like, because they constrain Respondents, do not. Respondents cite no

authority that supports such cherry-picking. *Cf. SRS Technologies, Inc. v. Physitron, Inc.*, 216

F.R.D. 525, 526 (N.D. Ala. 2003) (rejecting plaintiff's assertion that, under protective order in

effect after settlement of underlying lawsuit, plaintiff "should now be allowed virtually

unrestricted access to and use of confidential documents produced by the Defendants, but that

the protective order should remain in full force to protect Plaintiff's documents"). The cases

DOJ cleared for public filing 5/___/07

cited above show that the protective and injunctive orders entered by this Court survive dismissal
in their entirety, unless and until they are modified or dissolved by separate order of the Court.

Moreover, equitable principles dictate that this Court may not dissolve the protective and
injunctive orders entered in this case without first holding an evidentiary hearing at which Peti-
tioners and Respondents are heard. *See Hodge v. Dep't of Housing and Urban Development*,
862 F.2d 859, 861 (11th Cir. 1989). Respondents would bear the burden of showing why the
orders, or portions of them, should be dissolved. *See SRS Technologies Inc.*, 216 F.R.D. at 529-
31; *Lee Shuknecht & Sons v. P. Vigneri & Sons, Inc.*, 927 F.Supp. 610, 614-616 (W.D.N.Y.
1996); *Grundberg v. Upjohn Co.*, 140 F.R.D. 459 (D. Utah 1991); *SEC v. Samuel H. Sloan &
Co.*, Nos. 71 Civ. 2695 (RJW), 74 Civ. 5729 (RJW), 1991 WL 173730 (S.D.N.Y. Aug. 29,
1991). This is so even where, as here, intervening legislation has affected the Court's jurisdic-
tion. *See Miller v. French*, 530 U.S. 327, 345-348 (2000).

Nothing in the reasoning or holding in *Boumediene* addresses any of these specific issues.
Nor does the decision purport to impact any of these authorities dealing with the continued effect
of the protective and injunctive orders respectively. Consistent with the foregoing authorities,
therefore, these orders remain in full force and effect notwithstanding Respondents' attempts at
dismissal of this case. Respondents have not moved to dissolve the protective and injunctive
orders entered in this case, and this Court has not held an evidentiary hearing on this issue.
Therefore, to the extent Respondents seek by their Motion to Dismiss to dissolve the protective
and injunctive orders, the Motion should be denied as premature.

**Conclusion**

Petitioners' habeas corpus rights are far from finally decided: The Supreme Court has yet
to speak on the merits, and Petitioners have not had their individual facts and legal arguments

DOJ cleared for public filing 5/___/07

heard. Respondents' Motion prejudges Petitioners' case and, in effect, would destroy the carefully crafted measures in the protective order that balance competing interests without prejudicing Petitioners' ability to communicate with counsel. This balance is especially important given Petitioners' psychological distress and the fact-intensive nature of their petition.

Under governing Supreme Court precedent, the status quo should be preserved while the DTA action is litigated: Under *United Mine Workers*, the courts have "authority, from the necessity of the case, to make orders to preserve the existing conditions and the subject of the petition;" under *Rhines*, the mechanism for permitting exhaustion of remedies without prejudice to habeas corpus rights is to stay the district court action and hold it in abeyance for a reasonable time while Petitioners' DTA action is litigated.

At the same time, the pendency of two appeals from this Court's orders divests this Court of any greater jurisdiction than this, including any jurisdiction to grant Respondents' Motion and Dismiss the petition. And even if this Court had jurisdiction to dismiss the petition at this stage, such dismissal would not automatically dissolve the protective and other injunctive orders it has entered.

Petitioners therefore respectfully request that the Court deny Respondents' Motion to Dismiss. In the event the Court grants the Motion, Petitioners request that the Court stay the effect of the dismissal for an adequate time to permit appellate review.

Dated: May 3, 2007                                Respectfully submitted,

                                                  /s/ Allison M. Lefrak
                                                  Douglas K. Spaulding
                                                  Gary S. Thompson
                                                  Allison M. Lefrak
                                                  Richard W. Roberts

DOJ cleared for public filing 5/___/07

REED SMITH LLP
1301 K Street, NW, Suite 1100
(East Tower)
Washington, DC 20005
Tel: (202) 414-9220

Bernard J. Casey
Casey ADR Services
P.O. Box 26215
San Francisco, CA 94126
Tel: (415) 515-0855

**Counsel for Petitioners**

DOJ cleared for public filing 5/___/07

## CERTIFICATE OF SERVICE

I hereby certify that on May 3, 2007, I served the foregoing on the counsel listed below by electronically filing this document with the Court's CM/ECF system:

Peter D. Keisler
Douglas N. Letter
Joseph H. Hunt
Vincent M. Garvey
Judry L. Subar
Terry M. Henry
James J. Schwartz
Edward H. White
Robert J. Katerberg
Andrew I. Warden
Nicholas J. Patterson
United States Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Ave., N.W.
Washington, DC 20530
Tel: (202) 514-4107
Fax: (202) 616-8470

*Attorneys for Respondents*

/s/ Allison M. Lefrak
Douglas K. Spaulding